DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KERRY A. MONACO (NYBN 4712360)
Trial Attorney, U.S. Department of Justice

MAUREEN C. BESSETTE (CABN 165775)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone:  (510) 637-3680
    Fax:  (510) 637-3724
    Maureen.bessette@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF DONALD KOLLMAR ) ) ) ) ) ) ) | CASE NO. 5:20-CV-01388-LHK<br><br>UNITED STATES OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS |

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

PROCEDURAL BACKGROUND..................................................................................2

I.          Overview of Extradition Law .................................................................2

II.        Procedural History in Canada ................................................................3

III.      Procedural History in the United States .................................................4

STATEMENT OF FACTS UNDERLYING THE CRIMINAL CHARGES.............................6

STANDARD OF REVIEW ...........................................................................................9

ARGUMENT ...............................................................................................................10

I.     The Crimes for Which Kollmar's Extradition Is Sought Are Extraditable Offenses Under the Treaty ...............................................................................................................10

        A.     The Conduct Underlying the Rape Charge Would Be Criminal if Committed in the United States ......................................................................11

        B.     The Conduct Underlying the Indecent Assault Charge Would Be Criminal if Committed in the United States ...............................................13

II.    The Extradition Request Contains Competent Evidence of Probable Cause ..................17

        A.     Canada's Evidence Establishes Probable Cause that Kollmar Committed Rape .............19

        B.     Canada's Evidence Establishes Probable Cause that Kollmar Committed Indecent Assault ...............................................................................21

        C.     The Magistrate Judge Properly Considered the Evidence in the Extradition Request and Appropriately Rejected Kollmar's Attempt to Introduce Contradictory Evidence ...............................................................22

III.    Kollmar's Extradition Is Not Barred Due to Lapse of Time .............................................25

        A.     Extradition Is Not Barred by Principles in Canada's Charter of Rights and Freedoms ...............................................................................................26

        B.     The Treaty Does Not Bar Extradition Based on the California Statute of Limitations ......................................................................................................29

CONCLUSION...............................................................................................................31

# TABLE OF AUTHORITIES

Cases

*Ahmad v. Wigen*, 726 F. Supp. 389 (E.D.N.Y. 1989), *aff'd*, 910 F.2d 1063 (2d Cir. 1990) .............. 19, 23

*Arias Leiva v. Warden*, 928 F.3d 1281 (11th Cir. 2019) .................................................. 28

*Artukovic v. Rison*, 784 F.2d 1354 (9th Cir. 1986) ....................................................... 9

*Barapind v. Enomoto*, 400 F.3d 744 (9th Cir. 2005) ............................................... passim

*Bingham v. Bradley*, 241 U.S. 511 (1916) ................................................................ 9

*Bovio v. United States*, 989 F.2d 255 (7th Cir. 1993) ................................................. 23

*Bruce v. Terhune*, 376 F.3d 950 (9th Cir. 2004) ...................................................... 18

*Caplan v. Vokes*, 649 F.2d 1336 (9th Cir. 1981) ................................................. 11, 18

*Charlton v. Kelly*, 229 U.S. 447 (1913) .............................................................. 22

*Choe v. Torres*, 525 F.3d 733 (9th Cir. 2008) .................................................. 5, 23, 28

*Clarey v. Gregg*, 138 F.3d 764 (9th Cir. 1998) ................................................... 11, 13

*Collins v. Loisel*, 259 U.S. 309 (1922) ............................................................ passim

*Collins v. Miller*, (Collins I), 252 U.S. 364 (1920) .................................................... 9

*Commonwealth v. Bethlehem*, 570 A.2d 563 (Pa. Super.  Ct. 1989) ................................. 31

*Cornea v. United States*, 771 Fed. App'x 944 (11th Cir. 2019) ...................................... 28

*Cucuzzella v. Keliikoa*, 638 F.2d 105 (9th Cir. 1981) ............................................. 10, 11

*Emami v. U.S. Dist. Court for the N. Dist. of Cal.*, 834 F.2d 1444 (9th Cir. 1987) ............. 13, 23, 28

*Factor v. Laubenheimer*, 290 U.S. 276 (1933) ........................................................ 11

*Fernandez v. Phillips*, 268 U.S. 311 (1925) ....................................................... passim

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ............................................................... 17

*Glucksman v. Henkel*, 221 U.S. (1911) ............................................................... 30

*Harshbarger v. Regan*, 599 F.3d 290 (3d Cir. 2010) ................................................. 31

*In re Extradition of Figueroa*, 2013 WL 3243096 (N.D. Ill. June 26, 2013) .......................... 18

*In re Extradition of Kraiselburd*, 786 F.2d 1395 (9th Cir. 1986) .................................... 26

*In re Extradition of Shaw*, 2015 WL 3442022 (S.D. Fla. 2015) ................................... 17, 24

*In re Kaine*, 55 U.S. 103 (1852) .................................................................. 3, 9

*Joseph v. Hoover*, 254 F. Supp. 2d 595 (D.V.I. 2003) ................................................................ 9

*Kamrin v. United States*, 725 F.2d 1225 (9th Cir. 1984) ...................................................... 26, 28

*Kolovrat v. Oregon*, 366 U.S. 187 (1961).................................................................................... 27

*Lopez-Smith v. Hood*, 121 F.3d 1322 (9th Cir. 1997)................................................................... 3

*Manta v. Chertoff*, 518 F.3d 1134 (9th Cir. 2008)................................................................... 2, 18

*Martin v. Warden, Atlanta Pen.*, 993 F.2d 824 (11th Cir. 1993)............................................. 2, 28

*Martinez v. United States*, 828 F.3d 457- (6th Cir. 2016) ...................................................... 26, 27

*Martinez-Serrano v. Immigration & Naturalization Svc.*, 94 F.3d 1256 (9th Cir. 1996).................. 24, 25

*Matter of Extradition of Atta*, 706 F. Supp. 1032 (E.D.N.Y. 1989) ............................................... 24

*Matter of Requested Extradition of Kirby*, 106 F.3d 855 (9th Cir. 1996)....................................... 26

*Matter of the Extradition of Martinelli Berrocal*, 2017 WL 3776953 (S.D. Fla. Aug. 31, 2017)...... 19, 23

*Matter of the Extradition of Sylvester*, 2006 WL 6323514 (M.D. Pa. Feb. 14, 2006)....................... 30, 31

*Neely v. Henkel*, 180 U.S. 109 (1901).................................................................................... 18, 20

*Oen Yin–Choy v. Robinson*, 858 F.2d 1400 (9th Cir. 1988) ......................................................... 18

*Parke v. Raley*, 506 U.S. 20 (1992) .................................................................................... passim

*People v. Thomas*, 223 Cal. Rptr. 3d 470, 15 Cal. App. 5th 1063 (Cal. Ct. App. Sept. 11, 2017)........... 14

*People v. Valentine*, 113 Cal. Rptr. 2d 748, 93 Cal. App. 4th 1241 (Cal. Ct. App. Nov. 21, 2001) ........ 14

*People v. Young*, 105 P.3d 487 (Cal. 2005) ................................................................................ 18

*Prasoprat v. Benov*, 421 F.3d 1009 (9th Cir. 2005) ..................................................................... 2

*Quinn v. Robinson*, 783 F.2d 776 (9th Cir.), cert. denied, 479 U.S. 882 (1986) ............................ passim

*Santos v. Thomas*, 830 F.3d 1002 (9th Cir. 2016) ..................................................................... 23

*Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973)................................................................ 9, 23

*Skaftouros v. United States*, 667 F.3d 144 (2d Cir. 2011) ....................................................... 10, 20

*Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176 (1982)................................................. 30

*Theron v. United States*, 832 F.2d 492 (9th Cir. 1987)...................................................... 10, 11, 30

*United States ex rel. Sakaguchi v. Kaululukui*, 520 F.2d 726 (9th Cir.1975)................................. 30

*United States v. Garfias*, 2009 WL 2580641 (N.D. Cal. Aug. 20, 2009) ................................. 11, 26

*Vo v. Benov*, 447 F.3d 1235 (9th Cir. 2006), cert. denied, 549 U.S. 935 (2006)........................ 3, 4, 9

*Walker v. Johnston*, 312 U.S. 275 (1941) ................................................................................ 10

*Yapp v. Reno*, 26 F.3d 1562 (11th Cir. 1994) ................................................................. 26, 27

Statutes

18 U.S.C. § 2243 .................................................................................................................. 13, 30

18 U.S.C. § 2243(a) ........................................................................................................ 12, 13, 15

18 U.S.C. § 2244(a)(3) ............................................................................................................ 15, 16

18 U.S.C. § 2246(2)(A) ................................................................................................................ 13

18 U.S.C. § 2246(3) ...................................................................................................................... 15

18 U.S.C. § 3184 ................................................................................................................... passim

18 U.S.C. § 3186 ............................................................................................................................ 2

18 U.S.C. § 3299 .......................................................................................................................... 30

28 U.S.C. § 2241(a) ....................................................................................................................... 9

28 U.S.C. § 2241(c)(3) ................................................................................................................... 9

California Penal Code § 261 ........................................................................................ 5, 12, 14, 16

California Penal Code § 261(a)(2) ............................................................................................... 12

California Penal Code § 261(b) .............................................................................................. 12, 14

California Penal Code § 261.5 ..................................................................................................... 13

California. Penal Code § 263 ........................................................................................................ 12

California. Penal Code § 264(c)(2) .............................................................................................. 12

California Penal Code § 288 ......................................................................................................... 15

California Penal Code § 288(a) .............................................................................................. 14, 15

California Penal Code § 288(c) ..................................................................................................... 14

California Penal Code § 288(c)(1) ............................................................................................... 14

California Penal Code § 289 ................................................................................................... 14, 15

California Penal Code § 289(a)(1)(A) .......................................................................................... 14

California Penal Code § 289(a)(1)(B) .......................................................................................... 14

California Penal Code § 289(a)(1)(C) .......................................................................................... 14

California Penal Code § 289(k)(1) ............................................................................................... 14

California Penal Code § 289(k)(2)...................................................................................................... 14

Canadian Authorities

*Argentina (Republic) v. Mellino*, [1987] 1 S.C.R. 536 (Can.) ........................................................ 27, 28

Canadian Charter of Rights and Freedoms ("Canadian Charter"), Part 1 of the Constitution Act, 1982,
    being Schedule B to the Canada Act 1982 (UK), 1982, c 11 ...................................................... passim

Criminal Code of Canada, Section 143...................................................................................... 1, 4, 5, 16

Criminal Code of Canada, Section 143(a) ...................................................................................... 19, 20

Criminal Code of Canada, Section 143(b) .......................................................................................... 19

Criminal Code of Canada, Section 144...................................................................................... 1, 4, 5, 16

Criminal Code of Canada, Section 149.......................................................................................... passim

Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27
    U.S.T. 983, *as amended by* Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan.
    11, 1988, S. TREATY DOC. NO. 101-17 (1990), *and* Second Protocol Amending the Extradition
    Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively the
    "Treaty") ...................................................................................................................................... passim

**INTRODUCTION**

Pursuant to the Extradition Treaty between the United States and Canada,[1] Canada has sought the extradition of Petitioner Donald Kollmar ("Kollmar") so that he may stand trial on one count of Rape and one count of Indecent Assault, in violation of Sections 143, 144, and 149 of the Criminal Code of Canada.  EX DE 39-1.[2]  Following an extradition hearing, Judge Kandis A. Westmore issued an order on February 10, 2020, finding Kollmar extraditable on the two charges and certifying the same to the Secretary of State.  EX DE 86.  Kollmar filed his petition for writ of habeas corpus on February 24, 2020.  The United States hereby responds.

In his petition, Kollmar seeks to relitigate several of the issues he presented during his extradition proceedings.  These arguments have even less merit now, in a habeas proceeding, than they did before, and the Court should reject Kollmar's arguments for the reasons discussed by Judge Westmore and as further elaborated below.

Specifically, Kollmar argues that the charge of indecent assault is not an extraditable offense because it could not be punished by more than one-year imprisonment under U.S. law, as required by the Treaty.  However, as set forth below, he fails to acknowledge the numerous U.S. statutes under which his conduct could be punished by more than one year imprisonment.

He also erroneously asserts that Canada failed to present sufficient evidence to establish probable cause and, instead, inappropriately attempts to submit and rely on contradictory evidence in effort to undermine the victim's credibility.  As explained below, the extradition request and accompanying documentary evidence contain competent and sufficient to establish a reasonable belief that Kollmar committed the crimes for which his extradition is sought.

Finally, Kollmar is incorrect that his extradition is barred by lapse of time.  The Treaty bars extradition only if the Canadian statute of limitations has run.  As set forth clearly in the extradition

---

[1] Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), *and* Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively the "Treaty").

[2] All record citations to the events in Kollmar's extradition proceedings case are denoted as "EX DE #" and reference the docket in Northern District of California Case Number 4:19-mj-70677-MAG (KAW). All record citations to events concerning the instant petition are denoted as "HC DE #."

request, the crimes for which extradition is sought are not subject to any statute of limitations period in Canada.  Accordingly, the Court should deny Kollmar's habeas petition.

## PROCEDURAL BACKGROUND

### I.       Overview of Extradition Law

Extradition is a means by which a fugitive is returned to a foreign country, typically pursuant to a treaty, to face criminal charges or to serve a sentence of imprisonment.  In the United States, it is primarily an executive function, with a limited role for a judge pursuant to the federal extradition statute, 18 U.S.C. § 3184.  *See Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005).  Pursuant to Section 3184, an extradition judge holds a hearing to consider the evidence of criminality presented by the foreign country and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty."  18 U.S.C. § 3184.  To this end, the extradition judge must certify a fugitive's extradition where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought.  *See*, *e.g.*, *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008).  The judge does not determine whether the evidence is sufficient to justify conviction, as that determination belongs to the foreign court.  *See Collins v. Loisel*, 259 U.S. 309, 316 (1922).

If the judge finds the evidence sufficient under section 3184, he or she "shall certify [his or her findings] . . . to the Secretary of State."  18 U.S.C. § 3184.  The Secretary of State ultimately decides whether to surrender the fugitive to the foreign country.  18 U.S.C. § 3186; *see also Prasoprat*, 421 F.3d at 1012.  The Secretary "exercises broad discretion and may properly consider myriad factors affecting both the individual [fugitive] as well as foreign relations which an extradition magistrate may not," including the state of the foreign country's judicial system, humanitarian considerations, and applicable laws or policies regarding appropriate treatment abroad.  *Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 829, 830 n.10 (11th Cir. 1993); *see also Proasprat*, 421 F.3d at 1016 ("[T]he Secretary of State's exercise of discretion regarding whether to extradite an individual may be based not only on 'considerations individual to the person facing extradition" but "may be based on foreign policy

considerations instead,'" quoting *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997), *superseded by statute on other grounds*).  This separation of roles is consistent with the long-held understanding that surrendering a fugitive is "purely a national act . . . performed through the Secretary," within the Executive's powers to conduct foreign affairs.  *See In re Kaine*, 55 U.S. 103, 110 (1852).

A magistrate judge's certification order under 18 U.S.C. § 3184 is not directly appealable but is reviewable by this Court upon the filing of a petition for habeas corpus.  In reviewing an extradition certification through a habeas petition, a court may consider only: (1) whether the extradition judge had jurisdiction; (2) whether the offense is within the applicable treaty; and (3) whether there was any evidence warranting the judge's finding that reasonable ground exists to believe the fugitive guilty. *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *Vo v. Benov*, 447 F.3d 1235, 1240 (9th Cir. 2006), *cert. denied*, 549 U.S. 935 (2006).

## II.     Procedural History in Canada

The conduct underlying Canada's charges of rape and indecent assault is alleged to have occurred between January 1, 1975 and December 31, 1979, EX DE 39-1 at bates 7, when the victim was between ages 12 and 17, and Kollmar was between ages 23 and 28, EX DE 55 at PDF 97; EX DE 64-1 at PDF 131.  The victim presented her allegations of rape and indecent assault against Kollmar to Canadian authorities on February 25, 1997, by written and oral testimony.  The Canadian government submitted the following materials as supplements to its extradition request following discovery requests by Kollmar to Judge Westmore: (1) The victim's written statement; (2) a CD containing a video recording of the victim's statement; and (3) a transcript of that videoed statement were submitted to the court during the extradition proceedings as supplementary materials to Canada's extradition request.[3] EX DE 55 at PDF 15-157.

Canadian authorities secured its first warrant for Kollmar's arrest approximately nine months later on November 17, 1997.  EX DE 39-1 at bates 30, 34-36.  Canadian authorities secured subsequent warrants on November 28, 2018, December 24, 2018, and June 7, 2019.  *Id*. at bates 31, 38-60.  The

---

[3] The victim's written statement is dated February 20, 1996.  EX DE 55 at PDF 146.  The victim told Canadian authorities that she started writing the statement on that date "for her own personal records, similar to a diary."  *Id.* at 8.  She then used the written statement to refresh her memory during her oral statement on February 25, 1997.  *Id.*

most recent warrant seeks Kollmar's arrest on one count of Rape and one count of Indecent Assault in violation of Sections 143-144, and 149 of the Criminal Code of Canada,[4] *id.* at bates 58-60, and "is in full force and effect in Ontario[, Canada]," *id.* at bates 6.

### III.    Procedural History in the United States

In response to a request from Canada, and pursuant to the authority of the Treaty between the United States and Canada, the United States filed a complaint on May 1, 2019, pursuant to 18 U.S.C. § 3184, seeking Kollmar's provisional arrest with a view toward his extradition. EX DE 1. Kollmar was arrested in this district on May 3, 2019. *See* EX DE 6. In accordance with the terms of the Treaty, Canada submitted its formal request for the extradition of Kollmar by diplomatic note dated June 24, 2019, to the United States Department of State. EX DE 39-1.

The United States filed a memorandum on July 10, 2019 setting forth its arguments for why Canada had satisfied the five criteria for certification of Kollmar's extradition. EX DE 39. Before he filed his substantive response contesting extradition to Canada, Kollmar filed a motion for discovery seeking copies of the victim's written and oral statements provided to Canadian authorities on February 25, 1997, as well as a copy of a March 8, 1997, written statement that the victim's father provided to Canadian authorities. EX DE 44. The government opposed Kollmar's request for discovery on the grounds that Kollmar had no legal right to discovery in extradition proceedings, and the materials he sought were not in the possession of the United States. EX DE 45. On September 9, 2019, Judge Westmore denied discovery of the statement from the victim's father as irrelevant to the issue of probable cause but granted limited discovery of the victim's written and oral statements to Canadian authorities for the purpose of determining whether Canada's summary of the victim's statement in the extradition request, through an affidavit from Detective Constable Robert Speakman ("Speakman Affidavit") was accurate. EX DE 48. In her order, Judge Westmore stated, "discovery of these two statements is warranted, for the limited purpose of determining whether the Speakman Affidavit correctly characterizes the [victim's] statements. The Court will **not** consider attacks on [the victim's]

---

[4] While Canada initially brought an additional charge of sexual assault against a female aged 14-16, in violation of Section 146(2) of the Criminal Code of Canada, EX DE 39-1 at bates 34-49, Canada is no longer pursuing that charge, *id.* at 6, 31, 51-60.

credibility if such attacks are based on contradictory evidence." *Id.* at 6 (emphasis in original) (citing *Choe v. Torres*, 525 F.3d 733, 740 (9th Cir. 2008); *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005)). Canada supplemented its extradition request with these statements, which were filed with the court on October 3, 2019. EX DE 55.

Kollmar filed his opposition to certification of extradition on December 10, 2019, which he amended two days later. EX DE 66. Kollmar did not contest the court's subject matter jurisdiction, the court's personal jurisdiction over him, or the existence of an enforceable treaty between the United States and Canada. *See id.* He also conceded that the rape charge constituted an extraditable offense under the Treaty because it equated to the charge of rape under California Penal Code § 261. *Id.* at 30-31.

Kollmar did, however, raise many of the arguments he now presents in his habeas petition, including the following: (1) the charge of indecent assault does not constitute an extraditable offense under the Treaty; (2) Canada's extradition request does not contain sufficient evidence of probable cause that he committed the two offenses for which extradition is sought, an argument he supported with documentary evidence that he claimed undermined the victim's credibility; and (3) his extradition is barred under the Treaty due to lapse in time under both the Canadian Charter of Rights and Freedoms ("Canadian Charter") and the California statutes of limitation. *Id.* at 27-38. The government filed its reply on January 7, 2020, challenging all of Kollmar's arguments. EX DE 70. In response to Kollmar's arguments relating to the Canadian Charter, the United States filed a supplement from Canada on January 21, 2020, addressing Kollmar's Charter arguments. EX DE 79. Pursuant to 18 U.S.C. § 3184, Judge Westmore held an extradition hearing on January 30, 2020, at which both parties presented arguments. *See* EX DE 83.

On February 10, 2020, Judge Westmore issued a decision granting the government's request for certification of extradition to Canada on both charges for which extradition was sought and certifying her findings to the Secretary of State for a determination on whether a warrant may issue for Kollmar's surrender to Canadian authorities. EX DE 86. *First*, Judge Westmore concluded that the charges of rape and indecent assault, in violation of Canadian Criminal Code Sections 143, 144, and 149, are extraditable offenses under the Treaty because they equated to criminal offenses that were punishable by

more than one-year imprisonment in the United States.  *Id.* at 6-9, 18.  *Second*, Judge Westmore found that Canada's extradition request contained sufficient evidence of probable cause that Kollmar committed the two offenses for which extradition was sought.  *Id.* at 9-15.  In reaching this conclusion, Judge Westmore found that Kollmar's attempts to undermine the victim's credibility with contradictory evidence was not appropriate in this extradition proceeding and declined to consider some of his proffered evidence as a result.  *Id.* at 10-11, 12 n.5, 13 n.6.  *Lastly*, Judge Westmore rejected Kollmar's argument that his extradition is barred due to lapse in time, concluding that neither the Canadian Charter nor the California statutes of limitation apply under the terms of the U.S.-Canada extradition treaty.  *Id.* at 15-17.

Kollmar filed this petition for a writ of habeas corpus on February 24, 2020.

## STATEMENT OF FACTS UNDERLYING THE CRIMINAL CHARGES

In 1974, the then 12-year old victim (born 1962) and her family became involved with a group called "Students of Light."  EX DE 39-1 at bates 23.  The victim met Kollmar through her involvement with this group.  *Id.*  Kollmar (born 1951) was then 23-years-old and a spiritual advisor and minister to the Students of Light, as well as chief assistant to the group's leader, John Hanas ("Hanas").  *Id.* at 23, 31.  Kollmar expressed an interest in the victim, informing her and her parents that she was an extremely special and sensitive child.  *Id.* at 23.

The victim lived in Sudbury, Ontario; Kollmar was originally from the Buffalo, New York area, and spent time in Toronto, making monthly trips to Sudbury.  *Id.*  During these trips to Sudbury, Kollmar visited the victim and initiated time alone with her.  *Id.*  While he and the victim were alone, Kollmar would tell her how he was unique, significant, and chosen to do special work.  *Id.* at 24.  He also told her about his spiritual and psychic powers, and his direct relationship with God.  *Id.*  Kollmar emphasized the victim's specialness and stated that she could only realize her spiritual potential through his teachings.  *Id.*

Kollmar further told the victim about what he described as his pure and unique love for her.  *Id.*  Kollmar stated that he had intended to wait to approach her physically until she turned 16 years old, but that he could not wait any longer.  *Id.*  Instead, he began touching her in a sexual manner when she was

13-years-old and continued to do so until she was 16-years-old. *Id*. at 26. Starting after she had turned 14 years old, Kollmar penetrated the victim's vagina with his penis on four or five occasions. *Id*. at 28.

Kollmar told the victim that she should not tell anyone else about their physical relationship because others would be jealous and unable to understand the spiritual and special nature of their connection. *Id*. at 24. Instead, she should tell other people that she and Kollmar were just close friends. *Id*. Kollmar said that she had been chosen for him by God and that it was her responsibility to live with him as his wife. *Id*. In turn, the victim understood that she needed to "turn my will totally and completely over to him so he could mold and shape me into a spiritual being that could best serve God and humanity." *Id*. Similarly, he told her that her own will and desires were not valid and instructed her that if she did not love or want to marry Kollmar, then those feelings would be contrary to God's plan. *Id*. at 25. Moreover, when they were alone, Kollmar criticized the victim's family members and told her that she should separate and isolate herself from them, most importantly her mother. *Id*. at 24.

As time progressed, Kollmar became increasingly controlling and abusive. *Id*. Often, Kollmar only allowed the victim three hours or less sleep per night. *Id*. On several occasions when she started to fall asleep, Kollmar slapped her face and told her not to be lazy. *Id*. at 25. He controlled when she used the bathroom, showered or bathed, brushed her teeth and hair, and how she wore her hair. *Id*. He also repeatedly verbally assailed her and then held up his hand in a motion threatening to strike her, telling her that she angered him so much that he could barely restrain from hitting her. *Id*. Several times Kollmar grabbed and twisted the victim's wrist causing her pain. *Id*.

In response to this verbal and physical abuse, the victim lived in "severe anxiety and terror, never knowing what would trigger his rage . . . abid[ing] by everything he did and said, always feeling like [she] was walking . . . a tight rope, ensuring that [she] never gave him 'just cause' to be upset with [her]." *Id*. From the victim's perspective, Kollmar engaged in "constant punishment and humiliation" of her and never allowed her to "experience[] a moment free from fear, intimidation, and oppression." EX DE 39-1 at bates 25.

During her relationship with Kollmar, she stated that he sexually abused her in the following ways:

- When she was 13-years-old, she attended a weekend retreat with Kollmar in Buffalo, New York. On the trip, Kollmar told the victim to remove her

clothes and then gave her a "therapeutic massage," during which he massaged her breasts. In response, the victim felt "sickened inside" and "unbearably uncomfortable, embarrassed, and confused." *Id*. at 26.

- While in Sudbury, Kollmar arranged to spend time alone with the victim, including in his van that he had converted into a "mini home." Kollmar told her to lie down in the van. He then placed his arm around her and fondled her breasts over her clothes. *Id*. at 27.

- When meeting Kollmar in Toronto, on numerous occasions, the victim would stay in a room maintained by the Students of Light. Kollmar would come to her room and bring her to his van, where he would have the victim lie beside him. He would then put his hand under her clothes and fondle her breasts. Eventually, he took off her clothes and lay on top of her while kissing her, fondling her breasts and genitals, and rubbing his groin against her. He also forced the victim to massage him while they were both naked, including the area around his genitals. When she tried to avoid touching his penis, he demanded that she do so using oil to massage his genitalia. He then got on top of her while fully nude, fondled her breasts, and put his fingers inside her vagina. *Id*. at 27-28.

- On Mother's Day weekend in 1977, when the victim was 14-years-old, Kollmar penetrated her vagina with his penis. He only "partially" penetrated her and did not do so more deeply because he wanted her to remain a virgin until he married her. He did this on four or five occasions. After the 1977 Mother's Day incident, Kollmar began masturbating the victim and became very angry when she was unable to reach orgasm, which he saw as willfully punishing and denying him pleasure. Kollmar also had her masturbate him and ejaculated on several occasions when she did so. *Id*. at 28.

According to the victim, "99% of the time" these incidents were preluded by Kollmar "verbally humiliating and demoralizing" her. *Id*. at 29. The verbal assaults took a ritualistic bend, with Kollmar spending up to two hours yelling and criticizing her before the sexual abuse. *Id*. This included Kollmar telling her that she was "stupid, "a piece of shit," "worthless," "fat and ugly," and other words and phrases of similar effect. *Id*. He also told her that she "must submit [her] will to him." *Id*. She told Canadian authorities that, in hindsight, she interprets Kollmar's behavior as a form of "brain washing." EX DE 55 at PDF 131.

As of June 1979, Kollmar and the victim were still scheduled to marry. *Id*. The victim's parents were unaware of the abuse, and the victim believed she was still following God's plan. *Id*. However, after the victim was hospitalized with stomach pains, her mother realized the "oppression" from which the victim was suffering. *Id*. Although up to that point, the victim had not told her parents about Kollmar's behavior – because he had insisted that no one would believe her if she did – she told her

parents that she did not want to be with Kollmar anymore.  *Id*.  Thereafter, she ended their relationship and ceased contact with Kollmar.  *Id*. at 29-30

Over time, the victim disclosed more specifics of Kollmar's sexual and other forms of abuse to her parents and to group leaders and members, including Hanas.  *Id*. at 30.  When the victim first spoke to Hanas about abuse Kollmar was inflicting upon her, Hanas told her that the abuse was her fault because she was not more "loving, understanding, diligent and loyal" to Kollmar and suggested that she lose her virginity to him instead.  EX DE 55 at PDF 153.  Years later, Hanas informed the victim's parents that he was aware of at least some of the sexual abuse Kollmar had inflicted upon the victim.  *Id*. at 156.  At the advice of Hanas, the victim and her family consulted a lawyer through a representative of the Students of Light, who then relayed to the victim that the lawyer said she had a weak case.  *Id*. at 67-68, 156.  Many years later, on February 25, 1997, the victim provided a statement to Canadian police making the above-referenced allegations.  EX DE 39-1 at 23; EX DE 55.

## STANDARD OF REVIEW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2241(a) and (c)(3).  Once a magistrate judge has certified a petitioner as extraditable, as Judge Westmore has here, the petitioner can challenge that decision only by petitioning for a writ of habeas corpus.  *Joseph v. Hoover*, 254 F. Supp. 2d 595, 598 (D.V.I. 2003); *see also Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973).

"The scope of habeas review of an extradition order is severely limited."  *Artukovic v. Rison*, 784 F.2d 1354, 1355-56 (9th Cir. 1986); *see also Bingham v. Bradley*, 241 U.S. 511, 517 (1916).  The Supreme Court has repeatedly held that habeas review of extraditability decisions is more limited than review on appeal.  *See, e.g., Fernandez*, 268 U.S. at 312 (habeas corpus "cannot take the place of a writ of error [and i]t is not a means for rehearing what the magistrate has decided"); *Collins v. Miller (Collins I)*, 252 U.S. 364 (1920) ("[I]t is ordinarily beyond the scope of the review afforded by a writ of habeas corpus to correct error in the proceedings.").

Thus, "[t]he district court's habeas review of an extradition order is limited to whether: (1) the extradition magistrate had jurisdiction over the individual sought, (2) the treaty was in force and the accused's alleged offense fell within the treaty's terms, and (3) there is any competent evidence supporting the probable cause determination of the magistrate."  *Vo*, 447 F.3d at 1240 (citations and

internal quotation marks omitted); *see also Fernandez*, 268 U.S. at 312.  In conducting these inquiries, the extradition judge's factual determinations are reviewed solely for clear error, and the weight accorded to any piece of evidence is "solely within the province of the extradition magistrate."  *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir.), *cert. denied*, 479 U.S. 882 (1986).  As to questions of law and mixed determinations of fact and law, the habeas court's review is *de novo*.  *Id.* at 791.

"Habeas corpus, it is well known, is not a neutral proceeding in which the petitioner and the State stand on an equal footing.  Rather, it is an asymmetrical enterprise in which [the petitioner] seeks to overturn a presumptively valid judgment."  *Skaftouros v. United States*, 667 F.3d 144, 157 (2d Cir. 2011) (internal quotation marks and citations omitted).  The burden is on the petitioner to show by a preponderance of evidence that he is held contrary to the Constitution, law, or the treaties of the United States.  *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Skaftouros*, 667 F.3d at 157-158 (holding that the habeas court erred by imposing the burden of proof on the government to show that extradition certification was proper); *see also Parke v. Raley*, 506 U.S. 20, 31 (1992) ("[T]he presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the [habeas petitioner].").

# ARGUMENT

## I.     The Crimes for Which Kollmar's Extradition Is Sought Are Extraditable Offenses Under the Treaty

Pursuant to Article 2 of the Treaty, "extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment."  EX DE 39-1 at bates 85.  To determine whether this dual criminality requirement is met, the Court looks to the description of the criminal conduct provided by Canada in support of its charges and determines whether that conduct would be criminal under U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states.[5]  *See, e.g.*, *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981);

---

[5] In a footnote, Kollmar relies on *Theron v. United States*, 832 F.2d 492, 496 (9th Cir. 1987), and "contends that only the laws of the United States and Canada may properly provide statutes for consideration under the dual criminality analysis."  HC DE 1 at 26 n.27.  *Theron*, however, clearly states that, for purposes of dual criminality, the Court may look to federal law, the law of the place where the fugitive is found, or the law of the preponderance of the states.  832 F.2d at 496.  In any event, Kollmar

1   *Caplan v. Vokes*, 649 F.2d 1336, 1334 n.16 (9th Cir. 1981); *Theron v. U.S. Marshal*, 832 F.2d 492, 496

2   (9th Cir. 1987) (abrogated on other grounds).

3        It is the nature of the fugitive's conduct, not the elements of the foreign offense, that controls

4   which U.S. offense is most analogous for purposes of determining dual criminality.  *See*, *e.g., Clarey v.*

5   *Gregg*, 138 F.3d 764, 766 (9th Cir. 1998) ("The primary focus of dual criminality has always been on

6   the conduct charged; the elements of the analogous offenses need not be identical."); *United States v.*

7   *Garfias*, 2009 WL 2580641, at *4 (N.D. Cal. Aug. 20, 2009) ("More significantly, when a U.S. court

8   determines which offense is the most analogous to the one charged by the foreign country for extradition

9   purposes, the court should focus on the "nature of [the] conduct," not just the charging label applied in

10  the requesting state") (quoting *Clarey*, 138 F.3d at 766).  Further, extradition treaties are to be liberally

11  construed in favor of extradition.  *Factor v. Laubenheimer*, 290 U.S. 276, 293-294 (1933).  Whether

12  conduct is illegal in both countries for purposes of dual criminality is a "purely legal question" that the

13  Court reviews *de novo* on habeas.  *Quinn*, 783 F.2d at 791.

14       For the reasons set forth below, and as Judge Westmore found, Kollmar's conduct underlying the

15  charges of rape and indecent assault would be criminal under U.S. law.

16       **A.      The Conduct Underlying the Rape Charge Would Be Criminal if Committed in the**
             **United States**

17

18       With respect to the charge of rape, the extradition request states that the charge is based on

19  conduct that occurred on the weekend of Mother's Day in 1977, specifically when the victim was

20  fourteen years' old.  EX DE 39-1 at bates 15.  Specifically, it is alleged that, on that date, Kollmar

21  partially penetrated the victim's vagina with his penis without her "genuine consent," as demonstrated

22  by her lack of desire for the sexual contact and her "constant fear of Kollmar, who exploited his position

23  of authority over her" and who physically assaulted her and threatened to physically assault her on

24  several occasions.  *Id.* at 15-16.

25

26

27  _____

28  acknowledges that "other controlling authority" allows the Court to consider state law for purposes of
    evaluating dual criminality.  HC DE 1 at 26 n.27 (citing *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th
    Cir. 1981)).

As he did before the extradition court, EX DE 66-1 at 30-31, Kollmar does not contest that dual criminality is satisfied on this charge because the Canadian rape offense equates to California Penal Code § 261, HC DE 1 at 26-27.  Indeed, as Judge Westmore concluded, EX DE 86 at 8-9, the conduct described in Canada's extradition request would satisfy the elements of California Penal Code § 261. That statute provides, "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances . . . Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."  Cal. Penal Code § 261(a)(2).  Any amount of sexual penetration is sufficient to complete the crime of rape.  Cal. Penal Code § 263.  Further, for purposes of California's rape statute, "duress" is defined as:

> A direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. The total circumstances, including the age of the victim, and his or her relationship to the defendant, are factors to consider in appraising the existence of duress.

Cal. Penal Code § 261(b).  Rape is punishable by up to 11 years' imprisonment when the victim is a 14-year-old child.  Cal. Penal Code § 264(c)(2).

The extradition request described conduct that would satisfy all of the elements of a rape charge under California law.  Specifically, Kollmar is accused of penetrating the victim's vagina with his penis against the victim's will by means of duress.  Indeed, as Judge Westmore found, *see* EX DE 86 at 9, the extradition request demonstrates that the victim, who was fourteen years' old at the time, did not want the sexual contact with Kollmar, and she acquiesced out of fear stemming from Kollmar's position of authority over her, past incidents of physical violence against her, and past threats of physical violence against her.  EX DE 39-1 at bates 16. Accordingly, Kollmar's alleged conduct underlying the Canadian rape charge could be charged as rape under California law.  Dual criminality on the charge of rape is therefore satisfied.

Additionally, Kollmar's conduct underlying the rape charge could be charged in the United States under 18 U.S.C. § 2243(a).  Section 2243(a) of Title 18 of the U.S. Code makes it a crime punishable by up to 15 years' imprisonment for a person to, *inter alia*, "knowingly engage[] in a sexual

act with another person who has attained the age of 12 years but has not attained the age of sixteen years" when the victim "is at least four years younger than the person so engaging." Here, Canada is charging Kollmar with knowingly penetrating the victim's vagina with his penis, unquestionably a sexual act defined in 18 U.S.C. § 2246(2)(A), when the victim was fourteen years old and he was more than four years older than her.[6] EX DE 39-1 at bates 15. The elements of 18 U.S.C. § 2243(a) are therefore satisfied and sufficient to satisfy dual criminality for purposes of the rape charge.[7]

### B.     The Conduct Underlying the Indecent Assault Charge Would Be Criminal if Committed in the United States

In connection with the charge of indecent assault, the extradition request states that Kollmar committed indecent assault when he fondled the victim's breasts and genitals, inserted his fingers into her vagina, and masturbated her without her "genuine consent." EX DE 39-1 at bates 17. As set forth in the victim's statement, Kollmar told her that it was important that she have an orgasm when he masturbated her, and he would get angry if she did not. EX DE 55 at PDF 47-48, 123, 152. The victim also explained that Kollmar would get angry if the victim was not being affectionate enough, so he forced her to learn massage at age 13. *Id.* at 38, 149. Kollmar insisted that both he and the victim be nude and that she massage his genitals, sometimes three or four hours at a time. *Id.* at 38-39, 149. The victim stated that Kollmar's penis "was always erect," which she found "frightening" and "scary." *Id.* at 39, 149. According to the victim, this conduct occurred in both Toronto, Ontario, and Sudbury, Ontario,

---

[6] The fact that Canada is not pursuing a statutory rape charge does not prevent the use of an age-based U.S. statute to satisfy dual criminality. As discussed *supra*, the Court is required to look at the underlying conduct supporting the Canadian charge to determine how that conduct could be charged in the United States, *see, e.g.*, *Clarey*, 138 F.3d at 766, and Canada is expressly charging Kollmar with rape based on sexual conduct he committed against the victim when she was fourteen years' old and he was more than four years older than the victim, EX DE 39-1 at bates 15. Additionally, pursuant to Article 2(2)(i) of the Treaty, it is irrelevant that 18 U.S.C. § 2243 contains additional elements to satisfy U.S. federal jurisdictional requirements. EX DE 39-1 at bates 85; *Emami v. U.S. Dist. Court for the N. Dist. of Cal.*, 834 F.2d 1444, 1450 (9th Cir. 1987).

[7] For the same reasons as 18 U.S.C. § 2243, Kollmar's conduct underlying the rape charge could also be charged under California Penal Code 261.5, which provides, "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this section, a 'minor' is a person under the age of 18 years and an 'adult' is a person who is at least 18 years of age . . . Any person 21 years of age or older who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years."

between the spring of 1976 and the spring of 1979, when the victim was between ages 13 and 16.  *See* EX DE 55 at PDF 34-37, 39, 47, 94-96, 99-100, 106-08, 121-22, 148-49, 152.

If committed in the United States, Kollmar's conduct could be criminally charged under at least two California statutes: California Penal Code § 289 and California Penal Code § 288(a), (c).  California Penal Code § 289 contains similar elements to California Penal Code § 261, to which Kollmar conceded dual criminality for the rape charge.  California Penal Code § 289(a)(1)(A) provides, "Any person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."[8]  The statute defines "sexual penetration" as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object."  Cal. Penal Code § 289(k)(1).  "Foreign object, substance, instrument, or device" includes any part of the body, including the perpetrator's fingers.  Cal. Penal Code § 289(k)(2).  For purposes of this statute, California courts have consistently defined "duress" as it is defined in the rape statute, California Penal Code § 261(b).  *See*, *e.g.*, *People v. Thomas*, 223 Cal. Rptr. 3d 470, 478, 15 Cal. App. 5th 1063, 1073 (Cal. Ct. App. Sept. 11, 2017); *People v. Valentine*, 113 Cal. Rptr. 2d 748, 753-54, 93 Cal. App. 4th 1241, 1248-49 (Cal. Ct. App. Nov. 21, 2001).

California Penal Code § 288(a) punishes up to eight years' imprisonment "a person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."  Section 288(c)(1) punishes by up to three years' imprisonment the

---

[8] This offense is punishable by up to ten years' imprisonment if the victim is a minor aged 14 and older and punishable by up to twelve years' imprisonment if the victim is a minor under the age of 14.  Cal. Penal Code § 289(a)(1)(B)-(C).

same acts described in section 288(a) committed against a child of age 14 or 15 when the perpetrator is at least ten years older than the victim.

Kollmar's alleged conduct satisfies all of the elements of these California statutes.  As described above, Kollmar is accused of committing sexual penetration and sexual acts when he fondled the victim's breasts and genitals, inserted his fingers into the victim's vagina, and masturbated the victim with the goal of her achieving orgasm.  As Judge Westmore found and as explained in the previous subsection, Kollmar committed these acts against the victim's will by means of duress, as that term is defined under California law.  *See* EX DE 86 at 9; *see also supra* Section I(A).  The sexual penetration of the victim's vagina with his fingers for the purpose of sexual gratification by means of duress is all that is required to satisfy the elements of California Penal Code § 289.  Furthermore, Kollmar began fondling the victim's breasts and genitals when she was age 13, and he began masturbating the victim when she was age 14.  *See*, *e.g.*, EX DE 55 at PDF 47, 99-100.  Kollmar is more than ten years older than the victim.  Kollmar's and the victim's ages further render his conduct illegal under California Penal Code § 288.  Accordingly, Kollmar's conduct underlying the indecent assault charge is criminally punishable by more than one-year imprisonment under California Penal Code §§ 288, 289.

Additionally, Kollmar's conduct could be charged under 18 U.S.C. § 2244(a)(3) had it been committed in the United States.  This provision makes it a crime punishable by up to two years' imprisonment for a person to violate 18 U.S.C. § 2243(a) by engaging in sexual contact, instead of a sexual act.  Sexual contact is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3).  As discussed *supra* Section I(A), 18 U.S.C. § 2243(a) makes it a crime to "knowingly engage[] in a sexual act with another person who has attained the age of 12 years but has not attained the age of sixteen years" when the victim "is at least four years younger than the person so engaging."

As described in the extradition request, Kollmar knowingly engaged in sexual contact with the victim when he fondled the victim's breasts and genitals, inserted his fingers into the victim's vagina, and masturbated the victim with the goal of her achieving orgasm.  This conduct began when the victim was age 13 and continued for several years.  While some of the conduct may have occurred after the

victim attained the age of 16, the victim made clear that Kollmar performed each type of conduct described above, including masturbating her with the goal of achieving orgasm, before her 16th birthday. *See*, *e.g.*, EX DE 55 at PDF 47 (stating that Kollmar began masturbating her shortly after he penetrated her for the first time when she was age 14), 99-100 (confirming that Kollmar began fondling her breasts and genitals in his van in Toronto, Ontario, in the spring of 1976 when she was age 13). As previously established, Kollmar is more than four years older than the victim. Accordingly, the conduct underlying Canada's charge of indecent assault could also be charged under 18 U.S.C. § 2244(a)(3).[9]

Because the conduct underlying both of the criminal charges for which Kollmar's extradition is sought could be punished "by imprisonment or other form of detention for a term exceeding one year or any greater punishment" had it been committed in the United States, the Court should find that dual criminality is satisfied as to both charges.

For several reasons, Kollmar is incorrect that Judge Westmore committed reversible error by citing only California Penal Code § 261 to find dual criminality on both charges. *See* HC DE 1 at 25-26. As a preliminary matter, there is no question that Judge Westmore found dual criminality on both charges for which extradition was sought. *See* EX DE 86 at 18, ¶ 5-6 (referring to Canada's charges of "Rape and Indecent Assault, in violation of sections 143, 144, and 149 of the Criminal Code of Canada" and finding that "[t]hese charges constitute extraditable offenses within the meaning of the Treaty, as well as crimes under the laws in both Canada and the United States, punishable by imprisonment or other form of detention for a term exceeding one year."); *see also id*. at 9. Despite carrying the burden in these proceedings, Kollmar fails to prove that dual criminality is not satisfied on the charge of indecent assault.[10] HC DE 1 at 25-26. Even if Kollmar's conduct underlying the indecent assault charge would not fit within the elements of California Penal Code § 261, to succeed on his habeas petition, Kollmar would need to prove that his conduct does not otherwise equate to a felony under U.S. federal or California law. Given the nature of the conduct at issue, which includes fondling the victim's

---

[9] As discussed *supra* note 6, it is irrelevant that Canada does not seek Kollmar's extradition for statutory rape and that the U.S. federal statute includes additional elements required to establish jurisdiction in U.S. federal courts.

[10] To the extent Kollmar is arguing that a single U.S. statute could not be used to support dual criminality on multiple foreign charges, he does not cite to any legal support for that proposition nor is the government aware of any.

1   breasts and genitals, inserting his fingers into her vagina, and masturbating her without her consent

2   when she was between the ages of 13 and 16, such an argument would be absurd.  Indeed, as the

3   government discussed above, there are numerous statutes under which Kollmar's conduct could be

4   charged as a felony had it been committed in the United States.[11]  Moreover, Judge Westmore's findings

5   on dual criminality are of limited value because this Court reviews issues of dual criminality *de novo*.

6   *E.g.*, *Quinn*, 783 F.2d at 791.

7       For the reasons set forth herein, the Court should find that the charges for which Canada seeks

8   Kollmar's extradition are extraditable offenses under the Treaty.

9   **II.    The Extradition Request Contains Competent Evidence of Probable Cause**

10      The standard of proof for the extradition court to find the evidence "sufficient to sustain the

11  charge . . ." pursuant to 18 U.S.C. § 3184 is the familiar domestic requirement of probable cause.  The

12  evidence is sufficient, and probable cause is established, if it would cause a "prudent man" to "believ[e]

13  that the (suspect) had committed or was committing an offense."  *Gerstein v. Pugh*, 420 U.S. 103, 111

14  (1975) (internal quotation marks and citation omitted); *see also Collins*, 259 U.S. at 316 ("The function

15  of the committing magistrate is to determine whether there is competent evidence to justify holding the

16  accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.");

17  *Fernandez*, 268 U.S. at 312 ("Competent evidence to establish reasonable grounds is not necessarily

18  competent evidence to convict.").

19      The magistrate judge's probable cause determination is "not a finding of fact 'in the sense that

20  the court has weighed the evidence and resolved disputed factual issues,'" but instead "'serve[s] only the

21  narrow function of indicating those items of submitted evidence on which the decision to certify

22  extradition is based.'"  *Quinn*, 783 F.2d at 791 (citations omitted).  Accordingly, probable cause in an

23  extradition proceeding may not be defeated when a fugitive alleges that the evidence submitted by the

24  requesting country contains inconsistencies.  *See, e.g.*, *In re Extradition of Shaw*, 2015 WL 3442022, at

25

26  ───────────────

    [11] Kollmar misstates the record when he claims, "The only analog [for the indecent assault charge]
    identified in the litigation before the magistrate court was [California Penal Code] § 243.4(e)(1)."  HC
27  DE 25-26.  While this is the only statute *he* identified during the prior proceedings, the government set
    forth, and continues to rely on, numerous analogous U.S. statutes in support of dual criminality.  *See* EX
28  DE 39 at 2, 12-13; EX DE 70 at 3-7.  Yet, he does not challenge the government's reliance on any of
    these statutes in his habeas petition.  *See* HC DE 1 at 25-26.

*7-11 (S.D. Fla. 2015) (finding probable cause despite fugitive's arguments that the evidence against him was "unreliable, contradictory, inconsistent, unbelievable, and inadmissible"); *In re Extradition of Figueroa*, 2013 WL 3243096, at *8 (N.D. Ill. June 26, 2013) ("In sum, although we agree with [the fugitive] that the evidence that Mexico has provided is by no means perfect, the issue before us is not whether [he] should be convicted of the crime…. Although there may be some inconsistencies in the record, we do not believe that these are so compelling as to negate a finding of probable cause.").  This principle accords with the fact that an extradition hearing is only preliminary in nature and is not a determination of guilt; accordingly, the resolution of any inconsistencies in the record, as well as the weighing of inculpatory with exculpatory evidence, are tasks that are properly left to the courts in the requesting country.  *See*, *e.g.*, *Collins*, 259 U.S. at 316; *Neely v. Henkel*, 180 U.S. 109, 123 (1901).

Because the extradition court's function is not to weigh the evidence and determine Kollmar's guilt, Judge Westmore's probable cause determination is reviewed in habeas under a deferential standard and "must be upheld if there is any competent evidence in the record to support it."  *Quinn*, 783 F.2d at 791 (quoting *Caplan*, 649 F.2d at 1342 n.10); *see also Fernandez*, 268 U.S. at 312.  "The usual rules of evidence do not apply in extradition hearings and, unless the relevant treaty provides otherwise, the only requirement for evidence is that it has been authenticated."  *Manta*, 518 F.3d at 1146 (citing *Oen Yin–Choy v. Robinson*, 858 F.2d 1400, 1406 (9th Cir. 1988)).  Properly authenticated evidence is deemed competent evidence for purposes of evaluating a probable cause determination.  *See id.*  Article 10(2)(a) of the Treaty sets forth the procedures for authenticating evidence, EX DE 39-1 at bates 77, and Kollmar does not dispute that these procedures were followed in this case, *see* HC DE 1 at 27-33.

The primary evidence in support of the extradition request are statements from the victim describing the conduct Kollmar inflicted upon her.  The testimony of a single witness can be sufficient to satisfy the higher, beyond-a-reasonable-doubt standard required for a conviction under U.S. law. *E.g.*, *Bruce v. Terhune*, 376 F.3d 950, 954-55 (9th Cir. 2004) (finding no due process violation in a jury instruction providing that the testimony of a single witness could be sufficient to convict without corroboration); *People v. Young*, 105 P.3d 487, 505 (Cal. 2005) ("Unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.").  As such, the victim's statements against Kollmar may satisfy the probable cause standard

1  for purposes of this extradition proceeding so long as they set forth reasons to believe Kollmar

2  committed the offenses for which his extradition is sought.

3  Extradition courts "'must accept as true all of the statements and offers of proof by the

4  demanding state, reserving the weighing of evidence . . . for the courts in the requesting country." *In the*

5  *Matter of the Extradition of Martinelli Berrocal*, 2017 WL 3776953, at *35 (S.D. Fla. Aug. 31, 2017)

6  (citation and internal quotation marks omitted); *see also*, *e.g.*, *Collins*, 259 U.S. at 316; *Ahmad v. Wigen*,

7  726 F. Supp. 389, 399-400 (E.D.N.Y. 1989), *aff'd*, 910 F.2d 1063 (2d Cir. 1990) ("The primary source

8  of evidence for the probable cause determination is the extradition request, and any evidence submitted

9  in it is deemed truthful for purposes of this determination.") (quotation omitted).

10  For the reasons set forth below, Judge Westmore correctly determined that the extradition

11  request contained competent evidence to support a finding of probable cause on both charges brought

12  against Kollmar.

13  ### A.    Canada's Evidence Establishes Probable Cause that Kollmar Committed Rape

14  To constitute rape under Section 143(a) of the Criminal Code of Canada, the prosecution must

15  establish that a male person had sexual intercourse with a female person who was not his wife and did

16  not consent to the sexual intercourse.[12]  EX DE 39-1 at bates 8.  The prosecution must also prove that

17  the perpetrator knew, or was reckless or willfully blind, to the victim's lack of consent.  *Id.* at 11.  To

18  establish lack of consent, the Canadian courts look to the subjective state of mind of the victim to

19  determine whether consent was voluntarily and freely provided, with consideration given to the

20  relationship between the perpetrator and victim and any threats or fear of bodily harm.  *Id.* at 9-10.

21  As set forth in the extradition request and supplementary materials, the victim's written and oral

22  statements to the Canadian authorities establish probable cause on all of the elements of Section 143(a)

23  of the Criminal Code of Canada.  The victim told Canadian authorities that, on Mother's Day weekend

24  in 1977, when she was 14 years' old, Kollmar penetrated her vagina with his penis.  EX DE 55 at PDF

25

26  ---

[12] A person can also be guilty of rape under Section 143(b) if consent is given but that consent is
"extorted by threats or fear of bodily harm," "is obtained by impersonating her husband" or "is obtained

27  by false and fraudulent representations as to the nature and quality of the act."  EX DE 39-1 at bates 8.
According to the extradition request, the Canadian prosecutor intends to rely primarily on Section

28  143(a), lack of consent.  *Id.* at 8; *see also id.* at 15-17 (setting forth the theory of rape based on lack of
the victim's genuine consent).

47-48, 152-53.  He only "partially penetrated" her because he purportedly wanted her to remain a virgin until he married her.  *Id.* at 47, 152.  He did this on four or five more occasions between spring of 1977 and spring of 1979, when she was age 16.  *Id.* at 138, 152.  The victim also told authorities that "99% of the time," Kollmar preluded these sexual encounters by "verbally humiliating and demoralizing" her for up to two hours at a time.  *Id.* at 151.  Specifically, he called her names such as, "stupid," "a piece of shit," "fat and ugly," and told her that she was "a terrible person" who should be ashamed of herself.  *Id.* He also told her that she "must submit [her] will to him."  *Id.*

In addition to feeling humiliated and degraded immediately prior to the sexual abuse, the victim also stated that Kollmar "intimidated" her, such that she was never free from fear, intimidation, or oppression in his presence.  *E.g.*, *id.* at 28, 40, 43-44, 48, 147, 150-52.  The victim felt that she could not tell anyone about the abuse because Kollmar was a well-respected man in the community, and Kollmar had told her that no one would believe her if she told anyone.  *Id.* at 33-34, 51-52, 59, 148, 150, 153.  She told Canadian authorities that she now saw Kollmar's behavior as a form of "brain washing."  *Id.* at 131.  Kollmar also physically assaulted the victim on occasion, as well as threatened to assault her on other occasions.  *Id.* at 45, 151-52.

As the extradition request sets forth, this testimony from the victim is sufficient to establish probable cause that Kollmar committed rape in violation of Section 143(a) of the Criminal Code of Canada.  In particular, Kollmar's partial penetration of the victim, who was not Kollmar's wife, constitutes a necessary act under the Canadian statute.  EX DE 39-1 at bates 15.  Additionally, the Canadian prosecutor has set forth why, under Canadian law, Kollmar's acts were committed without the victim's "genuine consent."  Specifically, the prosecutor explained that the relationship of authority Kollmar had over the victim, the victim's stated fear of Kollmar, the threats of violence, and the incidents of violence, constituted sufficient evidence that the victim did not provide valid consent to be sexually touched.  *Id.* at 16-17.  The prosecutor also explained that, in light of these circumstances and the victim's reluctance to participate in these sexual activities, Kollmar knew, or was reckless or willfully blind to, the victim's lack of consent to the sexual activity.  *Id.* at 17.  Accordingly, there is probable cause to believe that Kollmar committed rape against the victim in violation of Section 143(a) of the Criminal Code of Canada.

Kollmar's argument that the Court must reject a finding of probable cause on the rape charge as a matter of law is meritless.  HC DE 1 at 34-37.  *First*, Kollmar's argument that he did not use force or violence to commit the rape is misplaced.  HC DE 1 at 34.  Canada's legal theory does not turn on whether Kollmar used physical violence against the victim to induce sexual intercourse; rather, Kollmar is guilty of the offense if he engaged in sexual intercourse without the consent of the victim.  EX DE 39-1 at bates 8.  As Canadian authorities explained, lack of consent may be proven through myriad of factors that do not include physical violence.  *Id.* at 9-10.  *Second*, Kollmar's physical violence and threats of physical violence against the victim need not be contemporaneous with the sexual encounter to vitiate consent.  HC DE 1 at 34, 36.  The victim described an ongoing, constant pattern of fear and intimidation, which are sufficient to negate valid consent under Canadian law.  EX DE 39-1 at bates 16-17.  Additionally, contrary to Kollmar's assertion, HC DE 1 at 34-35, the victim established that she was subject to constant fear and intimidation in Kollmar's presence; it is irrelevant that she was not with Kollmar every single day of the relevant time period because the abuse only happened in Kollmar's presence.  *Fourth*, the fact that the victim never used the term "rape" is irrelevant because she described acts that meet the legal definition of rape.  HC DE 1 at 34.  *Lastly*, the fact Kollmar may have believed the victim "had this special love for him as well" does not prove that he lacked the requisite understanding of the victim's state of mind.  *Id.* at 36-37.  Given the years of sexual, physical, and emotional abuse Kollmar inflicted upon the victim, a reasonable person could conclude that Kollmar knew, or at least was reckless or willfully blind to, the victim's lack of consent to the sexual intercourse.  Accordingly, the record contains competent evidence to support Judge Westmore's probable cause determination on the rape charge.

## B. Canada's Evidence Establishes Probable Cause that Kollmar Committed Indecent Assault

Section 149 of the Criminal Code of Canada provides that a person is guilty of indecent assault if he touches the victim in an indecent manner without the victim's consent.  EX DE 39-1 at bates 12-13.  Under Canadian law, touching is "indecent" if it has a sexual purpose.  *Id.*  Whether a touching is indecent is determined by the objective facts, not the mental state of the alleged perpetrator.  *Id.* at 13.  For purposes of this statute, lack of consent is determined in the same manner as rape, as described in

the previous subsection. *Id.* Prosecutors must also establish that the perpetrator intended to touch the victim and either knew, was reckless, or was willfully blind to the victim's lack of consent. *Id.*

The victim described numerous incidents of unwanted sexual touching at the hands of Kollmar. Specifically, the victim explained that, in Sudbury, Ontario, Kollmar took the victim on walks away from the victim's family, at which point he would fondle the victim's breasts. EX DE 55 at PDF 34-36, 121-22, 148. The victim also stated that, when meeting Kollmar in Toronto, Ontario, Kollmar fondled the victim's breasts and genitals while in his van. *Id.* at 37, 149. Kollmar later progressed to inserting his fingers into the victim's vagina and masturbating her. *Id.* at 39, 47, 149, 152.

Consistent with the Canadian prosecutor's analysis, the victim's testimony in this regard is sufficient to establish probable cause that Kollmar committed indecent assault against the victim. *First*, he repeatedly touched the victim in a sexual manner. *Second*, as set forth in the previous subsection, the victim did not genuinely consent to Kollmar's sexual touching. *See supra* Section II(A). *Third*, for the same reasons Kollmar knew, or was reckless or willfully blind, to the victim's lack of consent to the sexual intercourse, he was also aware of the victim's lack of consent over the sexual touching. *See id.* Accordingly, the extradition request provides sufficient evidence of probable cause that Kollmar committed both rape and indecent assault in violation of Canadian law.

C.    **The Magistrate Judge Properly Considered the Evidence in the Extradition Request and Appropriately Rejected Kollmar's Attempt to Introduce Contradictory Evidence**

Kollmar argues that Judge Westmore failed to consider the full scope of the record and ignored evidence that undermined the victim's credibility when finding probable cause to support the Canadian charges. HC DE 1 at 28-33. However, his argument misconstrues Judge Westmore's decision and the applicable case law. Contrary to Kollmar's assertions, Judge Westmore did not fail to consider the "totality of the circumstances" or "the victim's credibility," *id.* at 28-29; rather, Judge Westmore correctly recognized that Kollmar's attempt to undermine the victim's credibility with contradictory evidence, including numerous written statements from other "community members," was not appropriate in this extradition proceeding, EX DE 86 at 10-13. Indeed, as Judge Westmore found, Kollmar's effort to convert his extradition hearing into a mini-trial on the victim's credibility is foreclosed by precedent. *See, e.g., Charlton v. Kelly*, 229 U.S. 447, 461 (1913) (extradition magistrate

did not err by excluding "witnesses produced to contradict the testimony for the prosecution" because such an "objection . . . should be taken before or at the time of his trial for the crime, and heard by the court having jurisdiction of the crime"); *Santos v. Thomas*, 830 F.3d 1002-03 (9th Cir. 2016) (en banc) (defense evidence that poses a "conflict of credibility" is inadmissible contradictory evidence); *Choe*, 525 F.3d at 740 (witness's alleged lack of credibility was "merely a weakness" in the government's case and did not "completely obliterate the evidence of probable cause"); *Barapind*, 400 F.3d at 744 (affidavit that contradicted allegations in the extradition request "constituted conflicting evidence, the credibility of which could not be assessed without a trial" and was properly excluded); *Emami*, 834 F.2d at 1452 ("An extradition proceeding is not a trial; the relevant determination is confined to whether a prima facie case of guilt exists that is sufficient to make it proper to hold the extraditee for trial."); *Quinn*, 783 F.2d at 815 ("The magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense."); *see also Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993) (fugitive has no right to attack the credibility of witnesses at an extradition hearing, as issues of credibility are to be determined at trial); *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973) (evidence that would pose conflict of credibility "should properly await trial in Israel").  Rather, as noted previously, the Court must accept the victim's statement as true for purposes of this extradition hearing.  *See, e.g.*, *Collins*, 259 U.S. at 316; *Martinelli Berrocal*, 2017 WL 3776953, at *35; *Ahmad*, 726 F. Supp. at 399-400.

The canon against making credibility determinations in extradition proceedings does not mean that the extradition court must rely solely on the fact that Kollmar is subject to an arrest warrant in Canada when making its probable cause finding.  Instead, as Judge Westmore did, the extradition court considers the evidence underlying the Canadian charges, supplied in the request for Kollmar's extradition and supplementary materials, and determines whether such evidence satisfies the U.S. probable cause standard.  Thus, Judge Westmore correctly considered whether the evidence submitted by Canada established probable cause and appropriately rejected Kollmar's attempt to introduce contradictory evidence.

Contrary to Kollmar's claim, HC DE 1 at 29, Judge Westmore considered Kollmar's alleged inconsistencies within the victim's statement but correctly found that Kollmar's arguments did not obliterate probable cause, EX DE 86 at 11-13.  Indeed, Judge Westmore found that the video of the victim's statement to Canadian authorities "further affirms [her] credibility" because she "appears to be truthful and genuinely emotional, and while she, at times, refers to her written statement, she generally does not read from it."  EX DE 86 at 13.  Kollmar's attempt to obliterate probable cause based on inconsistencies is "a very difficult standard to meet," *In re Extradition of Shaw*, No. 14-CV-81475-WM, 2015 WL 3442022, at *9 (S.D. Fla. May 28, 2015), if not impossible, especially where "[t]he primary source of evidence for the probable cause determination is the extradition request, and any evidence submitted in it is deemed truthful for purposes of this determination," *Matter of Extradition of Atta*, 706 F. Supp. 1032, 1051 (E.D.N.Y. 1989) (citing *Collins*, 259 U.S. at 315-16).  As set forth in the previous subsections, the evidence submitted by Canada is more than sufficient to establish probable cause that Kollmar committed the two offenses for which his extradition is being sought.

In any event, as Judge Westmore concluded, EX DE 86 at 11-13, Kollmar's alleged inconsistencies and implausibilities in the victim's statement do not obliterate probable cause.  For example, Judge Westmore correctly rejected Kollmar's attempt to undermine the victim's credibility in the following ways:[13]

- Kollmar claims the victim's story is implausible because no one else noticed Kollmar's alleged abuse of the victim.  HC DE 1 at 30.  However, the victim told Canadian authorities that the physical and sexual abuse took place while she and Kollmar were alone.  *E.g.*, EX DE 55 at PDF 34, 37, 45, 148-49.  Thus, it would make sense that no one witnessed the abuse.  Moreover, the victim stated that other members of the Students of Light were aware that she was spending a substantial amount of time with Kollmar alone because she was confronted by these individuals for taking up too much of Kollmar's time.  *Id.* at 37-38, 149.

- Kollmar asserts that the incident the victim described in Buffalo, New York, could not have happened because Kollmar's passport does not show any trips between Toronto and Buffalo during the relevant time period.  HC DE 1 at 31-32.  This argument is not compelling.  *First,* the Canadian authorities have made clear that the incident in Buffalo is not part of the charged offenses, EX DE 39-1 at bates 17, and as such, any credibility

---

[13] While Kollmar alleges numerous inconsistencies in the Statement of the Case and Statement of the Facts sections of his habeas petition, the government addresses only those alleged inconsistencies discussed in the Argument section.  *See, e.g.*, *Martinez-Serrano v. Immigration & Naturalization Svc.*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not supported by argument are deemed abandoned . . . Furthermore, an issue referred to in the appellant's statement of the case but not discussed in the body of the opening brief is deemed waived.") (internal citations omitted).

concerns regarding this incident could not undermine probable cause. *Second*, prior to 2009, citizens of the United States and Canada could travel between these two countries without presenting a passport. EX DE 79 at PDF 10-12, 21. Instead, travelers were permitted to make oral declarations of citizenship or present one of approximately 8,000 documents to prove identity and citizenship. *See id.* Thus, the absence of stamps in Kollmar's passport does not disprove the victim's claims.

- Kollmar also claims that the victim was untruthful because Kollmar's parents did not yet own the home in Buffalo that the victim describes. HC DE 1 at 32. Specifically, the victim stated that Kollmar gave her a massage in the "front living room" of his parents' home in Buffalo, EX DE 55 at PDF 30, 83, 147, but Kollmar claims that his parents did not own a home with a front and back living room until after the date alleged by the victim, HC DE at 13. However, the victim never claimed the home had more than one living room. EX DE 55 at PDF 30, 83, 147. Accordingly, Kollmar's attempt to undermine the victim's credibility on this point is not persuasive.

- Kollmar further questions the victim's account of the incidents in Buffalo because his private investigator was unable to confirm the existence of commercial flights between Toronto and Buffalo during the relevant time period. HC DE 1 at 32. However, Kollmar's private investigator does not provide any information about the nature or extent of his search for commercial flights during this time period. *See* EX DE 64-3 at 2. He merely states that he was "unable to locate any information that supported the allegation that any such flights existed during that time period." This absence of evidence neither proves nor disproves the victim's account.

- Kollmar further claims that the victim's account is not credible because her description of Kollmar's van does not match the description provided by other people who knew Kollmar during the relevant time period. HC DE 1 at 32-33. However, Judge Westmore correctly declined to consider this evidence as inappropriate contradictory evidence. EX DE 86 at 13 n.6.

- Kollmar further attempts to undermine the victim's credibility by claiming that her account of events that occurred in South Carolina are "fantastical." HC DE 1 at 30-31. However, as Judge Westmore found, parts of Kollmar's description of the alleged "fantastical" events do not accurately reflect the victim's statement. EX DE 86 at 13 (referencing EX DE 55 at PDF 58-61).

For the foregoing reasons, Canada's extradition request contains competent evidence to support Judge Westmore's conclusion that probable cause was established to believe that Kollmar committed the two offenses for which extradition is sought.

## III. Kollmar's Extradition Is Not Barred Due to Lapse of Time

Article 4(1)(ii) of the Treaty states that extradition shall not be granted "when the prosecution for the offense has become barred by lapse of time according to the laws of the requesting state." EX DE 39-1 at bates 94. Canada is the "requesting state" in this case. The extradition request confirms, and Kollmar does not dispute, that the prosecution of the offenses for which Kollmar's extradition is sought is not barred by any applicable Canadian statute of limitation. EX DE 39-1 at bates 15; *see* HC DE 1 at

1  37 (acknowledging, without contesting, a statement from the Canadian prosecutor that Kollmar's

2  prosecution is not barred by any statute of limitations in Canada).

3        Notwithstanding this, Kollmar continues to assert, as he did below, that his extradition is barred

4  because the lapse of time between when the offenses occurred and when charges were brought violates

5  Canada's Charter of Rights and Freedoms.  HC DE 1 at 37-38.  This is incorrect because, as set forth

6  below, constitutional principles under the Canadian Charter, such as due process, are not incorporated

7  into the Treaty's lapse of time provision.  Additionally, Kollmar erroneously argues that his extradition

8  is barred due to a lapse of time according to California's statute of limitations, when the language of the

9  Treaty is clear that it is Canada's statutes of limitation that apply in this case.  Accordingly, Judge

10  Westmore correctly determined that certification of Kollmar's extraditability is not barred due to lapse

11  of time.

12      **A.**    **Extradition Is Not Barred by Principles in Canada's Charter of Rights and**

13            **Freedoms**

14        The same constitutional concepts generally applicable in criminal cases are not applicable in

15  international extradition cases, which are not criminal cases.  *See, e.g.*, *Matter of Requested Extradition*

16  *of Kirby*, 106 F.3d 855, 857 n.1 (9th Cir. 1996) ("The [extradition] case before us is neither a civil case

17  nor a criminal case."); *In re Extradition of Kraiselburd*, 786 F.2d 1395, 1398 (9th Cir. 1986) (declining

18  to read constitutional principles into an extradition treaty); *Kamrin v. United States*, 725 F.2d 1225,

19  1227-28 (9th Cir. 1984) (same).  Indeed, courts have repeatedly held that the type of "lapse of time"

20  provision contained in Article 4(1)(ii), which is commonly found in extradition treaties, refers only to

21  the running of the applicable statute of limitations, and not to constitutional principles.  *See, e.g.*,

22  *Martinez v. United States*, 828 F.3d 457-64 (6th Cir. 2016) (en banc) (holding that the "lapse of time"

23  provision in an extradition treaty did not incorporate the Sixth Amendment's speedy-trial protections,

24  but rather, refers only to the applicable statute of limitations); *Yapp v. Reno*, 26 F.3d 1562, 1566-68

25  (11th Cir. 1994) (same); *Garfias*, 2009 WL 2580641, at *2-3 (collecting cases).  The government is not

26  aware of any reported cases in support of Kollmar's attempt to import constitutional requirements into a

27  treaty's lapse of time provision.  Significantly, Kollmar has never cited to any case law in support of his

28

1  attempt to import the Canadian Charter's due process rights into Article 4 of the Treaty.  *See* HC DE 1 at

2  37-38; EX DE 66-1 at 36; *see also* EX DE 64-2; EX DE 80.

3        Indeed, there are compelling reasons why constitutional principles are not incorporated into

4  "lapse of time" provisions in extradition treaties.  According to Kollmar's own Canadian lawyer, the

5  Canadian Charter does not demand a fixed time limit for finding a violation of "inordinate delay and

6  lapse of time in laying criminal charges," but rather, a breach of the Charter may be established where

7  the delay in bringing charges is found to be "unreasonable" based on a fact-specific analysis of the

8  particular case.  EX DE 64-2 at 2-3.  Incorporating such flexible constitutional principles into a treaty

9  provision would require courts to assess the reasonableness of a foreign government's action without

10 sufficient information about that country's procedures or applicable legal standards, either in general or

11 in the specific case.  This would be in tension with the rule of non-inquiry in international extradition

12 cases, which prohibits U.S. courts from examining the criminal justice systems of foreign nations in

13 reviewing extradition requests.  *See Yapp*, 26 F.3d at 1567-68; *Martinez*, 828 F.3d at 463-64.  Moreover,

14 this would be inconsistent with the intent of the parties, who did not incorporate constitutional principles

15 into Article 4 of the Treaty.  *See Martinez*, 828 F.3d at 464 ("Before we task the courts of both countries

16 with refereeing these elusive and deeply sensitive inquiries, we should be sure the negotiating countries

17 wanted them as umpires"); *Yapp*, 26 F.3d at 1568 ("We do not think the parties who negotiated the . . .

18 Extradition Treaty would have intended to abrogate the rule of non-inquiry without stating their

19 intention to do so more explicitly").  Thus, Kollmar's argument is more appropriate to raise as a defense

20 to his criminal proceedings in Canada, not during his extradition proceedings in the United States.

21       Significantly, this position is consistent with Canada's view of the Treaty.  *See* EX DE 79 at PDF

22 5-6.  According to Canadian authorities, the lapse of time provision in the Treaty does not incorporate

23 Sections 7 or 11 of the Canada's Charter of Rights and Freedoms, but rather, refers only to statutory bars

24 on when criminal prosecutions can be brought.  *See id.*  Indeed, the Supreme Court of Canada has

25 determined that the Treaty's lapse of time provision refers only to the statute of limitations, not Section

26 11 of the Charter.  *Id.* at 6 (citing to *Argentina (Republic) v. Mellino*, [1987] 1 S.C.R. 536 (Can.)).  The

27 treaty partners' consistent interpretation of a treaty provision is entitled to significant deference.  *See*,

28 *e.g.*, *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) (giving deference to the interpretation of treaty a

provision as set forth in diplomatic notes exchanged between the responsible agencies of the United States and of Yugoslavia); *Arias Leiva v. Warden*, 928 F.3d 1281 (11th Cir. 2019) (finding that the U.S.-Colombia extradition treaty is in full force and effect because, *inter alia*, both the United States and Colombia understand it to be in effect).

Kollmar's attempt to distinguish *Mellino* falls short.  *First*, the Canadian government's interpretation of its own case law and the Treaty that are entitled to deference.  *E.g.*, *id.*; *Emami*, 834 F.2d at 1449 (noting that foreign governments are entitled to deference on the interpretation of its own laws); *Cornea v. United States*, 771 Fed. App'x 944, 947-48 (11th Cir. 2019) (deferring to the Greek government's interpretation of its own laws).  *Second*, as Judge Westmore found, EX DE 86 at 16 n.7, it is irrelevant that *Mellino* was addressing a foreign country's request for extradition of a person located in Canada because the extradition treaty at issue in *Mellino*, like the Treaty in this case, applied Canada's lapse of time laws, EX DE 79 at PDF 6.  Thus, as applicable here, the Canadian Supreme Court decided in *Mellino* that, for purposes of lapse of time provisions in which Canadian law controls, those provisions do not include remedies under the Canadian Charter, but rather, refer only to the applicable Canadian statutes of limitation.  *See id.*

Finally, the extent, if any, to which an unfair delay should factor into the United States' extradition decision, it is a determination that should be left to the Secretary of State.  *See*, *e.g.*, *Choe*, 525 F.3d at 741-42 ("To the extent there was a delay, this is a matter left for the Secretary of State's consideration"); *Martin*, 993 F.2d at 830 (fugitive "should direct his argument that extradition is unjust in this case based on Canada's alleged lengthy delay in seeking extradition or on humanitarian grounds to the Executive Branch").  Such a judgment clearly affects foreign relations, not to mention the requesting country's willingness to honor extradition requests from the United States.  It also requires a level of knowledge of another country's judicial systems, procedures, resources and other factors that the Secretary of State is in a better position to know and evaluate.  *Cf. Kamrin*, 725 F.2d at 829 (adoption of speedy extradition right would conflict with the rule of non-inquiry, which generally "precludes extradition magistrates from assessing the investigative, judicial, and penal systems of foreign nations when reviewing an extradition request").  Accordingly, the Court should, like Judge

Westmore,[14] reject Kollmar's attempt to read principles found in the Canadian Charter into Article 4(1)(ii), the Treaty's lapse of time provision.[15]

**B.    The Treaty Does Not Bar Extradition Based on the California Statute of Limitations**

Kollmar is also incorrect that the Treaty prohibits extradition if prosecution were barred by the California statutes of limitation.  *See* HC DE 1 at 38-41.  Kollmar's argument ignores the plain language of the Treaty's lapse of time provision, Article 4, which provides that only the Canadian statutes of limitation apply to extradition requests filed in the United States.[16]  EX DE 39-1 at bates 94; *see also supra* Section III(A).

His attempt to read an additional statute of limitations requirement into Article 10 of the Treaty is misplaced.  Article 10(1) provides:

> Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting state.

---

[14] Kollmar implies that Judge Westmore erroneously rejected his Charter-based arguments without addressing Article 8 of the Treaty, but he does not explain how Article 8 supports his attempt to read Canadian constitutional principles into a separate article of the Treaty, Article 4.  HC DE 1 at 38.  Indeed, Article 8 of the Treaty merely states that extradition proceedings taking place in the United States are conducted pursuant to U.S. extradition law and procedures.  *See* EX DE 39-1 at bates 97.

[15] Even if the Court were to address Kollmar's argument that his prosecution is barred under Sections 7, 11(a), and 11(b) of the Canadian Charter, the Court should reject it.  According to Canadian authorities, the Canadian Supreme Court, in interpreting Section 11(b) of the Canadian charter, established a 30-month deadline by which prosecution must commence, but that deadline can be excused in cases of "exceptional circumstances."  EX DE 79 at PDF 7.  Numerous Canadian courts have found that "exceptional circumstances" exist where the defendant was charged in Canada but residing in another country, like Kollmar.  *Id*. at 7-8.  Similarly, Section 11(a) of the Charter looks to the same factors as 11(b) when determining whether a delay in notifying the defendant of charges against him was unreasonable.  *Id*. at 8.  Moreover, as required by Section 11(a), Kollmar will likely be unable to establish that he is prejudiced in his ability to amount a defense or preserve or gather evidence.  *See id.* at 9.  Lastly, Section 7, which provides protections for delays in bringing charges against a defendant, only applies to delays directly attributable to the government.  *Id*. at 10.  Here, the Canadian government was not aware of the crimes until many years after they occurred, and such delay therefore cannot be attributed to the government.  Significantly, the initial set of charges against Kollmar were filed on November 17, 1997, approximately nine months after the victim first presented her claims to Canadian authorities.  EX DE 39-1 at bates 30, 34-36.

[16] For this same reason, the Court should reject Kollmar's vague, unsupported claim that his extradition should be barred by U.S. constitutional principles of due process.  HC DE 1 at 41-42.  Even if U.S. law was included in the lapse of time provision in Article 4(1)(ii), Kollmar's due process claim would fail for the same reasons cited in the previous subsection: the Treaty's lapse of time provision references only statutes of limitations, not constitutional principles.  *See supra* Section III(A).

EX DE 39-1 at bates 97.  Through a plain reading of this provision, this Article refers to the evidentiary

standard the requesting country must meet in order to secure an individual's extradition.  In the case of a

person who is sought in the United States and has not yet been prosecuted, like Kollmar, this provision

requires that the extradition request meet the U.S. evidentiary standard of probable cause that would be

required to justify Kollmar's committal for trial had the offenses been committed in the United States.

Indeed, as Judge Westmore noted, EX DE 86 at 17, the Ninth Circuit has already held that the type of

provision contained in Article 10(1) of the Treaty refers to the requirement that an extradition request

meet the U.S. probable cause standard.  *E.g.*, *Quinn*, 783 F.2d at 783 (addressing a similar provision in

the United States-United Kingdom extradition treaty and noting that "United States courts have

interpreted this provision in similar treaties as requiring a showing by the requesting party that there is

probable cause to believe that the accused has committed the charged offense.") (citing *Glucksman v.*

*Henkel*, 221 U.S. at 512 (1911); *United States ex rel. Sakaguchi v. Kaululukui*, 520 F.2d 726, 729-31

(9th Cir.1975).  Indeed, Article 10(1) does not contain any reference to statutes of limitations or any

other law relating to timing.

Reading a U.S. statute of limitations requirement into Article 10(1) would run afoul of Article

4(1)(ii), the Treaty's designated lapse-of-time provision that specifically requires the application of the

requesting state's statute of limitations—Canada in this case.  The Court should not interpret the Treaty

in a manner that would call one of its provisions into question.  *See*, *e.g.*, *Sumitomo Shoji America, Inc.*

*v. Avagliano*, 457 U.S. 176, 185 (1982) ("Our role is limited to giving effect to the intent of the Treaty

parties.").  Indeed, had the parties intended that both parties' statutes of limitations apply in all

extradition requests, they could have done so in Article 4(1)(ii).  Instead, Article 4(1)(ii) is clear that the

parties intended only for the requesting state's statute of limitations to apply.[17]

The single, unpublished, out-of-circuit case to which Kollmar cites does not warrant a different

conclusion.  HC DE 1 at 39-41 (citing *In the Matter of the Extradition of Sylvester*, 2006 WL 6323514

(M.D. Pa. Feb. 14, 2006)).  In *Sylvester*, the court analyzed Article 10(1) of the U.S.-Canada Treaty, and

---

[17] Even if the U.S. statute of limitations were relevant to this case, case law is clear that the federal, not state, statutes of limitations govern the analysis.  *E.g.*, *Theron*, 832 F.2d at 499.  Pursuant to 18 U.S.C. § 3299, there is no statute of limitations for the sexual abuse offenses at 18 U.S.C. §§ 2243, 2244.

1  found that, because Pennsylvania law requires the prosecution to prove as an element of every criminal

2  offense that an applicable statute of limitations did not bar prosecution, the extradition request must

3  establish probable cause that the Pennsylvania statute of limitation had not run.  2006 WL 6323514, at

4  *2 (citing to *Commonwealth v. Bethlehem*, 570 A.2d 563, 568 (Pa. Super.  Ct. 1989)).  However, the

5  persuasiveness of the *Sylvester* decision was subsequently called into question by the Third Circuit

6  Court of Appeals in *Harshbarger v. Regan*, 599 F.3d 290, 294 (3d Cir. 2010) (upholding a decision from

7  the same district court as *Sylvester* finding *Sylvester* "unpersuasive" in its interpretation of Article 10(1)

8  and application of Pennsylvania law).  Additionally, the *Sylvester* court fails to address, let alone

9  resolve, the tension between its application of the U.S. statute of limitations under Article 10(1) of the

10 Treaty and the plain language of Article 4(1)(ii) requiring the contrary.  *See Sylvester*, 2006 WL

11 6323514, at *2-3.

12     Here, the parties agree that the prosecution of the offenses for which extradition is sought is not

13 barred by any statute of limitation in Canada, the requesting state.  EX DE 39-1 at bates 15; *see* HC DE

14 1 at 37.  Accordingly, Kollmar's extradition is not barred due to a lapse of time.

15                                   **CONCLUSION**

16     For the foregoing reasons, the United States respectfully requests that the Court deny Kollmar's

17 petition for writ of habeas corpus.

18

19 Dated:  April 24, 2020                          Respectfully submitted,

20

21                                                 DAVID L. ANDERSON
                                                   United States Attorney
22

23                                                 /s/ Maureen C. Bessette
                                                   MAUREEN C. BESSETTE
24                                                 Assistant United States Attorney
                                                   Northern District of California
25

26                                                 KERRY A. MONACO
                                                   Trial Attorney, U.S. Department of Justice
27                                                 Office of International Affairs

28