COLEMAN & BALOGH LLP
ETHAN A. BALOGH, No. 172224
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Petitioner
DONALD KOLLMAR

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| DONALD KOLLMAR,<br><br>    *Petitioner*,<br><br>*v.*<br><br>UNITED STATES PRETRIAL SERVICES, NORTHERN DISTRICT OF CALIFORNIA,<br><br>    *Respondent*. | Case No.  20 Cv. 1388 LHK<br><br>REPLY MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS<br><br><br><br><br>Before the Honorable Lucy H. Koh<br>United States District Judge |

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

A.    The magistrate court erred when it certified dual criminality for the indecent assault
charge. ……………………………………………………………………………………2

B.    The evidence in this matter demonstrates a lack of probable cause to conclude that
Donald Kollmar forcibly raped Baker. ............................................................................. 7

      1.    Marshalling the inconsistencies, logical fallacies, omissions, and improbabilities
in the complainant's *own* account does constitute "contradictory evidence" that
must be ignored as "improper evidence" as the magistrate court incorrectly
declared; it merely identified the flaws in the complainant's account that cause it
to fall short of establishing probable cause. .......................................................... 7

      2.    The other evidence petitioner presented---property records, scientific studies on
the question of suggested memory, travel records, and witness statements about
Kollmar's whereabouts during the relevant years—was not merely contradictory,
and the magistrate court erred by refusing to consider it. ..................................... 12

      3.    There exists insufficient proof to support a probable cause finding of rape as a
matter of law. ....................................................................................................... 14

C.    The Court should direct the magistrate court to vacate the certification order based on
the extreme passage of time. ........................................................................................... 15

CONCLUSION ......................................................................................................................... 17

I

# TABLE OF AUTHORITIES

**Cases**

*Ahmad v. Wigen*, 726 F. Supp. 389 (E.D.N.Y. 1989) ...................................................9

*Barapind v. Enomoto*, 400 F.3d 744 (9th Cir.2005) .................................................12

*Caplan v. Vokes*, 649 F.2d 1336 (9th Cir. 1981) ......................................................3

*Charlton v. Kelly*, 229 U.S. 447 (1913) ....................................................................8

*Clarey v. Gregg*, 138 F.3d 764 (9th Cir. 1998)...................................................1, 2, 4

*Collins v. Miller,* 252 U.S. 364 (1920) .......................................................................3

*Cucuzzella v. Keliikoa*, 638 F.2d 105 (9th Cir. 1981).................................................4

*In the Matter of the Extradition of Martinelli Berrocal*, 2017 WL 3776953 (S.D. Fla. Aug. 31, 2017) ..................................................................................................................9

*Kelly v. Griffin*, 241 U.S. 6 (1916).............................................................................4

*Manta v. Chertoff*, 518 F.3d 1134 (9th Cir. 2008)......................................................2

*Matter of Extradition of Russell*, 789 F.2d 801 (9th Cir. 1986)...................................4

*People v. McAlpin*, 53 Cal. 3d 1289 (1991).........................................................10, 11

*Peters v. Egnor*, 888 F.2d 713 (10th Cir.1989) ......................................................1, 4

*Quinn v. Robinson*, 783 F.2d 776 (9th Cir. 1986).....................................................7, 9

*Santos v. Thomas*, 830 F.3d 987 (9th Cir. 2016) ...............................................*passim*

*Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973)........................................1, 3, 4, 12

*Skaftouros v. United States*, 667 F.3d 144 (2d Cir.2011) ...........................................14

*United States v. Khan,* 993 F.2d 1368 (9th Cir. 1993)..............................................2, 4

*United States v. Lazarevich*, 147 F.3d 1061 (9th Cir. 1998) .......................................2

*United States v. Linson*, 88 F.Supp.2d 1123 (D.Guam 2000).....................................14

*United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986) ........................................10

**Statutes**

18 U.S.C. § 2243 ............................................................................................. 3, 6

18 U.S.C. § 2244 ............................................................................................. 3, 6

Cal. Penal Code § 243.4 ............................................................................ 3, 4, 5, 6

Cal. Penal Code § 261 ...................................................................................... 2, 3

Cal. Penal Code § 288 ...................................................................................... 3, 5

Cal. Penal Code § 289 ...................................................................................... 3, 5

**Canadian Authorities**

*Canada v. Schmidt*, [1987] 1 S.C.R. 500 ............................................................ 16

Canadian Charter of Rights and Freedoms ...................................................... 15

Crim. Code Canada § 143 .................................................................................. 5

Crim. Code Canada § 149 ......................................................................... 3, 4, 5, 6

Crim. Code Canada § 155 .................................................................................. 5

Crim. Code Canada § 156 .................................................................................. 5

Crim. Code Canada § 157 .................................................................................. 5

Penal Code § 243.3 ............................................................................................ 6

*Regina v. Jordan*, [2016] SCC 27 ...................................................................... 16

*United States v. Burns*, [2001] 1 S.C.R. 283 ...................................................... 16

*United States v. Cobb and Grossman*, [2001] 1 SCR 587 ...................................... 16

**Other Authorities**

9th Cir. R. 36-3 ................................................................................................. 6

Treaty on Extradition between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), *and* Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively the "Treaty") .......................... 1, 15, 16

III

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Government responds to Donald Kollmar's 28 U.S.C. § 2241 petition with three arguments.  *See* ECF 9.[1]  It first disputes petitioner's challenge that indecent assault, as pleaded by the Canadians, does not constitute "an extraditable offense because it could not be punished by more than one-year in imprisonment under U.S. law, as required by the [applicable] Treaty."  ECF 9 at 7:13-15.  But in so arguing, the Government overlooks that the statutes under examination during the dual criminality analysis "must be 'substantially analogous.'"  *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998).  The only "substantially analogous" statute the Canada's "indecent assault" statute is California's "sexual battery" statute, a nonqualifying misdemeanor.  The federal statutes directed at protecting federal prisoners from sexual abuse while in custody and the California statutes proscribing contact with children are not "directed to the same basic evil," *Shapiro v. Ferrandina*, 478 F.2d 894, 908 (2d Cir. 1973), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973), and thus they are not "substantially analogous" and cannot form the basis of dual criminality.  *See Peters v. Egnor*, 888 F.2d 713, 719 (10th Cir.1989).

The Government next challenges the evidence petitioner presented, supports the magistrate court's rejection of that evidence, and defends the sufficiency of evidence to establish probable cause.  *See* ECF 9 at 7:17-21.  But the Government cannot overcome the magistrate court's two significant errors: its (1) incorrect finding that the act of marshalling inconsistencies, logical fallacies, omissions, and improbabilities from the complainant's *own* account constitutes "contradictory evidence" that must be ignored as "improper evidence"; and (2) misapplication of the *en banc* decision in *Santos*, which held (by a 9-2 vote) that extradition

---

[1] As used in this brief, "ECF" refers to the documents filed in this case, and "D.E." refers to the docket entries in the underlying magistrate court proceedings, *In the Matter of the Extradition of Don Kollmar*, Case NO. 19-mj-70677 MAG.  With respect to ECF 1-1 and ECF 9, petitioner cites to the ECF-generated page numbers at the top of the filings.

court (and district court on habeas review) erred by refusing to consider defense evidence that undermined the reliability of the Government's witnesses' accounts.

And third, it argues that the 40-plus year lapse of time does not bar his extradition at this late date. *See id.* at 7:22-8:2. But it arrives at its conclusion (1) without respect to the limits imposed by Canadian law, and (2) by urging the Court to simultaneously apply California law to permit extradition while ignoring the California's black-letter proscription against proceeding with a case as old as this one.

As shall be shown even further, the Government's positions are incorrect. The Court should thus sustain the petition, and entering an Order directing the magistrate court to vacate its certification order and setting petitioner at liberty.

Worth noting too is that the Government does not contest that interpretations of extradition treaties are reviewed *de novo, see Clarey*, 138 F.3d at 765; *United States v. Lazarevich*, 147 F.3d 1061, 1063 (9th Cir. 1998), nor that this Court reviews *de novo* whether a crime falls within the terms of a treaty, including a treaty's requirement of dual criminality. *See Manta v. Chertoff*, 518 F.3d 1134, 1141 (9th Cir. 2008); *United States v. Khan*, 993 F.2d 1368, 1372 (9th Cir. 1993); *see also* ECF 9 at 15:9-16:15 (addressing standards of review). And although the Government agrees with petitioner that a probable cause determination will be upheld upon a finding of competent record evidence sustaining the determination, *see Santos v. Thomas*, 830 F.3d 987, 1001 (9th Cir. 2016) (*en banc*), ECF 9 at 15:25-28, it overlooks that this Court reviews "the extradition court's legal rulings *de novo*, and its findings of fact for clear error." *Santos,* 830 F.3d at 1001. With those clarifications, petitioner proceeds to address the Government's arguments in opposition.

## ARGUMENT

### A.     The magistrate court erred when it certified dual criminality for the indecent assault charge.

The Government concedes, as it must, the magistrate court relied solely on California Penal Code § 261—and no other statute—to sustain its finding of dual criminality. ECF 9 at 22:12-15. Nor could it. *See* D.E. 86 (Order certifying extradition) at 8:4-7 & 9:12-15. But for the reasons shown in his petition and supporting memorandum, Penal Code § 261 cannot

2

establish dual criminality for the indecent assault charge because section 261 requires proof of sexual intercourse, while the Canadian indecent assault charge presented in Count One—a violation of Criminal Code of Canada ("CCC") § 149—does not.  *See* ECF 1-1 at 33:21-34:3.

Tellingly, the Government does not defend the magistrate court's application of Penal Code § 261 to CCC § 149.  It instead ignores the import of that established legal error, and asserts that petitioner must "prove his conduct does not otherwise equate to a felony under" different statutes.  ECF 9 at 22:21-24.  The Government is incorrect, for two reasons.

First, and most obviously, *de novo* review of Penal Code § 261 and CCC § 149 prove that the magistrate court committed error, and for that reason alone the Court must direct the magistrate court to vacate its errant finding.  Second, the only California statute that addresses the conduct proscribed by CCC § 149 is California Penal Code § 243.4(e)(1).  But that statute prescribes a misdemeanor, and thus falls outside the reach of the treaty.

To avoid vacatur of the magistrate court's errant reliance on Penal Code § 261, the Government essentially asks the Court to overlook the magistrate court's error, and to instead rely on California Penal Code §§ 288(a), (c) & 289 as well as 18 U.S.C. §§ 2243(a) & 2244(a)(3), to establish dual criminality.  But the Government's approach misapplies (1) controlling precedent, which does not permit "correction" on appeal, as the Government urges, and (2) dual criminality.

On the first question, the *en banc* Court in *Santos* explains the correct procedure:

> Since this case is here on habeas and not on direct appeal, our mechanism for returning this case to the extradition court is necessarily circuitous, because "the proceeding before a committing magistrate in international extradition is not subject to correction by appeal." *Collins I*, 252 U.S. at 369, 40 S.Ct. 347.… "This somewhat cumbersome method of remand is needed because, owing to the collateral nature of habeas corpus review in an extradition proceeding, we have no direct power to vacate or modify the extradition court's certification." *Caplan*, 649 F.2d at 1345 n. 18 (citing *Shapiro*, 478 F.2d at 914).

*Santos*, 830 F.3d at 1008-09.

3

And on the second question, the Government urges that the Court simply assess the conduct under United States law, and if a crime here, then dual criminality is established. *See* ECF 9 at 17:3-13. But that facile approach misapprehends the limits imposed by dual criminality. While "differences between [foreign and U.S.] statutes aimed at the same category of conduct do not defeat dual criminality[,]" the criminal statutes under comparison "must be 'substantially analogous.'" *Clarey*, 138 F.3d at 765.

For these reasons, "each element of the offense purportedly committed in a foreign country need not be identical to the elements of a *similar* offense in the United States[,]" *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986) (emphasis added), and petitioner does not claim otherwise. Thus the name of the crime doesn't matter; it's the substantially analogous nature of the proscriptions that control. For this reason, when in *United States v. Khan*, 993 F.2d at 1372, the Government (like here) "argue[d] that as long as the underlying conduct is criminal, dual criminality is satisfied[,]" the Court rejected that argument and a finding of dual criminality because Pakistani law of conspiracy was not sufficiently analogous to the federal crime of using a telephone to facilitate a drug offense. *Cf. Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir. 1981) (embezzlement and breach of trust qualify as substantially analogous crimes); *Matter of Extradition of Russell*, 789 F.2d at 803-04 (lack of overt act requirement in foreign jurisdiction did not change substantial analogousness of statutes proscribing conspiracy to commit fraud); *Kelly v. Griffin*, 241 U.S. 6, 14 (1916) (perjury qualified as extraditable offense despite lack of materiality element under Canadian statute). Most succinctly, "when 'the laws of both the requesting and the requested party appear to be directed to the same basic evil,' Shapiro, 478 F.2d at 908, the statutes are substantially analogous, and can form the basis of dual criminality." *Peters,* 888 F.2d at 719.

With that proper understanding, it is clear that the Government's reliance on statutes rejected by the magistrate court cannot undo the lower court's error. CCC § 149 proscribes the crime of sexual battery against any female person, irrespective of age. It constitutes an anodyne sexual assault statute, and tracks California Penal Code § 243.4(e)(1). *See* Declaration of Brian Greenspan filed June 2, 2020 (citing and attaching *R. v. Maurantonio* (sustaining section 149

4

violation where defendant falsely told adult female patients he was a doctor); *King v. Smith* (sustaining section 149 violation for assault against adult female who had accepted defendant's offer of a ride); *R. v. Jenick* (sustaining indecent assault charge under section 149 arising from grabbing victim by the neck, kissing her, and holding her hand on the accused's penis); *R. v. Gale* (sustaining section 149 indecent assault charge arising from pinch of buttocks) ("Greenspan Reply Decl.").  Most succinctly:

> the purpose of this statute was to capture all elements of sexual impropriety between a male and a female that fall short of fellatio/cunnilingus, vaginal penetration, or anal penetration. The latter conduct was captured at the time by the offences of gross indecency (s. 157), rape (s. 143), and buggery (s. 155).  Acts of sexual impropriety committed by a male against a male complaint were addressed separately under s. 156 of the Criminal Code (indecent assault on male).

Greenspan Reply Decl. ¶ 2.  Because the analogous statute (Penal Code § 243.4(e) qualifies as a misdemeanor, it cannot support extradition on Count One.

In contrast, the California statutes the Government conjures—forcible rape pursuant to Penal Code § 289 and statutory sexual assault against a child in violation of Penal Code § 288(a)—are not substantially analogous to CCC § 149.  Section 289 proscribes rape, and whatever comparison the Government might make to assess dual criminality for Count Two, it has no application to the anodyne assault statute, CCC § 149, presented in Count One. Likewise, section 288(a) sounds in a statutory violation based on the victim's age, which (a) is not analogous in any way to CCC § 149, and (b) doubly inapplicable here because, as the Government concedes, the Canadians have dismissed and expressly disavowed pursuing extradition on the "charge of sexual assault against a female aged 14-16[.]" ECF 9 at 10:27-28 (n.4).  The Government cannot be permitted to reject Canada's express limitations on its prosecution and request for extradition by relying on a crime (statutory rape) that Canada expressly has foresworn pursuing at all.  Dual criminality is not an exercise in mixing and matching; it's the identification of "substantially analogous" criminal statutes directed at the

same essential crime, whatever its name.  The only California statute that is substantially

analogous to CCC § 149 is Penal Code section 243.4(e)(4), a nonqualifying misdemeanor.[2],[3]

The Government's reliance on 18 U.S.C. § 2244(a)(3), *see* ECF 9 at 21:16, fares no

better.  Section 2244 is directed at protecting persons of persons held in custody, *viz.*, persons

"in a Federal prison, or in any prison, institution, or facility in which persons are held in custody

by direction of or pursuant to a contract or agreement with the head of any Federal department

or agency[.]" Those proscriptions are in no way analogous to CCC § 149.

And for the same reasons that California's statutory rape proscriptions are not

substantially analogous to Canada's forcible sexual assault charges, neither is 18 U.S.C. §

2243(a).  *Cf.* ECF 9 at 21:22-24.  Indeed, even more so, because section 2243(a), like section

2244, is directed at protecting minors held in custody, *viz.*, persons "in a Federal prison, or in

any prison, institution, or facility in which persons are held in custody by direction of or

pursuant to a contract or agreement with the head of any Federal department or agency[.]"  18

U.S.C. § 2243(a) & (b).  Again, those proscriptions are in no way analogous to CCC § 149.[4]

---

[2] Indeed, the Canadian's choice to forego statutory rape charges based on complainant's age at the time of the allegations reflects its considered choice, to which this Court should give effect.  Forcible rape and statutory rape are *not* substantially analogous, the first is *malum in se*, and the latter *malum prohibitum*.  *See also* ECF 1-1 n.8.  This distinction is all the more important here where the Canadians have abandoned pursuing statutory rape charges in favor of pursuing forcible rape charges.  The Government cannot save an extradition for forcible rape by focusing on statutes that might have supported extradition for statutory rape charges that Canada has renounced.

[3] The magistrate court appears to have assessed a different statute (Penal Code § 243.3) or made a typographical error.  *See* Declaration of Ethan A. Balogh filed June 2, 2020, Ex. 8 at 7 (arguing that Penal Code § 243.4(e)(1) constitutes the substantially analogous California statute for consideration.

[4] In 1993, a panel of the Ninth Circuit issued an unpublished memorandum granting habeas relief when confronted by a substantially similar circumstance, *viz.*, the Government's pursuit of extradition to Canada for a nonconsensual touching crime that amounted to a misdemeanor under California Penal Code § 243.4.  Because Ninth Circuit Rule 36-3 prohibits petitioner from citing the case directly, he complies with the rule.  In so doing, he objects to Rule 36-3 as fundamentally unfair, and qualifies as a denial of equal protection, in violation of the Fifth and Fourteenth Amendments.  Petitioner could cite this authority in any other circuit, and there is no proper basis to preclude him from alerting this Court to non-precedential

For these reasons, the Court should direct the magistrate court to vacate its certification of extradition on Count One for lack of dual criminality.

**B.      The evidence in this matter demonstrates a lack of probable cause to conclude that Donald Kollmar forcibly raped Baker.**

The Government asserts that, contrary to petitioner's contentions, the magistrate court, without even reciting that controlling "totality of the circumstances" standard, nonetheless applied it.  *Compare* D.E. 86 (certification order) *with* ECF 9 at 28:19-29:19.  In so doing, the Government does not identify the supporting record evidence, instead defends the certification order by arguing that the magistrate court correctly rejected considering the totality of the circumstances to avoid a "mini-trial."  *See id.* As shall be shown, the magistrate court erred by following the Government's overstated limitations of evidence, in multiple ways.

**1.      Marshalling the inconsistencies, logical fallacies, omissions, and improbabilities in the complainant's *own* account does constitute "contradictory evidence" that must be ignored as "improper evidence" as the magistrate court incorrectly declared; it merely identified the flaws in the complainant's account that cause it to fall short of establishing probable cause.**

First, while the magistrate court is directed to evaluating carefully the credibility of the complainant's account to determine, in light of all the evidence, whether the Government has established probable cause, *see Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986), *cert. denied*, 479 U.S. 882 (1986) ("[t]he credibility of witnesses and the weight to be accorded their testimony is solely within the province of the extradition magistrate."); *see also* ECF 1-1 at 37:14-25 (collecting cases), the magistrate court failed to perform this critical function when it rejected a critical assessment of the Canadian Government's request for extradition and Baker's written and video-recorded accounts.  In sum, the magistrate court declined assessment of challenges to and arising from these materials—the very basis of Canada's extradition request—because petitioner's challenges undermined the complainant's credibility.  *See* D.E. 86 at 10:7-17.  The magistrate court's determination that evidence from the complainant's *own account*

authority that could help persuade on this important question.  Petitioner thus preserves this challenge for consideration by higher authority should this case advance to such a stage.

7

may not be considered as part of the probable cause analysis constitutes legal error, and the Government does not defend that exclusion of evidence.

The magistrate court's basis for excluding consideration of the *prosecution's* presentation *and* the complainant's inconsistent and improbable statements—a circumstance not supported by any case—constitutes further legal error.  While the magistrate court relied on *Santos v. Thomas*, 830 F.3d at 993, for the proposition that an accused "may not impeach government witnesses or produce witnesses whose testimony contradicts evidence already offered by the government," *Santos* does not so hold with respect to assessing the *Government's* evidence.

Rather, *Santos* acknowledged the difficult challenge courts face when determining "[t]he difference between 'explanatory' and 'contradictory' evidence[,]"[5] and cited various circuit authority to establish the rule that an accused "may not impeach government witnesses or produce witnesses whose testimony contradicts evidence already offered by the Government." *Id*. at 992-93 citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913).  But here, petitioner relied upon the "evidence already offered by the Government['s] witnesses" to identify inconsistencies, omissions, improbabilities, and the lack of clarity from that very account, *viz.*, petitioner identified facts from the Government's presentation that eroded its attempted probable cause showing.   Rather than support rejection, *Santos* required consideration of that evidence.[6]  Indeed, there appears no basis in law to support the Government's position that the magistrate court should consider some of the complainant's statements, but not the portions of it

---

[5] *Santos* observed that "[t]he federal courts have struggled to distinguish between the two." *Id*. at 992.

[6] Similarly, the extradition court's reliance on *Charlton* was misplaced.  *Charlton* held first that "[t]here is not and cannot well be any uniform rule determining how far an examining magistrate should hear the witnesses produced by an accused person[,]" before holding that the magistrate there "did not exceed his authority in excluding evidence of insanity" of the accused. 229 U.S. at 461-62.  *Charlton* does not speak to the issues presented by this case.

that undermine its believability.  *See* ECF 9 at 24:21-22.[7]  For example, the Court could not credit an account of kidnapping by an accused by ignoring a complainant's account—as highlighted by the accused—that the kidnapping was accomplished by an invisible floating orb piloted by Abraham Lincoln.   Rather, the assessment of the "totality of the circumstances" of the prosecution's presentation is required, and there is no proper basis to exclude consideration of the portions of the Government's evidence the magistrate court, in fact, actually received.

Nor does the Government have an answer to the magistrate court's clear errors of fact, including where it found that, on the South Carolina "Midnight Run," Baker only claimed not to have seen a car for "at least an hour" and that it was "not clear if she saw any cars after that." D.E. 86 at 13:9-14.  In Baker's fantastical account, she recounted an adventure lasting eight hours on a South Carolina highway without seeing even one car.  *See* ECF 1-1 at 38:12-26. And the Government similarly fails to respond to the other facts that undermine the complainant's account, but the magistrate court declined to address and instead simply ignored. *See* ECF 1-1 at 38:27-31:27.

At bottom, the magistrate court failed to address the totality of the circumstances of the complainant's own account because it determined that evidence merely "contradict[ed] B.B.'s account[.]" D.E. 86 at 10:10-13.  Indeed, it went so far as to declare boldly that petitioner's marshalling of inconsistencies, logical fallacies, and improbabilities in complainant's less-then-clear account was "not proper in extradition proceedings."  D.E. 86 at 10:10-15.  But that's just wrong: identifying inconsistencies, logical fallacies, omissions, and vague qualities in the complainant's statement does not qualify as "contradicting" the account.  It establishes the bases

---

[7] The Government continues to cite non-binding authority urging that the magistrate court could not err because it was required to rubber stamp the extradition request and "accept as true" everything the Government presented.  ECF 9 at 25:3-9 citing *In the Matter of the Extradition of Martinelli Berrocal*, 2017 WL 3776953, at *35 (S.D. Fla. Aug. 31, 2017) (citation and internal quotation marks omitted) & *Ahmad v. Wigen*, 726 F. Supp. 389, 399-400 (E.D.N.Y. 1989), *aff'd*, 910 F.2d 1063 (2d Cir. 1990) ("The primary source of evidence for the probable cause determination is the extradition request, and any evidence submitted in it is deemed truthful for purposes of this determination.") (quotation omitted).  *Quinn*, which directs magistrate courts in this Circuit to assess the credibility of the Government's witnesses, controls.

9

why a "prudent person" exercising "reasonable caution" would find that there isn't "a fair probability that [petitioner] committed the [alleged] crime."  *See United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).[8]

For example, the magistrate court's finding that "[t]he fact that a rape victim delays reporting does not suggest a credibility problem [because delay in reporting is common in such cases[,]" D.E. 86 at 11:14-17 (citing and quoting *People v. McAlpin*, 53 Cal. 3d 1289, 1300 (1991) ("common stress reactions of rape victims … may include a failure to report, or a delay in reporting, the sexual assault")), is legally incorrect, and ignores the extraordinary facts of this case and *McAplin*'s analysis.

Beginning with *McAlpin*, the magistrate court got it backwards: delays in reporting *do* support challenges to credibility, and *McAlpin* held that the prosecution could introduce *opinion* evidence to rebut those challenges in an attempt to overcome a fact-finder's concerns about delayed reporting; to that end, it found proper a presentation of opinion evidence providing "reasons why a parent might not report a known child molestation, including the fear of breaking up the marriage or harming relations with other family members, a sense of shame or failure as a parent, a psychological refusal to accept the fact of the molestation, or a reluctance to damage the reputation of the alleged offender when the latter is someone of good standing in

---

[8] Like the extradition court, the Government doesn't grapple with the concerning evidence it presented about the complainant's script.  The magistrate's characterization of this evidence—that petitioner complains that she "use[d] a previously written statement," D.E. 86 at 10:11—does not capture faithfully petitioner's challenges: that Baker used a script she claimed she had lifted from "her own personal records, similar to a diary[,]" D.E. 55 at 8 ¶ 6, but which she then disclaimed preparing alone, D.E. 55 at 136, and which was rife with errors that would never appear in a diary (misstating her age on particular dates).

So too, the transcript produced by the prosecution does *not* establish that "her oral statement [was] consistent with what the correct dates would be based on her age[,]" as the magistrate court clearly erred in finding, *see* D.E. 86 at 12; rather, the transcript reflects that the complainant's oral statement contained the identical, material errors, and only later, when the investigating detectives notified Baker of the glaring errors in her script and oral account, the detectives and the complainant together agreed to "come up with a consensus" on the dates and he then had her "correct" the errors by interlineating her written account and proving the errors in the first place.  *See* D.E. 55 at 107-114.  These events prove error and "correction," *not* consistency, as the magistrate court erroneously decided.

10

the community (e.g., a schoolteacher or a businessman)." *Id.* at 1299.  Thus, delays in reporting necessarily affect the reliability of a complainant's inculpatory account, an issue the prosecution can attempt to rebut with additional evidence.  The magistrate committed legal error by finding the opposite.

Even further, as applied to this case, *McAlpin* serves to demonstrate why Baker's delay in reporting undermines greatly the credibility of her account.  Importantly, this case presents two separate examples of delayed reporting, both of which undermine the reliability of Baker's account:

1. Baker claimed that she did not report the events of the initial alleged assault in Buffalo (in 1975 or 1976, depending on complainant's accounts) because she had seen petitioner's importance extolled by her parents and others for at least one full year, when in fact, the complaint's account establishes that she and her parents had only met petitioner two or three months earlier.  That inaccurate explanation certainly affects Baker's credibility because her explanation presented incorrect facts, by her own admissions; and

2. Once Hanas told Baker's parents that she had been assaulted and he needed their and Baker's help to threaten petitioner with a report to the police, her parents and Baker adopted Hanas's position and followed suit.  Thus, *none* of the bases that *McAlpin* presented as possible explanations for delayed reporting apply to the 12-year delay (from 1985, the time of Hanas's report and demands until 1997) in reporting to the authorities in this case.  The parents, Baker, and Hanas were united in their attacks on Kollmar, and they each adopted and accepted Hanas's account of the alleged assaults.  *McAplin* offers no expert explanation for the delayed reporting in this case.

In sum, the magistrate court's refusal to address the import of both examples of delayed reporting in this case—a circumstance surrounded by Baker's adoption of the cult leader's narrative against his perceived enemy, Kollmar—constitutes additional legal error, and undermines its certification decision.  Under *McAlpin*, there exists no explanation to support the complainant's delayed reporting, and Baker's basis—the length of time she had observed Kollmar—to support her delayed reporting was false.

////

////

////

**2.     The other evidence petitioner presented---property records, scientific studies on the question of suggested memory, travel records, and witness statements about Kollmar's whereabouts during the relevant years—was not merely contradictory, and the magistrate court erred by refusing to consider it.**

Given that the "federal courts have struggled to distinguish between" explanatory versus contradictory evidence in the extradition proceedings, *Santos*, 830 F.3d at 992, it is perhaps understandable that the magistrate court drew the line incorrectly.  It was on the correct path when it recognized that contradictory evidence "is that which *merely* controverts the existence of probable cause, or raises a defense." D.E. 86 at 10:2-21 (quoting *Santos*, 830 F.3d at 992) (emphasis added).  But the magistrate court then failed to apply the "ANALYSIS" presented by *Santos*, *compare* D.E. 86 *with Santos*, 830 F.3d at 1001-09.

*Santos* addressed the question of "whether the extradition court properly refused to consider evidence that Rosas's and Hurtado's statements—in which they confessed to their involvement in the kidnapping and implicated Munoz—were obtained by coercion, including torture." 830 F.3d at 1001.  The extradition court and the district court on habeas review "reasoned that it was impossible to determine the credibility of the allegations of torture without determining the credibility of Rosa's and Hurtado's recantation statements." *Id*.  The *en banc* court, by a 9-2 vote, held that it constituted "legal error" for the extradition court to decline consideration of that evidence. *Id*.

In so ruling, *Santos* distilled clearly the rule that the magistrate court misapplied: merely contradictory evidence is that which creates a clear dispute between the accounts, only one of which can be believe, and thus requires a trial "to determine who was telling the truth." *Id.* at 1002 (addressing *Barapind v. Enomoto*, 400 F.3d 744, 752 (9th Cir.2005) (*en banc*) (*per curiam*).  In other words, contradictory evidence necessarily excludes the prosecution's evidence.

In contrast, explanatory evidence—such as the wealth of scientific evidence about suggested memories and false reporting—does not pose a conflict of credibility, and instead explains why the magistrate court should not have credited the complainant's account. *See Santos*, 830 F.3d at 1003 (citing *Shapiro*, 478 F.3d at 905).  Just as the *Santos* witnesses'

"claims about their prior statements implicating themselves and Munoz were obtained under duress [were] not contradictory, but explanatory," the evidence reflecting that the cult leader— long after Kollmar had left the scene—provided the account for Baker to adopt (and which she did) "goes to the *competence* of the government's evidence" and must be considered. *Santos*, 830 F.3d at 1003.

At bottom, it appears that the magistrate court here made the same error as the extradition court in *Santos*. Rather than consider the petitioner's evidence to determine whether it could determine its reliability without requiring a trial—*viz.*, whether the evidence was merely contradictory—the extradition court found the evidence "inadmissible." *Id*. at 1006. On this point, *Santos* is clear, and supports petitioner:

> This was error. A petitioner in an extradition proceeding has the right to introduce evidence that 'explains away' or 'obliterates' probable cause, and credible evidence that a statement was obtained under coercion does just that by undermining the competence of the government's evidence.

*Id*.

Here, petitioner presented evidence, *inter alia*, that the Buffalo home she described was not owned by the Kollmars in 1975, that Kollmar's passport reflected his entries into and out of Canada, and none supported Baker's account, that no commercial flights were then available, and Kollmar's finances and practices as presented *by the complainant* showed that Kollmar never flew, and only drove his van, and that the complainant contradicted her own account and timeline about when she met petitioner and why she didn't tell her parents about the critical alleged first event in Buffalo. All of this evidence explains the unreliability of Baker's account, and should have been considered. The magistrate court thus erred when it refused to consider it.

Likewise, the witness accounts reflecting Kollmar's travel, practices, and demeanor do not necessarily contradict Baker's account; both can be true. Kollmar's evidence simply provides context to explain the inconsistencies, omissions, and improbabilities of Baker's account. As the *en banc* court in *Santos* 830 F.3d at 1006-07, carefully explained:

////

13

Simply because evidence has been authenticated does not mean any evidence the government submits is sufficient to satisfy probable cause. Were that the case, the judiciary's role in the extradition process would be meaningless. Our role here is indeed a limited one, but "[t]his is not to say that a judge ... [in] an extradition proceeding is expected to wield a rubber stamp." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir.2011). Rather, our "function in an extradition hearing is ... to ensure that our judicial standard of probable cause is met by the Requesting Nation." *United States v. Linson*, 88 F.Supp.2d 1123, 1128 (D.Guam 2000). As we have made clear, the manner in which evidence used to support probable cause was obtained is relevant in determining whether the probable cause standard has indeed been satisfied. Our case law, including Supreme Court case law that the dissent largely ignores, does not allow us to leave this determination to the Secretary of State—or, for that matter, the [foreign] courts—under principles of deference to the executive or international comity. Dissenting Op. at 1047. The probable cause determination has been placed squarely in the judiciary's hands and is ours alone.

This Court should follow *Santos*, reject the Government's continued exhortations to serve as its and the Canadian's rubber stamp, *cf. In re Michael Flynn*, USCA No. 20-5143 (D.C. Circuit), ECF 1, and assess this case under the correct standards. That assessment demonstrates the merit of Donald Kollmar's habeas petition.

### 3. There exists insufficient proof to support a probable cause finding of rape as a matter of law.

The record establishes one, and only one, allegation of rape that the Canadians once claimed was consensual, and now claims was forcible: the allegations about Mother's Day 1977 (previously alleged to be Mother's Day 1976). D.E. 39-1 at 29. As established in the prosecution's video-recorded interview (and accompanying transcript) of the complainant's allegations, Baker did *not* link her consent on that occasion to a fear of physical violence, a necessary predicate to support a rape allegation. This necessary showing is even more important because the complainant alleged that she had convinced petitioner *and* her parents that she had then consented to the relationship she would complain of many years later. And it is even more important to focus on this—the only allegation upon which Canada bases Count

14

Two—because from 1997 through December 2018, the Canadians contended that Baker's account supported a claims of rape by false pretenses and disclaimed force or violence as bases for the allegations.  *See* ECF 1-1 at 14:1-17:10.  It was only when petitioner demonstrated that extradition could not be obtained on those claims did Canada amend its charges substantially, but without any further fact investigation, and based solely on a reversal of its 22-year interpretation of its evidence.  *See* ECF 1-1 at 17:11-18:26.

But the Government claims that this critical gap in evidence is fine, because "Canada's legal theory does not turn on whether Kollmar used physical violence against the victim to induce sexual intercourse."  ECF 9 at 27:3-6.  That's not what the Government told the extradition court.  *See* D.E. 70 at 8:8-12 ("[s]pecifically, it is alleged that on that date, Kollmar partially penetrated the victim's vagina with his penis without her 'genuine consent,' as demonstrated by her lack of desire for the sexual contact and her 'constant fear of Kollmar, who exploited his position of authority over her' and who physically assaulted her and threatened to physically assault her on several occasions.")

At bottom, the Government cannot overcome the dispositive failing in the Canadian's presentation: the complainant offered no evidence or allegation that petitioner obtained her consent for sex on Mother's Day 1977 through force or violence or the use of force or violence, and complainant further contended that she had led the petitioner to believe she had provided consent.  Those facts erode any probable cause showing on the rape count, and the magistrate court thus erred when it certified extradition on Count Two.

**C.    The Court should direct the magistrate court to vacate the certification order based on the extreme passage of time.**

With respect to petitioner's reliance on Canada's Charter of Rights and Freedoms to bar extradition on these 40+ year old claims, the Government argues that "constitutional principles under the Canadian Charter, such as due process, are not incorporated into the Treaty's lapse of time provision."  ECF 9 at 32:5-7.  As attorney Greenspan notes, "that contention is both incorrect and misleading."  Greenspan Reply Decl. ¶ 3.  And he goes even further:

In fact, in the *United States v. Cobb and Grossman*, [2001] 1 SCR 587, a case in which I appeared as counsel, a unanimous Supreme Court of Canada reaffirmed that "…both the extradition hearing and the exercise of the executive discretion to surrender a fugitive must conform with the requirements of the Charter, including the principles of fundamental justice…"  Therein, Justice Arbour, writing for the Court, stated:

> "This Court has confirmed, in *Canada v. Schmidt*, [1987] 1 S.C.R. 500, at pp. 520-21, and again, more recently, in *United States v. Burns*, [2001] 1 S.C.R. 283, 2001 SCC 7, that the Charter applies to extradition proceedings in the sense that the treaty, the extradition hearing in Canada and the exercise of the executive discretion to surrender the fugitive all have to conform to the requirements of the Charter. The committal judge presides over a judicial hearing and he or she must ensure that the hearing itself is conducted in accordance with the principles of fundamental justice (s. 7)."

In light of the judgment of the Supreme Court of Canada in *Regina v. Jordan*, [2016] SCC 27, which established a constitutional ceiling of thirty months between the time of the charge and the conclusion of the trial, beyond which delay is presumptively unreasonable, I continue to contend that having regard to the facts of these proceedings there would be a constitutional bar to this prosecution in Canada.

On this point, the Government offers no compelling contrary authority.

As for petitioner's challenge to applying California law to permit extradition where California law prohibits binding over any defendant on allegations of this vintage, *see* ECF 1-1 at 46:25-49:20, the Government urges the Court *not* to give effect to Article 10(1) of the Treaty. ECF 9 at 35:3-37:10.  This, however, the Court cannot do.  Article 10(1) requires, as a predicate for extradition, that the alleged offense must be sufficient "to justify [the accused's] committal for trial if the offense of which he is accused had been committed in its territory[.]"  By relying on California law, the Government is burdened with all of California law: in California, petitioner could *not* be committed for trial on these allegations.  He thus may not be extradited for any such alleged crimes under the Treaty's plain language and requirements.  The Court

16

should thus order the magistrate court to vacate its Order certifying extradition, and direct it to set petitioner at liberty.

## CONCLUSION

For the reasons set forth above, the Court should grant Don Kollmar's petition for a writ of habeas corpus, and direct the magistrate court to vacate its certification of extraditability, and enter an Order setting Don Kollmar at liberty.

Respectfully submitted,

DATED: June 2, 2020              COLEMAN & BALOGH LLP


                                */s/ E A Balogh*
                                ETHAN A. BALOGH
                                235 Montgomery Street, Suite 1070
                                San Francisco, CA 94104

                                Attorneys for Petitioner
                                DONALD KOLLMAR

17