# EXHIBIT F

PAGES 1 - 56

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE KANDIS A. WESTMORE, MAGISTRATE JUDGE**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| PLAINTIFF, | ) | NO. C-19-MJ-70677 MAG |
| | ) | |
| VS. | ) | THURSDAY, JANUARY 30, 2020 |
| | ) | |
| DONALD KOLLMAR, | ) | OAKLAND, CALIFORNIA |
| | ) | |
| | ) | EXTRADITION HEARING |
| DEFENDANT. | ) | |
| _____ | ) | |

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES:**</u>

**FOR PLAINTIFF:**                    DAVID L. ANDERSON, ESQUIRE
                                      U.S. ATTORNEY
                                      1301 CLAY STREET, STE. 340S
                                      OAKLAND, CALIFORNIA 94612
                               BY:  MAUREEN C. BESSETTE,
                                      ASSISTANT U.S. ATTORNEY


                                      OFFICE OF INTERNATIONAL AFFAIRS
                                      1301 NEW YORK AVE. NW
                                      WASHINGTON, DC 20530
                               BY:  KERRY MONACO, ASSISTANT
                                      U.S. ATTORNEY

**FOR DEFENDANT:**                    COLEMAN & BALOGH
                                      235 MONTGOMERY STREET, SUITE 1070
                                      SAN FRANCISCO, CALIFORNIA 94104
                               BY:  ETHAN A. BALOGH, ESQUIRE


**REPORTED BY:**                      DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                                      OFFICIAL COURT REPORTER

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
1                        I N D E X

2   EXHIBIT:                      PAGE

3        1                        56

4   DOCKET NOS.:

5   39, 55 & 79                   52

6   64-1 - 64-33, 80 & 81   54

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    THURSDAY, JANUARY 30, 2020                          1:34 P.M.

2                         P R O C E E D I N G S

3                                  O0O

4         **THE CLERK:**  NOW CALLING CASE 19-MJ-70677 U.S.A.

5    VERSUS KOLLMAR.

6       COUNSEL, PLEASE STATE YOUR APPEARANCES.

7         **MR. BALOGH:**  GOOD AFTERNOON, YOUR HONOR.  ETHAN

8    BALOGH ON BEHALF OF THE ACCUSED DONALD KOLLMAR WHO IS PRESENT

9    BEFORE THE COURT ON PRETRIAL RELEASE OR PRE-EXTRADITION

10   RELEASE.

11      I ASK THAT HE REMAIN SEATED AT COUNSEL TABLE.

12        **THE COURT:**  YES.  AND GOOD AFTERNOON, MR. BALOGH.

13        **MR. BALOGH:**  THANK YOU, YOUR HONOR.

14        **MS. BESSETTE:**  GOOD AFTERNOON, YOUR HONOR.  MAUREEN

15   BESSETTE WITH THE U.S. ATTORNEY'S OFFICE.  I'M HERE TODAY WITH

16   KERRY MONACO WHO IS OUT OF THE OFFICE OF INTERNATIONAL

17   AFFAIRS.

18        **THE COURT:**  ALL RIGHT.  GOOD AFTERNOON, MS. BESSETTE

19   AND MS. MONACO.

20      ALL RIGHT.  SO WE ARE HERE ON THE GOVERNMENT'S REQUEST FOR

21   CERTIFICATE OF EXTRADITABILITY.  I HAVE REVIEWED THE

22   SUBMISSIONS OF THE PARTIES.  I DO BELIEVE THAT THERE WAS SOME

23   SORT OF DECLARATION THAT THE DEFENDANT FILED LAST NIGHT THAT I

24   HAVE NOT SEEN.

25        **MR. BALOGH:**  THANK YOU.

1          **THE COURT:**  I'M NOT SURE WHY IT WAS FILED LAST NIGHT,

2     I HAVEN'T, OF COURSE, HAD A --

3          **MR. BALOGH:**  BECAUSE YOU HAVEN'T READ IT.

4      I DO HAVE AN EXTRA.  I DID BRING A CHAMBER'S COPY.  IT IS

5     A TWO-PARAGRAPH SEMINAL DECLARATION FROM OUR INVESTIGATOR IN

6     CANADA THAT IN SUM AND SUBSTANCE SAYS HE WAS IN CONTACT WITH

7     THE ADMINISTER OF -- THE MINISTRY OF TRANSPORTATION IN CANADA

8     AND THEY DO NOT MAINTAIN ANY ELECTRONIC RECORDS PRIOR TO 1980

9     REGARDING VEHICLE REGISTRATIONS.  SO THEY CANNOT TRACK AND

10    CITE THE REGISTRATION HISTORY OF MR. KOLLMAR'S CANADIAN

11    VEHICLES DUE TO THE LAPSE OF TIME.

12         **THE COURT:**  AND WHY DO I NEED THIS?

13         **MR. BALOGH:**  WELL, IT ADDS TO THE RECORD THAT HE HAD

14    PREVIOUSLY, WHICH IS, WHEN WE ARE MAKING THE ARGUMENTS

15    REGARDING THE PREJUDICE FROM THE LAPSE OF TIME, UNDER THE

16    CANADIAN CHARTER OF RIGHTS, THAT THAT IS EVIDENCE OF HOW HE'S

17    BEEN PREJUDICED BY THE CANADIANS' LACK OF DILIGENCE -- FIRST

18    THE COMPLAINANT'S LACK OF DILIGENCE IN PRESENTING HER

19    ALLEGATIONS AND THEN THE CANADIANS' LACK OF DILIGENCE IN

20    PROSECUTING THIS CASE.

21         **THE COURT:**  ALL RIGHT.  I'LL GET TO THAT TOPIC

22    SHORTLY.

23      ALL RIGHT.  SO I PUT TOGETHER A LIST OF QUESTIONS THAT I

24    HAVE BECAUSE I WANT TO MAKE SURE THAT WE KEEP, YOU KNOW, THIS

25    HEARING ORGANIZED AND NOT HAVE IT GO ON AND ON FOR HOURS.  I

1    REALLY WANT TO MAKE SURE THAT WE FOCUS ON THE TOPICS THAT I

2    NEED SOME CLARIFICATION ON; BECAUSE I HAVE READ EVERYTHING

3    THAT HAS BEEN SUBMITTED BY THE PARTIES.

4        SO, MR. BALOGH, REGARDING THE DUAL CRIMINALITY, IS YOUR

5    ARGUMENT FOR THE COURT NOT TO CONSIDER CALIFORNIA PENAL CODE

6    SECTION 261 BASED ON THE CONTENTION THAT THE COURT SHOULD NOT

7    CONSIDER STATE LAW ANALOGS DESPITE NINTH CIRCUIT AND SUPREME

8    COURT AUTHORITY TO THE CONTRARY?

9            **MR. BALOGH:**  NO, THAT'S NOT MY ARGUMENT OR EVEN --

10   IT'S NOT CLOSE TO MY ARGUMENT, YOUR HONOR.

11           **THE COURT:**  OKAY.  TELL ME WHAT YOUR ARGUMENT IS

12   THEN.  BECAUSE I DID SEE THAT YOU CONCEDED THAT CONTROLLING

13   AUTHORITY REQUIRES THE COURT TO CONSIDER STATE LAW.

14           **MR. BALOGH:**  RIGHT.

15       SO I PRESERVE THE ARGUMENT THAT WE MADE PREVIOUSLY, THAT

16   THE LANGUAGE OF THE TREATY DOES NOT -- IS -- SORT OF SHOWS

17   THAT LINE OF AUTHORITY IS INCORRECT.  BUT I ALSO -- SO I

18   PRESERVED IT FOR FURTHER COURT REVIEW.

19       IF WE GET TO A COURT THAT HAS THE AUTHORITY TO OVERTURN

20   IT, BUT THEN WE, AS YOU'VE CORRECTLY NOTED, CONCEDED IT

21   CONTROLS AND WE CANNOT ASK YOU NOT TO FOLLOW CONTROLLING

22   AUTHORITY.

23       MY ARGUMENT ABOUT STATE LAW AND 261 IS, THE STANDARD FOR

24   DUAL CRIMINALITY IS THE OFFENSES MUST BE SUBSTANTIALLY

25   ANALOGOUS.  I THINK THE MOST KNOWN CASE THAT DOES A REALLY

```
 1    GOOD JOB OF SETTING FORTH THAT ARGUMENT IS MANTA VERSUS
 2    CHERTOFF.  I'LL GIVE YOU THE CITATION.  518 F. 3D 1134.  IT'S
 3    A NINTH CIRCUIT CASE AUTHORED BY MILAN SMITH.  AND WHAT THE
 4    GOVERNMENT IS DOING HERE -- THERE'S TWO CHARGES.  THERE'S A
 5    FORCIBLE RAPE CHARGE AND THERE'S AN INDECENT TOUCHING CHARGE.
 6        AND THE GOVERNMENT, THE ANALOGS HAVE TO BE SUBSTANTIALLY
 7    ANALOGOUS.  AND RAPE AND STATUTORY RAPE ARE NOT SUBSTANTIALLY
 8    ANALOGOUS.  THE FORMER IS -- SO WE, YOU KNOW, FROM THE LAW,
 9    THAT'S MALUM PER SE, IT'S A CRIME OF FORCE AND VIOLENCE.
10    STATUTORY RAPE IS MALUM PROHIBITUM.  IT'S A DIFFERENT CRIME.
11    THE FIRST CONSENT CAN BE GIVEN, BUT IT'S NOT BECAUSE IT IS
12    OVERCOME BY VIOLENCE OR FORCE OR THE THREAT OF FORCE OR
13    VIOLENCE.
14        IN THE SECOND, WE DETERMINE AS A PUBLIC POLICY THAT
15    CERTAIN PEOPLE OR CATEGORIES OF PEOPLE MAY NOT PROVIDE CONSENT
16    AS A MATTER OF LAW, REGARDLESS OF HOW MUCH THEY GENUINELY
17    CONSENT.  THAT INCLUDES MINORS.  THAT INCLUDES PEOPLE IN
18    CUSTODY.  NO MATTER HOW MUCH THE PRISONER WANTS TO LOVE THE
19    GUARD, THAT CAN'T HAPPEN.  THAT'S ILLEGAL BECAUSE OF THE
20    CONCERN THAT COERCION COULD BE PART OF THE NATURE OF IT.
21        WE DO IT FOR MINORS.  SOME STATES IT'S 16, SOME STATES
22    IT'S 17, SOME STATES IT'S 18.  THEY ARE NOT SUBSTANTIALLY
23    ANALOGOUS.
24        SO IN FEDERAL LAW THERE IS NO SUBSTANTIALLY ANALOGOUS RAPE
25    ALLEGATION THEY RAISE.  2233 AND 2240 -- 22 -- I THINK IT'S
```

1    2234 WHERE THEY CITE, 2243 AND 2244 ARE STATUTORY RAPE

2    CHARGES.  THEY DON'T INVOLVE FORCE OR THREATS OF FORCE OR

3    VIOLENCE.  THEY ARE NOT THE SAME.

4         **THE COURT:**  PENAL CODE SECTION 261 IS --

5         **MR. BALOGH:**  261 -- I AGREE THAT 261 IS THE ONE THAT

6    SHE APPLIED, 261.5.  AND ON THE INDECENT TOUCHING, THE

7    ANALOGOUS STATE STATUTE IS 243(E)(1) -- 243.4(E)(1) I'M GOING

8    TO READ THAT TO YOU.  IT'S NOT IN THE BRIEFS.  BUT THAT

9    SUBSECTION READS AS FOLLOWS:

10        ANY PERSON WHO TOUCHES AN INTIMATE PART OF ANOTHER PERSON

11   IF THE TOUCHING IS AGAINST THE WILL OF THE PERSON TOUCHED AND

12   IS FOR THE SPECIFIC PURPOSE FOR SEXUAL AROUSAL, SEXUAL

13   GRATIFICATION, OR SEXUAL ABUSE IS GUILTY OF A MISDEMEANOR

14   SEXUAL BATTERY, AND IT HAS THE PUNISHMENTS THEREAFTER.

15        SO THE INDECENT TOUCHING CHARGE, BECAUSE IT'S ONLY A

16   MISDEMEANOR IN CALIFORNIA AND THERE'S NO FEDERAL ANALOG, MAY

17   NOT SUPPORT EXTRADITION UNDER A TREATY BECAUSE IT'S A

18   MISDEMEANOR, WHICH LEAVES US WITH THE 261.5 CHARGE.  AND I

19   AGREE THAT'S, UNDER CONTROLLING AUTHORITY, THE COURT MUST

20   DETERMINE WHETHER THE PRESENTATION MADE BY THE GOVERNMENT,

21   INCLUDING THE RECORDED STATEMENTS OF THE COMPLAINANT,

22   ESTABLISHES RAPE HERE SUCH THAT HE COULD BE BOUND FOR TRIAL IN

23   CALIFORNIA HAD IT OCCURRED HERE.  AND IF THEY MEET THAT

24   BURDEN, THEN THE COURT DETERMINES IS THAT A CRIME UNDER 143

25   AND 144 OF THE CANADIAN CRIMINAL CODE.  AND IF IT MAKES BOTH

```
1    OF THOSE FINDINGS, WHICH ARE LEGAL FINDINGS, THE GOVERNMENT

2    WILL HAVE SATISFIED THAT PORTION OF DUAL CRIMINALITY.

3            THE COURT:  OKAY.

4            MR. BALOGH:  THANK YOU.  I HOPE I CLARIFIED MY

5    POSITION.

6            THE COURT:  YOU DID.  THANK YOU.

7            MR. BALOGH:  THANK YOU, YOUR HONOR.

8            THE COURT:  I ALSO WANT TO CONTINUE TO CLARIFY YOUR

9    POSITION.  BECAUSE MAYBE WHAT YOU ARE ARTICULATING TO ME HERE

10   MIGHT BE A LITTLE DIFFERENT THAN WHAT I WAS READING.

11      SO I WANT TO CLARIFY WHETHER YOU ARE ALSO ARGUING THAT THE

12   COURT SHOULD NOT CONSIDER PENAL CODE SECTION 261 BECAUSE IT

13   DOES NOT PERTAIN TO RAPE OR SEXUAL CONTACT OBTAINED BY FALSE

14   STATEMENTS.

15      I WANT THAT CLARIFICATION BECAUSE IT SEEMS THAT CANADA IS

16   NO LONGER ARGUING --

17           MR. BALOGH:  THAT IS CORRECT.

18           THE COURT:  -- FALSE STATEMENTS.

19           MR. BALOGH:  THE TWO THEORIES BASICALLY COLLAPSE INTO

20   ONE.  THEY PHRASE THEM IN DIFFERENT WAYS, BUT THE CANADIANS,

21   THE FAIR READING OF THEIR ALLEGATIONS IS, THE CONSENT WAS

22   VITIATED BY FORCE OR THREATS OF FORCE.  AND THAT'S THE

23   STANDARD THEY ARE APPLYING.  AND THE STATUTORY RAPE ANALOGS

24   DON'T APPLY TO THIS SITUATION.

25      AND I THINK IT IS ESPECIALLY IMPORTANT HERE WHERE THERE'S
```

1    NO QUESTION THE CANADIANS HAVE ABANDONED STATUTORY RAPE AND

2    EXPRESSLY HAVE WITHDRAWN THAT ALLEGATION.  THEY HAVE TOLD THIS

3    COURT, AFTER ASKING THIS COURT TO CERTIFY -- ASKING THE UNITED

4    STATES, PLEASE CERTIFY HIM FOR EXTRADITION BECAUSE HE HAD SEX

5    RELATIONS WITH A MINOR, THEY THEN AMENDED AND AFFIRMATIVELY

6    WITHDREW THAT CLAIM, AND SAID DON'T EXTRADITE HIM FOR THAT.

7    WE ARE NOT SEEKING THAT.

8        SO THE COURT CANNOT EXTRADITE HIM BASED ON A CLAIM THEY

9    EXPRESSLY WAIVED.  IT'S 261.5, IS IT A FORCIBLE RAPE?  HAVE

10   THEY MADE A SUFFICIENT SHOWING TO ESTABLISH A FORCIBLE RAPE?

11         **THE COURT:**  OKAY.  SO NOW THEY ARE JUST ARGUING THAT

12   THE DEFENDANT'S ABUSE AND CONTROLLING BEHAVIOR, POSITION OF

13   AUTHORITY, ET CETERA, RENDERED THE CONSENT NOT FREELY

14   PROVIDED.

15         **MR. BALOGH:**  THAT'S -- I THINK THAT IS A FAIR

16   CHARACTERIZATION OF THEIR ARGUMENT.

17         **THE COURT:**  OKAY.

18       AND THEN SECTION 261 INCLUDES -- SECTION 261 OF THE PENAL

19   CODE INCLUDES SEXUAL INTERCOURSE AGAINST A PERSON'S WILL BY

20   MEANS OF DURESS.  DURESS IS DIRECT OR IMPLIED THREAT OF FORCE,

21   VIOLENCE, DANGER, OR RETRIBUTION SUFFICIENT TO COERCE A

22   REASONABLE PERSON TO PERFORM AN ACT WHICH OTHERWISE WOULD NOT

23   HAVE BEEN PERFORMED.

24         **MR. BALOGH:**  I THINK THAT'S THE STATUTORY DEFINITION

25   IN THE CALIFORNIA PENAL CODE OR CLOSE TO IT.  WE HAVE QUOTED

1   THE ACTUAL LANGUAGE, BUT THAT STRIKES ME AS REMARKABLY ON

2   POINT.

3           **THE COURT:**  OKAY.

4       AND THEN REGARDING THE PROBABLE CAUSE QUESTION, IS YOUR

5   ARGUMENT THAT THERE IS NO PROBABLE CAUSE BECAUSE B.B. HAD

6   FALSE MEMORIES IMPLANTED IN HER?

7       WHAT SUPPORT -- IF SO, WHAT SUPPORT DO YOU HAVE FOR THAT?

8           **MR. BALOGH:**  WELL, I THINK THAT'S -- THAT'S A STRAND

9   OF OUR CHALLENGE TO PROBABLE CAUSE.  OUR FIRST ARGUMENT IS, IF

10  WE ACCEPT HER ACCOUNT ON ITS FACE, IT DOESN'T MEET THE

11  STANDARD OF RAPE.  HER POSITION IS -- AND WE CAN READ EXACTLY

12  WHAT SHE SAID.

13      ON WHEN SHE DESCRIBED THE MOTHER'S DAY, WHETHER IT'S --

14          **THE COURT:**  BEFORE YOU GET TO THAT, I WANT TO

15  UNDERSTAND THIS -- YOU HAVE HER ARGUMENTS REGARDING THE

16  IMPLANTING OF FALSE MEMORIES.

17          **MR. BALOGH:**  SUGGESTIBILITY.  YES.

18      WE PROVIDED A WEALTH OF SCIENTIFIC LITERATURE THAT

19  DEMONSTRATES THE PHENOMENA, AND WE MADE THE OBVIOUS POINT OF,

20  YOU KNOW, THE FIRST QUESTION PEOPLE RAISE ON PROBABLE CAUSE IS

21  OR ONE OF THE QUESTIONS A JURIST OR ANY REASONABLE FACT FINDER

22  IS, WHY WOULD THE COMPLAINANT MAKE THIS UP?  WHY WOULD SHE BE

23  INCORRECT ABOUT IT?  SHE MADE THESE STATEMENTS.  IS THERE A

24  REASON WHY WE SHOULDN'T BELIEVE HER?

25      AND THE FACTORS, THE FIRST TWO FACTORS THAT FACTUALLY

1    ESTABLISH BY THE GOVERNMENT'S PRESENTATION ARE, SHE NEVER MADE

2    ANY CLAIMS TO ANYONE, INCLUDING HER PARENTS WHEN SHE CANCELED

3    THE WEDDING, ABOUT SEXUAL ABUSE BY DONALD KOLLMAR.

4        THE VERY FIRST TIME SHE RAISES AN ALLEGATION OF ANY KIND

5    OF SEXUAL ABUSE IS 1985 IN RESPONSE TO A REQUEST BY JOHN

6    HANAS, THE LEADER OF A CULT, THE PERSON IN AUTHORITY.  AND

7    MR. HANAS REPORTS TO HER PARENTS, I KNOW DONALD KOLLMAR ABUSED

8    YOUR DAUGHTER SEXUALLY.  HE'S BACK IN TOWN.  HE'S A DANGER TO

9    ME PERSONALLY.  HE'S A DANGER TO OUR COMMUNITY.  HE'S A DANGER

10   TO YOU AND YOUR FAMILY.  HE'S A DANGER TO YOUR DAUGHTERS.  I

11   NEED YOU TO MAKE A CLAIM AGAINST HIM OF SEXUAL ABUSE.  I NEED

12   YOUR DAUGHTER TO DO THIS.  I NEED YOU TO THREATEN HIM THAT IF

13   HE DOES NOT GO AWAY, WE WILL GO TO THE AUTHORITIES.

14       IN RESPONSE TO THAT, FOR THE FIRST TIME, THE COMPLAINANT

15   MAKES HER ALLEGATIONS OF SEXUAL ABUSE.  THAT IS STRIKING.

16       MOREOVER -- SO WE TAKE THAT -- IT'S -- AND THAT FITS WITH

17   THE SCIENTIFIC LITERATURE OF THAT'S THE EXACT TYPE OF

18   CIRCUMSTANCE WHICH SUPPORTS THE NOTION OF SUGGESTIBILITY.  SHE

19   NEVER SAID BOO UNTIL SHE WAS TOLD IT HAD HAPPENED.  SHE WAS

20   TOLD BY AN AUTHORITY FIGURE, AND SHE WAS TOLD SHE HAD TO SAVE

21   EVERYONE BY MAKING THE CLAIM, WHICH SHE DID.

22           **THE COURT:**  BUT, MR. BALOGH, WE ARE NOT LITIGATING

23   THE CASE HERE.  THIS IS JUST ABOUT A FINDING THAT THE COURT

24   NEEDS TO MAKE ON PROBABLE CAUSE.  I'M NOT DEALING WITH

25   CONTRADICTIONS AND CREDIBILITY DETERMINATIONS HERE.

1       **MR. BALOGH:**  IF YOU ARE DOING THAT, THEN MAKE THAT

2   RECORD BECAUSE I THINK THAT'S PER SE LEGAL ERROR.  *QUINN*

3   *VERSUS ROBINSON*, NINTH CIRCUIT CASE LAW SAYS THIS COURT IS

4   TASKED WITH MAKING CREDIBILITY FINDINGS.  FULL STOP.

5       THAT'S A FUNDAMENTAL --

6       **THE COURT:**  GIVE ME THE EXACT CITATION FOR THAT,

7   PLEASE, WHERE IT SAYS THAT.

8       **MR. BALOGH:**  OF COURSE.

9               (PAUSE IN THE PROCEEDINGS.)

10      **THE COURT:**  MS. BESSETTE, WHILE WE ARE WAITING FOR

11  MR. BALOGH TO FIND IT, WHAT IS THE GOVERNMENT'S POSITION ON

12  WHAT THE COURT'S OBLIGATION IS HERE?

13      **MS. BESSETTE:**  YOUR HONOR, IN THE EFFORT TO ALSO

14  STREAMLINE THE PROCEEDING AND KEEP IT SIMPLE, THE GOVERNMENT

15  HAS PREPARED JUST A SIMPLE SHEET.  WE HAVE GIVEN A COPY TO THE

16  DEFENSE.  WE HAVE ONE HERE.  IT HASN'T BEEN BLOWN UP.  WE

17  MARKED IT AS EXHIBIT 1.  IT IS FOR THE COURT'S USE.  IT LAYS

18  OUT WHAT OUR POSITION IS HERE TODAY.

19      IN SUM, YOUR HONOR, EXTRADITION IS A TWO-STEP PROCESS.

20  THE COURT HAS THE LIMITED SCOPE OF REVIEW, AS THE COURT HAS

21  INTIMATED THIS AFTERNOON, TO DETERMINE IF THE TREATY

22  REQUIREMENTS ARE MET.

23      STEP TWO, IF SO, THE COURT WILL THEN CERTIFY IT TO THE

24  SECRETARY OF STATE FOR THE ULTIMATE DECISION.

25      TO CERTIFY, THE COURT MUST MAKE FIVE FINDINGS.  FIRST,

1 THAT THE COURT IS AUTHORIZED TO CONDUCT EXTRADITION PROCEEDING

2 HERE. THE COURT IS. WE HAVE A LOCAL RULE ON POINT, AND

3 THERE'S CASE LAW SUPPORTING THAT.

4 TWO, THAT THE COURT HAS JURISDICTION OVER MR. KOLLMAR.

5 THE COURT DOES. HE WAS FOUND IN THE NORTHERN DISTRICT OF

6 CALIFORNIA, AND THAT'S WHERE HE WAS ARRESTED.

7 **THE COURT:** UH-HUH.

8 **MS. BESSETTE:** THREE, THAT THE TREATY IS IN FULL

9 FORCE AND EFFECT. IT IS. BOTH PARTIES TO THAT TREATY HAVE

10 STATED SO, CANADA AND THE UNITED STATES.

11 FOUR, THAT THE CRIMES FOR WHICH EXTRADITION ARE REQUESTED

12 ARE COVERED BY THE TREATY. THEY ARE. THAT IS THE CRIME OF

13 RAPE AND INDECENT ASSAULT.

14 AND, FIVE, THAT THERE IS SUFFICIENT EVIDENCE TO SUPPORT A

15 FINDING OF PROBABLE CAUSE OR REASON TO BELIEVE THAT THE TWO

16 CHARGES AGAINST MR. KOLLMAR WE HAVE SUFFICIENT EVIDENCE FOR.

17 YOUR HONOR, MY LAST POINT ON THIS IS THAT WE DO NOT HAVE

18 ANY DISPUTE FOR THE FIRST THREE OF THESE FINDINGS.

19 **THE COURT:** CORRECT.

20 **MS. BESSETTE:** THE ONLY ISSUES ARE FOUR AND FIVE, AND

21 WE HAVE ADDRESSED THEM IN OUR BRIEF. BUT I'M PREPARED AND MY

22 COUNSEL IS HERE PREPARED AS WELL TO RESPOND TO ANY QUESTIONS

23 THE COURT MAY HAVE.

24 **THE COURT:** DO YOU AGREE WITH MR. BALOGH THAT I'M

25 SUPPOSED TO DO SOMETHING BEYOND DETERMINE WHETHER THERE'S

1    SUFFICIENT FACTS OR EVIDENCE TO SUPPORT PROBABLE CAUSE?

2          **MS. BESSETTE:**  I DO NOT.

3      THE CASE LAW IS CLEAR.  THE CASE LAW STATES THAT THE COURT

4    MAY TAKE DOCUMENTS FROM CANADA, THE REQUESTING STATE, AND THAT

5    THERE IS A PRESUMPTION IF THEY ARE AUTHENTIC AND THEY GO

6    THROUGH THE PROPER DIPLOMATIC PROCESS, FROM CANADA TO THE

7    STATE DEPARTMENT TO THE ATTORNEY GENERAL, THAT THEY ARE

8    ADMITTED.  HEARSAY MAY BE USED IN THE COURT'S DETERMINATION.

9      AND I BELIEVE THAT THAT EVIDENCE FROM CANADA ESTABLISHES

10   VERY CLEARLY IN THE TIME PERIOD MARCH OF 1976 THERE BEGAN

11   SEXUAL ASSAULTS BY MR. KOLLMAR, WHO IS IN HIS TWENTIES, ON OUR

12   VICTIM, WHO WAS 13 YEARS OLD.  WHEN THEY WENT ON A WEEKEND

13   RETREAT AND HE HAD HER REMOVE HER CLOTHES AND GAVE HER WHAT HE

14   CALLED A THERAPEUTIC MASSAGE WHILE SHE WAS NAKED.  SHE WAS

15   SICKENED, UNBEARABLY UNCOMFORTABLE, EMBARRASSED, AND CONFUSED.

16     AND THEN WE'VE DETAILED HOW THIS BEHAVIOR BY MR. KOLLMAR

17   CONTINUED WITH A VICTIM WHO WAS RIGID, CLEARLY UNCOMFORTABLE,

18   AND A CHILD AT THE TIME.  AND HE HAD NOT JUST HIS PHYSICAL

19   SIZE OVER HER, BUT HIS POWER IN HIS POSITION.

20     AND THEN WE HAVE GIVEN BOTH THE COURT AND THE DEFENSE HER

21   VIDEOTAPED TESTIMONY IN WHICH SHE LAYS OUT THESE CHARGES:  HER

22   TYPED UP TESTIMONY, HER OWN STATEMENT, AND THEN A TRANSCRIPT

23   OF THE VIDEO STATEMENT.  AND WE HAVE ALSO LAID OUT FOR THE

24   COURT HOW A VICTIM'S TESTIMONY ALONE IS SUFFICIENT FOR THE

25   STANDARD IN THE UNITED STATES OF BEYOND A REASONABLE DOUBT TO

1    COMMIT A CRIME.

2        AND IT'S ALSO CLEARLY SUFFICIENT FOR THE LIMITED PROBABLE

3    CAUSE THAT THIS COURT IS REQUIRED TO MAKE HERE.

4            **THE COURT:**  AM I SUPPOSED TO BE MAKING ANY

5    CREDIBILITY DETERMINATIONS?

6            **MS. BESSETTE:**  YOUR HONOR, NO, YOU ARE NOT SUPPOSED

7    TO BE MAKING ANY CREDIBILITY DETERMINATIONS.  WE HAVE A VICTIM

8    WHO HAS GIVEN LOTS OF INFORMATION.

9        THE COURT MADE A DISCOVERY ORDER TO PROVIDE MORE DETAILED

10   DISCOVERY BASED ON WHAT THE DEFENSE SAID WAS AN ATTEMPT TO SEE

11   WHETHER OR NOT THE CANADIAN LAW ENFORCEMENT OFFICER MISSTATED

12   SOMETHING.

13       WE HAVE ALL REVIEWED EVERYTHING THE VICTIM -- AND THE LAW

14   ENFORCEMENT OFFICER SPEAKMAN TOOK HIS INFORMATION DIRECT FROM

15   HER TESTIMONY.  AND, OF COURSE, NOW WE HAVE NO ALLEGATION FROM

16   THE DEFENSE THAT SPEAKMAN INAPPROPRIATELY CHANGED THE VICTIM'S

17   TESTIMONY.  IT IS ALL DIRECT FROM HER.

18       SO I THINK THE COURT CAN RECEIVE, ACCEPT THESE

19   AUTHENTICATED DOCUMENTS, AND MAKE ITS LIMITED DETERMINATION

20   THAT THEY PROVIDE SUFFICIENT, REASONABLE REASON TO BELIEVE

21   THAT THE INDIVIDUAL IN COURT HERE, WHICH THE VICTIM HAS

22   IDENTIFIED BY HIS PHOTOGRAPH, WHICH MATCHES THE MAN IN COURT

23   AND THE PHOTOGRAPH OBTAINED BY THE CANADIAN LAW ENFORCEMENT

24   OFFICERS, IS THE MAN WHO MOLESTED HER FROM HER AGE 13 THROUGH

25   ALMOST 16 -- OR 16 WHEN SHE WAS GOING TO BE REQUIRED TO MARRY

1    HIM, AND THAT THAT SATISFIES BOTH THE RAPE AND THE INDECENT

2    ASSAULT CHARGES IN CANADA.  AND THAT WE HAVE BOTH FEDERAL

3    CHARGES IN OUR COUNTRY AND STATE CHARGES THAT SATISFY THE

4    PRONG OF DUAL CRIMINALITY.

5           **THE COURT:**  ALL RIGHT.

6        SO, MR. BALOGH, DID YOU FIND WHERE THE CASE LAW TELLS ME I

7    HAVE TO MAKE CREDIBILITY DETERMINATIONS AT THIS HEARING?

8           **MR. BALOGH:**  LET ME GIVE YOU FOUR CASES.  *QUINN V.*

9    *ROBINSON*, 783 F.2D 776, PIN CITE TO PAGE 815.  IT'S A NINTH

10   CIRCUIT CASE FROM 1986, QUOTE:

11              "THE CREDIBILITY OF WITNESSES AND THE WEIGHT TO BE

12              ACCORDED THEIR TESTIMONY IS SOLELY WITHIN THE

13              PROVINCE OF THE EXTRADITION MAGISTRATE," PERIOD CLOSE

14              QUOTE.

15       *GILL VERSUS IMUNDI*, 747 F.SUPP. 1028, PIN CITE 1041.  THIS

16   IS FROM THE SDNY 1990, QUOTE:

17              "THE MAGISTRATE DOES APPEAR TO HAVE BEEN MISTAKEN TO

18              THE EXTENT HE EXPRESSED ON OCCASION THE UNDERSTANDING

19              THAT THE EXTRADITION COURT LACKED THE AUTHORITY AND

20              DISCRETION TO GO BEYOND THE FACE OF THE GOVERNMENT'S

21              AFFIDAVITS FOR THE PURPOSE OF DETERMINING CREDIBILITY

22              OR RELIABILITY," PERIOD, CLOSE QUOTE.

23       THE CASE OF *FREEDMAN VERSUS UNITED STATES*, 437 F.SUPP.

24   1252, PIN CITE 1265.  IT'S THE NORTHERN DISTRICT OF GEORGIA,

25   1977.  THE EXTRADITION MAGISTRATE QUOTE:

1         "SHOULD INVOLVE HIMSELF IN A DETERMINATION AS TO THE

2         RELIABILITY OF THE AFFIDAVITS PRESENTED AND NOT

3         MERELY BLINDLY BELIEVE SUCH STATEMENTS."

4     AND THE LAST CASE I WOULD COMMEND TO THIS COURT STUDIED

5 REVIEW IS CALLED *REPUBLIC OF FRANCE VERSUS MOGHADAM*, 617 --

6 SORRY, MS. REPORTER, M-O-G-H-A-D-A-M.

7     MS. SKILLMAN, IF YOU NEED ANY SPELLINGS AFTERWARDS, PLEASE

8 LET ME KNOW.  I APOLOGIZE.

9     THE PIN CITE (SIC) TO THAT IS 617 F.SUPP. 777.  PIN CITE

10 TO 783.  THIS IS JUDGE PATEL OF OUR DISTRICT.  AND SHE CITES

11 *FREEDMAN*.  SHE CITES *SHAPIRO VERSUS FERRANDINA*, WHICH WE BOTH

12 CITE IN OUR BRIEFS.  THAT'S ANOTHER SDNY CASE ABOUT THE NEED

13 TO EXAMINE ACCOUNTS.  AND IF ACCOUNTS IMPROBABLE OR VAGUE, THE

14 COURT CAN REJECT IT.  IT'S NOT BLIND ACCEPTANCE.  IT'S

15 CRITICAL ANALYSIS.

16     AND JUDGE PATEL CITED THOSE CASES FOR THE IDENTICAL

17 PROPOSITION THAT I AM PRESENTING TO YOU NOW.  CONTRARY TO THE

18 GOVERNMENT'S VIEW, I THINK THEY ARE TAKING YOU DOWN THE WRONG

19 ROAD, THIS ISN'T BLIND ADHERENCE TO AN ACCOUNT.  IT'S CAREFUL,

20 SCRUTINY OF AN ACCOUNT TO MAKE THE DETERMINATION THAT, WITH

21 REASONABLE CAUTION AFTER REVIEWING THAT ACCOUNT, AND ANY

22 EVIDENCE THAT EXPLAINS, NEGATES, OR OBLITERATES THE ACCOUNT,

23 WHETHER WITH REASONABLE CAUTION, AT THE END OF THAT YOU

24 BELIEVE THERE IS NONETHELESS SUFFICIENT EVIDENCE TO BELIEVE

25 THAT DON KOLLMAR COMMITTED THE ACTS ALLEGED.

```
1        AND SO THIS COURT IS EMPOWERED TO AND SHOULD MAKE

2   CREDIBILITY FINDINGS AND SHOULD ASSESS HER ACCOUNT CRITICALLY

3   AND NOT JUST HAVE BLIND ACCEPTANCE.  THAT'S JUST ONE EXAMPLE.

4        BESIDES, I GAVE YOU THE EXAMPLE OF SHE DOESN'T EVER SAY

5   ANYTHING, INCLUDING WHEN THEY BROKE OFF A WEDDING.  HER MOTHER

6   ASKED HER IF SHE WANTS TO TRAVEL WITH HIM.  HER MOTHER ASKS

7   HER IF SHE WANTS TO MARRY HIM.  SHE NEVER SAYS ANYTHING UNTIL

8   HANAS HAS THIS EMERGENCY.

9        WHEN SHE SHOWS UP 12 YEARS LATER TO THE CANADIAN

10  AUTHORITIES, SIX YEARS AFTER -- REMEMBER SHE SAYS THAT AFTER

11  THE NEXT SIX YEARS, SHE TALKS TO HANAS AND HIS ADVISERS ABOUT

12  THESE EVENTS.  SHE HAS SERIOUS TALKS FOR A SIX-YEAR PERIOD,

13  BUT SHE ESCAPES, OR HER FAMILY ESCAPES, OR THEY LEAVE,

14  WHATEVER.

15       SIX YEARS AFTER THAT WHEN SHE GOES TO THE POLICE, SHE

16  COMES WITH A 12-PAGE SCRIPT.  IT'S A SCRIPT THAT SHE

17  ESSENTIALLY FOLLOWS IN THE INTERVIEW.  SHE IS READING A

18  SCRIPT.

19       SHE'S ASKED AT THE END OF THE INTERVIEW, DID YOU --

20  SOMEONE TRANSCRIBE THIS FOR YOU?  DID SOMEONE ELSE MAKE THIS?

21  NO, NO, NO.

22       WELL, DID SOMEONE ELSE WRITE THIS?  THIS?  DID YOU WRITE

23  THIS ALONE?

24       THIS?  NO.  THIS -- AND THEY CUT HER OFF.

25       SHE ESSENTIALLY ADMITTED SHE DIDN'T WRITE THAT SCRIPT.
```

1    SHE SAYS SHE STARTED THE SCRIPT A YEAR BEFORE SHE SHOWS UP.

2    THERE'S NO EXPLANATION OF WHY SHE DIDN'T SHOW UP.  SHE SAYS

3    THAT PARTS OF THE SCRIPT COME FROM HER PERSONAL DIARY, BUT SHE

4    GETS HER AGE WRONG REPEATEDLY.

5        I WOULD CONTEND THAT YOUNG GIRLS, WHEN THEY WRITE IN THEIR

6    DIARY, THEY GET THEIR AGES RIGHT.  TEENAGERS KNOW THEIR AGE.

7    WE KNOW -- WE ALL KNOW HOW OLD WE WERE ON THANKSGIVING 1975.

8    IT'S NOT CHALLENGING TO FIGURE THAT OUT.

9            THE COURT:  I DON'T KNOW IF I KNOW THAT, BUT I GUESS

10   I COULD DO THE MATH.

11           MR. BALOGH:  RIGHT.  YOU COULD DO THE MATH.  YOU'RE

12   WRITING SOMETHING IN YOUR DIARY REAL TIME, IT'S THANKSGIVING

13   1975, YOU WOULD KNOW HOW OLD YOU ARE ON THAT DAY.  YOUR DIARY

14   WOULD ACCURATELY REFLECT YOUR AGES.

15       AND YET THROUGHOUT HER SCRIPT, THROUGHOUT HER ACCOUNT, SHE

16   GETS THE AGE WRONG.  AGAIN DEMONSTRATING PERSUASIVELY THIS IS

17   SOMEONE ELSE'S SCRIPT, WHICH IS -- JUST FITS IN WITH HANAS.

18   SO THAT'S WHERE THE SCIENTIFIC LITERATURE OF SUGGESTIBILITY

19   COMES IN.

20       SHE -- I -- MY TAKEAWAY, AND THAT'S WHY THE LITERATURE IS

21   IN FALSE MEMORIES.  SHE CAN BELIEVE SHE'S TELLING THE TRUTH AS

22   MUCH AS SHE HAS.  BUT WHEN YOU GET A FANTASTICAL TALE OF THE

23   MIDNIGHT RUN IN SOUTH CAROLINA, TEN HOURS OUTSIDE ON -- REST

24   STOPS AND HIGHWAYS, BUT NOT A CAR, NOT A PHONE BOOTH, NOT A

25   PERSON; THAT IS FANTASTICAL.  THAT'S OUT OF A MOVIE.  THAT'S

1   NOT REALITY.  THAT SHOULD GIVE PAUSE WHEN YOU ASSESS THE

2   ACCOUNT.

3        THERE IS NO WAY THAT WENT DOWN LIKE THAT.  IT IS NOT

4   BELIEVABLE.

5        SO, YES, YOUR HONOR NEEDS TO GO THROUGH THIS WITH A

6   CRITICAL EYE AND ASSESS WHETHER THERE IS SUFFICIENT EVIDENCE.

7   BECAUSE WHETHER YOU GET A SEARCH WARRANT APPLICATION OR

8   WIRETAP APPLICATION, WHEN YOU REVIEW IT, IF IT IS

9   INSUFFICIENT, YOU JUST SEND THEM BACK TO DO MORE WORK.

10              **THE COURT:**  ABSOLUTELY.

11           **MR. BALOGH:**  THERE IS NOTHING WRONG WITH THAT.

12           **THE COURT:**  BUT I DON'T MAKE A CREDIBILITY

13   DETERMINATION OF THE AFFIANT.

14           **MR. BALOGH:**  RIGHT.  I GAVE YOU THE CITATIONS WHERE I

15   JUST GAVE YOU FOUR COURTS, INCLUDING THE NINTH CIRCUIT, THAT

16   SAYS WHAT I SAID.

17   *QUINN V. ROBINSON* SAYS WHAT -- THIS IS NINTH CIRCUIT.  THE

18   CREDIBILITY OF WITNESSES AND THE WEIGHT TO BE ACCORDED THEIR

19   TESTIMONY IS SOLELY WITHIN THE PROVINCE OF THE EXTRADITION

20   MAGISTRATE.

21        IF YOU NEED NOT HAVE MADE CREDIBILITY FINDINGS, WHY IS THE

22   NINTH CIRCUIT TELLING YOU ABOUT THE SCOPE OF YOUR AUTHORITY TO

23   DO SO?

24           **MS. BESSETTE:**  I WOULD LIKE TO RESPOND TO THAT, IF I

25   MAY, YOUR HONOR.

1            **THE COURT:**  SURE.

2            **MS. BESSETTE:**  I THINK THE DEFENSE HAS SQUARELY

3    OVERSTATED THE POSITION OF THESE COURTS OF PREDOMINANTLY

4    OUT-OF-CIRCUIT DISTRICT COURTS BUT FOR THE JUDGE PATEL CASE.

5         WHAT THE LAW SAYS IS THAT YOUR HONOR CAN MAKE A

6    CREDIBILITY DETERMINATION.  AND BEFORE YOU, YOU HAVE THESE

7    DOCUMENTS THAT HAVE BEEN SUBMITTED THROUGH CANADA.  THEY ARE

8    PRESUMED TRUTHFUL.

9         LET'S SAY THE PERSON -- YOU SAW -- THE COURT HAS THE

10   VIDEOTAPE AND THE COURT HAS A TRANSCRIPT, A VERY DETAILED

11   TRANSCRIPT OF THIS WITNESS.  LET'S SAY THAT THE JUDGE -- IT

12   ALL MAKES SENSE TO THE COURT.

13        WE HAVE A YOUNG PERSON, A CHILD, WHO WENT THROUGH WHAT WAS

14   A VERY DRAMATIC, TERRIBLE SEXUAL MOLESTATION WITH A POWERFUL

15   MAN AND IT LASTED YEARS.  IT WAS TRAUMATIC.  SHE EXPLAINS IN

16   GREAT DETAIL WHY IT TOOK HER TIME TO COME FORWARD.  SHE

17   EXPLAINED THAT WHEN SHE WAS 16, SHE JUST WANTED TO GET AWAY

18   FROM HIM.  SHE TOLD HER PARENTS SHE DIDN'T WANT TO BE WITH

19   HIM.  THE RELATIONSHIP ENDS.  TIME GOES ON.

20        IT WASN'T UNTIL HER MID-TWENTIES WHEN THE ISSUE GOT RAISED

21   BY THE HANAS PHONE CALL.  AND I THINK, AGAIN, THE DEFENSE

22   MISSTATES WHAT COMES OUT OF THE VICTIM.  THE VICTIM SAID THAT

23   IN THAT PHONE CALL, HE SAID THAT KOLLMAR CAME TO TORONTO AND

24   HAD THREATENED HANAS, AND HE SAID HE WAS GOING TO KIDNAP THE

25   VICTIM.

1       SO HANAS WAS TELLING THE FAMILY TO CALL A LAWYER AND ASK

2   ABOUT SEXUAL ABUSE AND CHARGING KOLLMAR.  SINCE THE VICTIM HAD

3   NEVER TOLD ANYONE ABOUT THE SEXUAL ABUSE, HER PARENTS WERE

4   TAKEN OUT OF THE BLUE BY THIS.

5       AND HANAS TOLD THEM THAT KOLLMAR HAD TOLD HANAS THAT HE

6   WAS WITH THE VICTIM IN A SEXUAL WAY.  SO THE PARENTS WERE

7   ANGRY.  AND THEY TALKED TO THE DAUGHTER, AND SHE ADMITTED TO

8   SOME OF THE THINGS THAT HAD HAPPENED.  AND THEN SHE WENT ON TO

9   DESCRIBE HOW ROBERT POLLOCK WAS SENT ON HER BEHALF TO SEE JIM

10  SMITH, AN ATTORNEY IN THE DUNDAS KEELE AREA.  SMITH SAID THAT

11  WHAT KOLLMAR DID TO HER WAS TERRIBLE BUT NOT STRONG ENOUGH TO

12  MAKE A CASE.  AND THAT'S ONE OF THE REASONS SHE DIDN'T PURSUE

13  IT.

14      HER PARENTS THEN CALLED KOLLMAR AND TOLD HIM YOU BETTER

15  NOT HARASS OUR DAUGHTER OR WE'RE GOING TO CHARGE YOU WITH A

16  SEXUAL ABUSE.  TIME WENT ON.

17      WHEN THE VICTIM WENT IN FEBRUARY OF '97 TO CANADIAN POLICE

18  AND GAVE HER STATEMENTS, SHE SAID THAT IT WAS NOW THAT SHE HAD

19  BEEN AWAY FROM -- HER FAMILY HAD BEEN AWAY FROM THE SPIRITUAL

20  GROUP FOR SIX YEARS, AND SHE FOUND OUT THAT HE WAS TRYING TO

21  SET UP ANOTHER GROUP IN THE CATSKILLS IN NEW YORK AND SHE WAS

22  CONCERNED ABOUT IT.  AND SHE WENT TO A WOMAN'S COLLEGE AND GOT

23  SOME HELP, AND THEN SHE CAME TO LAW ENFORCEMENT.

24      SO THE COURT CAN TAKE THE STATEMENTS INTO ACCOUNT TO SEE

25  IF THAT MAKES SENSE, WHAT A VICTIM OF TRAUMA WOULD HAVE DONE,

```
1    AND SAY THIS IS PRESUMED TRUTHFUL IN HOW IT COMES TO THE

2    COURT.

3         NOW, SOMETHING COMES OUT OF THIS WHERE THERE ARE REALLY

4    LARGE INCONSISTENCIES, AND WHAT THE CASES SAY IS THAT TO

5    OBLITERATE PROBABLE CAUSE BASED ON ALLEGED INCONSISTENCIES IS

6    A VERY DIFFICULT, IF NOT IMPOSSIBLE, STANDARD TO MEET.  THIS

7    IS A SOUTHERN DISTRICT OF FLORIDA CASE IN RE EXTRADITION OF

8    SHAW, ESPECIALLY WHERE THE PRIMARY SOURCE OF THE EVIDENCE FOR

9    THE PROBABLE CAUSE IS THE EXTRADITION REQUEST AND THE EVIDENCE

10   IN IT IS DEEMED TRUTHFUL FOR PURPOSES OF THIS DETERMINATION.

11        AND THAT'S THE MATTER OF THE EXTRADITION OF ATTA IN THE

12   EASTERN DISTRICT OF NEW YORK.  I CAN GIVE YOU THE CITES, BUT

13   THEY ARE IN OUR BRIEF.

14        SO, IN LOOKING AT THIS, WHAT THE DEFENSE HAS TRIED TO DO

15   IS DEFINE ALL THESE MINOR INCONSISTENCIES.  IF YOU GO BACK TO

16   THE BEGINNING OF THE TRANSCRIPT, WHAT MY COLLEAGUE SAID IS

17   THAT SHE WAS WRONG ON HER DATES THROUGHOUT.  THAT'S NOT

18   ACCURATE.

19        IN THE BEGINNING OF HER TRANSCRIPT, ON PAGE 12 WHEN SHE

20   STARTS TO LAY OUT WHEN THINGS STARTED TO GO WRONG WITH

21   MR. KOLLMAR, SHE SAID:  PEOPLE USED TO GO ON RETREATS WHERE

22   THEY WOULD, UH, GO AND PRAY AND MEDITATE AND THAT SORT OF

23   THING.  DONALD KOLLMAR INVITED ME TO SPEND A WEEKEND WHEN I

24   TURNED 13.  THIS WOULD HAVE BEEN OCTOBER '75.

25        SHE DOESN'T SAY THAT, BUT WE CAN PHRASE THAT.  IT WAS ON
```

```
 1   THE MARCH SCHOOL BREAK.  THAT WOULD HAVE BEEN MARCH '76, I

 2   BELIEVE.

 3       AND HE INVITED ME TO SPEND THE WEEKEND AT HIS PARENTS'

 4   HOME.

 5       FROM THE FACTS, WE KNOW THIS IS THE FIRST CIRCUMSTANCE IN

 6   BUFFALO WHERE THEY BOTH GET NAKED AND HE MASSAGES HER AND HER

 7   BREASTS FOR LONG PERIODS OF TIME.

 8       SO IN STARTING THIS OUT, IT WAS STATED WHAT THE TIME

 9   PERIOD WAS BECAUSE SHE KNEW HOW OLD SHE IS.  IF WE ALL GO BACK

10   IN OUR MEMORIES AND SOMETHING TRAUMATIC HAPPENS, A LOT OF US

11   WON'T REMEMBER HOW OLD WE ARE ESPECIALLY IF YOU TURNED 13 AND

12   SOMETHING SEXUAL HAPPENED.

13       MAYBE WHEN YOU ARE THINKING IN YOUR MIND AND YOUR BIRTHDAY

14   IS MIDWAY THROUGH A YEAR, YOU MAY GET THE YEAR WRONG BECAUSE

15   YOU THINK IT HAPPENED IN MARCH OF '76, AND IF YOU TAKE HER

16   BIRTHDATE 1962 AND SUBTRACT IT, YOU GET THE YEAR OFF BY ONE.

17   THAT'S ALL WE ARE TALKING ABOUT HERE.  HER DATES GET OFF BY

18   ONE.

19       THE LAW ENFORCEMENT IN CANADA SIT WITH HER AND THEY GO

20   BACK THROUGH HER STATEMENT AND THEY GET WHAT IS A DATE SIX

21   MONTHS OR A YEAR OFF, AND THEY SQUARE IT, WHICH IS SQUARED

22   WITH THE BEGINNING OF HER TESTIMONY.

23       SO THERE'S NOTHING SO HIGHLY UNBELIEVABLE ABOUT THAT OR

24   INCONSISTENT WITH HER WHOLE STATEMENT WHICH SHE DOESN'T SAY

25   SHE WAS SEXUALLY MOLESTED BY MR. HANAS AND MANY OTHER PEOPLE.
```

1    IT WAS MR. KOLLMAR.

2        SHE DOESN'T SAY HE RAPED HER PROFUSELY OVER ALL THESE

3    VARIOUS DATES IN PLACES SHE CAN'T RECALL.  NO.  SHE SAYS HE

4    PARTIALLY PENETRATED MY VAGINA FOUR OR FIVE OCCASIONS.  HE

5    WANTED ME TO REMAIN INTACT UNTIL HE MARRIED ME AT 16.

6        VERY CLEAR, NO MATTER WHEN YOU GO THROUGH THIS, THOSE

7    FACTS FIT TOGETHER AS TO EXACTLY WHAT HE DID TO HER.  HE

8    TOUCHED MY BREAST IN THIS WAY.  HE FORCED ME TO MASSAGE HIS

9    GROIN.  HE FORCED ME TO DO THAT FOR THIS LONG.  HE FORCED ME

10   TO USE MASSAGE OIL.  HE WAS FURIOUS IF I DIDN'T HAVE AN ORGASM

11   WHEN HE MASTURBATED ME.

12       AND SHE GOES IN GREAT DETAIL.  AND WHENEVER SHE GOES BACK

13   TO A CIRCUMSTANCE, IT WAS MOTHER'S DAY WEEKEND IN BUFFALO, NEW

14   YORK WHEN HE'S FORCING HER TO BACK AWAY FROM HER MOM, HE'S

15   FORCING HER TO DO THESE THINGS.  HER MEMORY, HER ORAL

16   TESTIMONY, HER WRITTEN STATEMENT, THEY JIBE VERY WELL IN

17   DATES, IN THE MOLESTATION, IN THE AGE.

18       AND FOR THE COURT, THIS COURT CAN SEE THAT AND SAY WE

19   DIDN'T GET FROM MR. KOLLMAR A MARRIAGE CERTIFICATE TO SHOW

20   THEY WERE MARRIED.  IF THAT HAD HAPPENED, IF THEY HAD PRODUCED

21   THAT, WE MAY HAVE AN ISSUE BECAUSE SOME OF THE STATUTES

22   REQUIRE THAT YOU NOT BE THE SPOUSE OF THE PERSON.

23       WE DIDN'T GET THAT EVIDENCE.  INSTEAD, WE HAVE MR. BALOGH

24   TAKING MINOR THINGS LIKE THE PROPERTY ON KEELE STREET WAS SOLD

25   AFTER -- YOU KNOW, WAS PURCHASED AFTER THE DATE SHE SAID HE

```
 1    MOLESTED HER THERE.

 2              THE COURT:  RIGHT, BUT IT WAS RENTED.

 3              MS. BESSETTE:  IT WAS RENTED AND IT WAS PURCHASED FOR

 4    NO MONEY WHICH JIBES WITH THE VICTIM.

 5        THERE'S THE STATEMENTS HIS PASSPORT DIDN'T HAVE STAMPS IN

 6    IT.  WELL, WE'VE PRODUCED EVIDENCE THAT SHOW YOU DIDN'T NEED

 7    TO GET YOUR PASSPORT STAMPED TO GO BETWEEN OUR COUNTRIES.

 8        SO ALL OF THESE ALLEGED INCONSISTENCIES THAT TAKE WHAT

 9    APPEARS TO BE A VERY COHERENT VICTIM STATEMENT AND TRY TO BLOW

10    IT UP, THEY FAIL.

11        AND THE WHOLE REASON TO ASK FOR THIS DISCOVERY TO BLOW UP

12    MR. SPEAKMAN'S AFFIDAVIT, NOT A PEEP BECAUSE MR. SPEAKMAN'S

13    AFFIDAVIT AND WHERE HE QUOTES THE VICTIM, THEY JIBE.

14              THE COURT:  RIGHT.

15        AND, MR. BALOGH, THE PROBLEM I'M HAVING IS THAT YOU SEEM

16    TO BE WANTING ME TO TAKE THESE SORT OF SCATTERED

17    INCONSISTENCIES OR CONTRADICTIONS, OR WHATEVER YOU WANT TO

18    CALL THEM, AS EVIDENCE THAT FALSE MEMORIES WERE IMPLANTED IN

19    THE VICTIM.  AND THAT'S WHERE I'M REALLY HAVING A PROBLEM

20    GETTING ON THE SAME PAGE WITH YOU.

21        AND ALSO YOU SEEM TO HAVE SUBMITTED A GREAT DEAL OF

22    CHARACTER TESTIMONY BY OTHER DECLARANTS AND SUCH, AND THIS ALL

23    SEEMS TO BE IN SUPPORT OF A THEORY THAT ALL OF THE SPECIFIC

24    DETAILS THAT SHE HAS PROVIDED ABOUT WHAT HAPPENED TO HER WERE

25    SOMEHOW IMPLANTED IN HER MIND BY SOMEONE ELSE.
```

1          **MR. BALOGH:**  I'M OFFERING AN EXPLANATION THAT FITS

2     WITH THE EVIDENCE.  YOU DON'T NEED TO GO THAT FAR.

3          THE BOTTOM-LINE ARGUMENT IS, HER ACCOUNT SHOULD NOT BE

4     CREDITED BECAUSE INDEPENDENT EVIDENCE AND HER OWN ACCOUNT

5     SHOWS -- RAISE QUESTIONS OF ITS BELIEVABILITY.

6          BEFORE I GET TO THAT, I WANT TO ANSWER A QUESTION.  EVEN

7     STUFF THE GOVERNMENT IGNORES, THEY -- THEY HAVE -- THE

8     GOVERNMENT HAS TEXT RECORDS OF ALL THESE PEOPLE'S TRAVEL

9     AROUND THE UNITED STATES.  THEY HAVE TEXT RECORDS.  THERE'S

10    NOTHING IN THERE THAT SAYS THEY, IN 1976, THEY DIDN'T HAVE

11    TEXT.

12         THAT -- LAST TIME I HAD A CASE IN THIS COURTHOUSE, THE

13    *BERNAL* CASE IN FRONT OF JUDGE RYU, OVER THE LUNCH HOUR

14    MS. BESSETTE WENT BACK AND GOT THE TEXT RECORDS FROM MY CLIENT

15    TO PROVE WHAT I SAID; HE HAD COME TO THE UNITED STATES ON THIS

16    DATE, THIS MONTH, AND THEY WENT AND FOUND IT.

17         REGARDLESS OF WHETHER PUBLIC DOCUMENTS NOW SAY THAT BEFORE

18    THAT PASSPORTS WEREN'T REQUIRED, THE PASSPORT ITSELF

19    REPEATEDLY SHOWS MR. KOLLMAR'S ENTRIES INTO CANADA.  THERE'S

20    THREE SEPARATE STAMPS IN HERE.  SO WE KNOW FROM THE EVIDENCE

21    MR. KOLLMAR TRAVELS WITH HIS PASSPORT AND HE GETS IT STAMPED

22    AT THE BORDER BECAUSE THE PASSPORT IS FILLED WITH STAMPS FROM

23    CANADA.  UNFORTUNATELY FOR THE UNITED STATES, NONE OF THEM

24    MATCH THE DATES THAT THE COMPLAINANT ALLEGES.

25         SO I WANT TO GO BACK TO YOUR QUESTION BECAUSE I THINK

```
1    THAT'S THE IMPORTANT -- MOST IMPORTANT THING TO SATISFY YOU.

2        THE GOVERNMENT SAYS I'M WRONG ABOUT THE DATES AND THE AGE.

3    SHE CLEARS IT UP.  TAKE A LOOK AT THE 12-PAGE SCRIPT SHE

4    WROTE.  THIS IS THE GOVERNMENT'S ATTACHMENT ON ECF 55.  IT

5    BEGINS ON PAGE 146.

6        SHE -- ALL THE DATES THAT SHE'S WRITTEN FROM HER DIARY,

7    AGE, MONTH, YEAR, AND DATE ARE WRONG.  THEY DON'T MATCH UP.

8    PERIOD.  READ IT.

9            THE COURT:  OKAY.

10           MR. BALOGH:  YOU CAN'T SAY SHE CLEARED IT UP.  THAT'S

11   HER SCRIPT.  HER SCRIPT IS WRONG.  IT'S NOT A LITTLE THING.

12       IF YOU SAY THIS IS FROM MY DIARY, AND YOU WROTE THIS IN

13   REAL TIME, YOU WOULD KNOW YOUR AGE ON ANY GIVEN DATE.

14       YOU KNOW HOW OLD YOU ARE TODAY, YOUR HONOR.  I KNOW HOW

15   OLD I AM TODAY.  IF I'M KEEPING A DIARY OF MY COURT

16   APPEARANCES IN JANUARY 2020, I'M ALWAYS GOING TO BE 51.  IF I

17   WROTE I WAS 50, THAT WOULD SUGGEST THERE'S SOMETHING WRONG

18   WITH MY ACCOUNT.

19       YOU LOOK AT HER ACCOUNT, IF YOU TAKE A CRITICAL EYE, SHE

20   HINGES HER ACCOUNT ON THIS TRIP TO BUFFALO.  THERE ARE NO

21   COMMERCIAL FLIGHTS.  SHE LATER ADMITS KOLLMAR DRIVES

22   EVERYWHERE.

23       I WOULD SUGGEST, AND, AGAIN, THIS IS *SHAPIRO VERSUS*

24   *FERRANDINA*, THE NOTION THAT THEY FLEW FROM TORONTO TO BUFFALO,

25   80 MILES, WHEN HE OWNS A VAN, IS NOT BELIEVABLE.  THESE AREN'T
```

1    JET SETTERS, AS SHE LATER ADMITS.  THESE ARE HIPPIES.  HE

2    DRIVES EVERYWHERE.  BUT ON THIS OCCASION THEY FLEW.

3        THAT'S HER -- AND SHE HINGES.  THAT'S WHEN THE ABUSE

4    BEGAN.  THAT'S WHEN HER WHOLE ACCOUNTS BEGAN ON THIS CRITICAL

5    TRIP TO BUFFALO.  BUT THE HOUSE WASN'T OWNED THEN.  THE

6    PARENTS DIDN'T HAVE THAT HOUSE THEN.  IT'S NOT POSSIBLE.

7        I'VE EXPLAINED BRIEFLY THE OUTRAGEOUSNESS, THE ABSOLUTE

8    CONFABULATION THAT IS THE TRIP IN SOUTH CAROLINA.  TEN HOURS

9    ON THE HIGHWAYS, AT REST STOPS, WITHOUT PHONE BOOTHS.  WE'VE

10   SHOWED THE EVIDENCE FROM SOUTH CAROLINA.  ALL OF THE REST

11   STOPS HAVE PHONE BOOTHS.  IT'S COMMON KNOWLEDGE FOR ANYONE WHO

12   TRAVELED THE STATE'S I-95 IN THE 1970'S, THEY HAD PHONE

13   BOOTHS.

14       THERE'S CARS ON HIGHWAYS.  THERE'S PEOPLE.  SHE TELLS A

15   TALE OF TEN HOURS ON THE ROAD, BARELY NOT -- BARELY DRESSED,

16   ALMOST NAKED IN A NIGHT GOWN, RUNNING THROUGH THE NIGHT, BUT

17   SHE CAN'T FIND A CAR, SHE CAN'T SEE A PERSON.  SHE ULTIMATELY

18   COMES BACK.  TEN HOURS IS HER TALE.  THAT IS NOT BELIEVABLE.

19   IT IS NOT CREDIBLE.

20       EVEN THE IDEA THAT SHE -- THAT THIS IS GOING ON IN THE

21   HOUSE, SHE SIMULTANEOUSLY CLAIMS NO ONE KNOWS BUT EVERYONE IS

22   MAD AT ME BECAUSE I HAVE ALL THIS TIME WITH KOLLMAR.

23       IF YOU LOOK AT THE ENTIRE ACCOUNT -- THE LAST THING I'LL

24   SAY ABOUT THAT, I DON'T -- I THINK THIS IS EXPLANATORY

25   NEGATION, OBLITERATION, DON KOLLMAR DID TRAVEL DURING THE

1    SUMMERS THROUGHOUT THE UNITED STATES.

2        AND THE PEOPLE HE MET ON THOSE TRIPS HE SAW THEM EVERY

3    YEAR.  AND THOSE -- FOUR OF THOSE PEOPLE NEVER SAW THIS GIRL.

4    THIS GIRL THAT'S SAYING SHE'S LIVING WITH HIM, SHE'S IN THE

5    VAN, THEY'RE TRAVELING ALL OVER.  EVEN THE NOTION OF MARATHON

6    MOLESTATION SESSIONS WHILE A 14 YEAR OLD WITH NO DRIVING

7    EXPERIENCE OR LICENSE IS DRIVING A VAN IS NOT BELIEVABLE.

8    THAT'S CONFABULATION.

9        AND PROBABLE CAUSE MAY NOT BE THE HIGHEST BURDEN, BUT WHEN

10   YOU HAVE ANCIENT ALLEGATIONS, AND WE ARE TALKING ABOUT

11   EXTRADITING A CITIZEN, THERE IS THE NEED FOR A CRITICAL

12   ASSESSMENT.  AND THERE IS A NEED FOR A JAUNDICED EYE TO

13   DETERMINE THE SUFFICIENCY OF THE ACCOUNT.

14       THE ACCOUNT, BECAUSE THERE'S NO ANALOG FOR INDECENT

15   TOUCHING, BECAUSE 243.4E MAKES IT A MISDEMEANOR, HERE IS HER

16   WRITTEN DESCRIPTION OF THE RAPE.  HERE, THIS IS THE FACT

17   PATTERN.  BECAUSE THE OTHER ALLEGATIONS ARE UNKNOWN AS TO DAY,

18   TIME, AND LOCATION.  THERE'S NO JURISDICTION OVER THOSE.  SO

19   THERE'S ONE.  IT'S THE MOTHER'S DAY '77 ALLEGATION.  I WILL

20   READ IT IN FULL.

21       DONALD KOLLMAR, COARSELY PENETRATED ME WITH HIS PENIS FOR

22   THE FIRST TIME.  THIS OCCURRED WHILE IN HIS VAN UNDER THE SAME

23   CIRCUMSTANCES I HAD DESCRIBED EARLIER, WHICH IS, HE CALLED HER

24   FAT OR STUPID OR DEGRADED HER.

25       THERE WERE FOUR OR FIVE SEPARATE TIMES THIS HAPPENED.

1    ALTHOUGH IT WAS ONLY A PARTIAL ENTRY, IT WAS ENOUGH TO CAUSE

2    ME SEVERE DISCOMFORT.  HE TOLD ME THE REASON HE DID NOT

3    PENETRATE ME DEEPER WAS BECAUSE HE WANTED ME TO REMAIN A

4    VIRGIN UNTIL HE MARRIED ME.

5        THIS WAS AN ISSUE HE FELT VERY STRONGLY ABOUT TO THE POINT

6    OF OBSESSION.  UNFORTUNATELY I DO NOT REMEMBER THE SPECIFIC

7    DATES OR CIRCUMSTANCES PERTAINING TO THE OTHER TIMES THIS

8    OCCURRED.

9        THAT IS NOT ALLEGATIONS OF SEX BY FORCE OR THREAT OF

10   FORCE.  THE THEORY THAT CANADA IS TRUNDLING OUT IS SEX BY

11   NAGGING, SEX BY BRINGING DOWN HER IMAGE OF HERSELF, BUT IT'S

12   FORCE OR THREAT OF FORCE.  SHE DOESN'T SAY THAT.

13       HER VERBAL STATEMENTS TRACK THE WRITTEN STATEMENTS.  SHE

14   DOESN'T CLAIM SEX.  RATHER, SHE SAYS I WOULD GO DOWN TO MEET

15   HIM VOLUNTARILY.  WE WERE SCHEDULED TO BE MARRIED.  HE

16   BELIEVED I LOVED HIM.  MY PARENTS BELIEVED I LOVED HIM.  MY

17   PARENTS BELIEVE WE WERE GOING TO BE HAPPILY MARRIED.

18       SO WHATEVER 20/20 HINDSIGHT THIS SCRIPT PROVIDES HER IN

19   1997, THE ALLEGATION DOESN'T SOUND IN RAPE.  DO YOU KNOW HOW

20   WE KNOW THAT?  THE BEST EVIDENCE?  THE CANADIANS DIDN'T CHARGE

21   HIM WITH THAT KIND OF RAPE.  WE KNOW WHEN THIS CASE STARTED,

22   THE 1997 WARRANTS -- THE 2017 WARRANT, THE 2018 WARRANT ALL

23   SOUNDED IN SEX BY FALSE PRETENSES.

24       IT WAS ONLY AFTER THE DEFENSE IDENTIFIED THE LACK OF

25   ANALOGS TO SUSTAIN A SEX BY FALSE PRETENSES THEORY IN THE

1    AMERICAN JUSTICE SYSTEM THAT THOSE SAME ACCOUNT (SIC) BECAME

2    SEXUAL, FORCIBLE RAPE.

3        BUT FOR 22 YEARS AFTER SHE CAME FORWARD, EVEN THE

4    CANADIANS DIDN'T SEE THAT.  NO ONE DID BECAUSE IT DOESN'T

5    EXIST.  IT IS CERTAINLY NOT SUFFICIENT -- IT WOULDN'T BE

6    SUFFICIENT IN CALIFORNIA COURT IF WE ACCEPTED IT AS GOSPEL TO

7    BIND HIM FOR TRIAL IN A RAPE CASE.  IT'S NOT ENOUGH.

8        SO ULTIMATELY THAT'S -- THE LAST THING I WILL SAY IS TO GO

9    BACK.  YOU DON'T HAVE TO AGREE THAT MY EXPLANATION OF FALSE

10   MEMORIES IS RIGHT FOR US TO WIN.  THE BURDEN IS ON THE

11   GOVERNMENT TO SHOW YOU SHOULD -- YOU SHOULD BELIEVE HER

12   ACCOUNT, SUFFICIENTLY CONSISTENT WITH KNOWN AND OTHER KNOWN

13   EVIDENCE THAT IT RINGS TRUE TO DEEM IT CREDIBLE AND MAKE A

14   FINDING.

15       AND WE PROVIDED A WEALTH OF REASONS THAT SUFFICIENTLY

16   UNDERMINE THE ACCOUNT THAT THE COURT SHOULD HAVE GENUINE

17   QUESTIONS ABOUT WHETHER IT IS CORRECT.  IT SOUNDS LIKE

18   CONFABULATION BECAUSE IT IS CONFABULATION.  AND WE HAVE TRIED

19   TO SHOW WHY BECAUSE IT CAME IN RESPONSE TO HANAS'S INFORMING

20   THEM.

21       AND AS FAR AS THE GOVERNMENT -- THE LAST THING I WILL SAY

22   IS, THE GOVERNMENT SAYS I AM OVERSTATING IT.  WE HAVE GIVEN

23   PIN CITES TO THE TRANSCRIPT FOR EVERY FACTUAL PROPOSITION IN

24   OUR BRIEF.  THEY DIDN'T DO THAT.

25       THE FACTS ARE SHE CLAIMS SEXUAL ABUSE ONLY AFTER HANAS

1   TOLD HER SHE WAS SEXUALLY ABUSED, AND THEY NEEDED HER HELP.

2   AND EVEN THEN THEY DIDN'T GO TO THE POLICE.  RATHER, THE

3   FATHER SIMPLY THREATENED KOLLMAR AND HE WENT AWAY.

4        IT DOESN'T EXPLAIN THE DELAYED REPORTING.  EVEN THE FIRST

5   DATE; SHE SAYS THE MOLESTATION IN BUFFALO HAPPENED -- SHE

6   EXPLAINS -- SHE SAYS IT HAPPENED TWO MONTHS AFTER THEY MET.

7   WHEN THE OFFICER -- WHY DIDN'T YOU REPORT TO YOUR PARENTS WHEN

8   YOU GOT HOME?  SHE SAYS, CUZ I HAD BEEN UNDER HIS SPELL FOR

9   OVER A YEAR.

10       BUT SHE JUST SAID THEY MET TWO MONTHS EARLIER.  THAT'S HER

11  ACCOUNT.  HER FAMILY JUST MET HIM.  WE JUST JOINED.  SO THERE

12  WAS NO PRIOR YEAR.  IT'S INCONSISTENT IN A MAJOR WAY.

13       SHE GETS FACTS -- SHE MAKES -- SHE GIVES HER ANSWER FOR

14  THE MOMENT EVEN THOUGH THEY ARE INCONSISTENT.  SO BOTH CAN'T

15  BE TRUE.  AND IF YOU CAN'T TELL WHAT'S TRUE, YOU CANNOT ACCEPT

16  HER ACCOUNT.

17            **THE COURT:**  ALL RIGHT.  SO THAT TIES INTO YOUR

18  ARGUMENT ABOUT THERE NOT BEING PROBABLE CAUSE BECAUSE LACK OF

19  CONSENT WAS BASED ON THE VICTIM'S LOW SELF CONFIDENCE.

20       YOU STARTED TO MENTION THAT.

21            **MR. BALOGH:**  OH, I THINK SHE CONSENTED.

22  CONSENTING OF FACTS, IT'S CONSENT -- SHE DOESN'T SAY HE

23  FORCED HIMSELF ON ME.  SHE DOESN'T SAY I TOLD HIM NO.  SHE

24  DOESN'T SAY -- SHE SAID -- SHE HAD EVERY INDICATION HE THOUGHT

25  IT WAS CONSENSUAL.  SHE DESCRIBES HE THOUGHT IT WAS

1   CONSENSUAL.

2       SO IT'S NOT A RAPE BECAUSE WHEN YOU GO TO MEET -- IF YOU

3   ACCEPT HER ACCOUNT, GOING TO MEET SOMEONE IN A VAN TO HAVE

4   SEX, EVEN IF IN YOUR MIND -- AND MAYBE IN CANADIAN LAW THAT'S

5   RAPE, IT'S NOT RAPE IN AMERICA.  THE RAPIST HAS TO -- IS AWARE

6   HE'S OVERCOMING SOMEONE'S WILL.  WHEN SOMEONE MEETS 'EM TO

7   HAVE SEX, THEY ARE NOT OVERCOMING THEIR WILL.  IT IS CONSENT,

8   WHICH IS WHY THE GOVERNMENT PLAYS MIX AND MATCH WITH THE

9   STATUTORY BECAUSE THEY CAN'T DEAL WITH THE CONSENT ISSUE.  HER

10  ACCOUNT DOES NOT ESTABLISH NONCONSENSUAL SEX.

11          **MS. BESSETTE:**  MAY I MAKE TWO RESPONSES, YOUR HONOR?

12          **THE COURT:**  SURE.

13          **MS. BESSETTE:**  ON PAGE 8 OF THE VICTIM'S STATEMENT,

14  SHE SAID, IN 1970, NOT '04 WHEN SHE HAD JUST TURNED 12 YEARS

15  OLD, HER PARENTS BECAME AFFILIATED WITH THIS GROUP, AND SHE

16  MET KOLLMAR.

17      SO WHEN SHE HAD JUST TURNED 12 YEARS OLD, THAT WOULD BE

18  OCTOBER 1974.  AND SHE TALKS ABOUT IN HER DISCUSSION OF WHEN

19  THE SEXUAL MOLESTATION BEGAN, IT WAS IN MARCH 1976 IN BUFFALO,

20  NEW YORK WITH HIM MASSAGING HER BREASTS.

21      THAT IS FROM OCTOBER 1974 TO MARCH OF 1976.  IT'S ABOUT A

22  YEAR... JUST DO MY -- THIS IS WHERE TAPES ARE CONFUSING, IT

23  LINES UP WITH HER STORY.

24      LATER ON SHE GETS WHICH YEAR IT WAS MIXED UP, BUT WHEN YOU

25  LOOK AT HER GENERAL DISCUSSION OF WHEN SHE WAS 12, HER FAMILY

```
1     IN 1974 HAD JUST MET MR. KOLLMAR AND ENTERED INTO THIS GROUP.

2     WHEN IT WAS 1976, SHE WAS IN BUFFALO AND THE SEXUAL

3     MOLESTATION OCCURRED, THE TIMELINES FIT.

4         SO, WHILE SOMEONE CAN GO THROUGH AND PICK OUT LITTLE

5     THINGS LIKE THE DEFENSE HAS DONE TO SHOW THIS IS ALL

6     COMPLETELY UNBELIEVABLE, WHEN YOU LOOK AT THE FACTS, AND YOU

7     LISTEN TO THE VICTIM IN THE VIDEOTAPE, IT IS NOT.

8         MY OTHER POINT IS, THE DEFENSE IS BRINGING UP SOME -- I

9     DON'T KNOW IF IT WAS AN EVIDENTIARY HEARING THAT WE HAD, IN

10    DOMESTIC CRIMINAL LAW, THE UNITED STATES HAS THE RIGHT TO USE

11    GRAND JURY SUBPOENAS.  WE HAVE THE RIGHT TO HAVE AGENTS GO

12    COLLECT EVIDENCE.

13        IN AN EXTRADITION MATTER, WE DON'T DO THAT.  THERE IS NO

14    FEDERAL FBI AGENT ON THIS CASE.  WHAT HAPPENS IS, IF THE

15    GOVERNMENT NEEDS SOME INFORMATION, WHICH TWICE WE WENT BACK TO

16    CANADA TO GET THE VICTIM STATEMENT, WHAT HAPPENS IS IT GOES

17    BACK TO THE OFFICE OF INTERNATIONAL AFFAIRS IN DC.  THEY REACH

18    OUT TO THEIR CANADIAN COLLEAGUES.  CANADA PUTS SOMETHING IN A

19    FORMAL DIPLOMATIC PACKAGE, AND THAT COMES BACK OVER AND THEN

20    WE FILE IT.

21        IT'S NOT ME PICKING UP THE PHONE AND CALLING A PROSECUTOR

22    IN CANADA.  I CAN'T DO THAT.  SO I'M NOT SURE WHAT RECORDS

23    HE'S REFERRING TO THAT COULD SHOW SOMETHING HELPFUL TO HIM.

24        HE SAID THE GOVERNMENT HAS RECORDS, AND I'M NOT SURE WHAT

25    HE'S REFERRING TO.  BUT I DON'T HAVE ACCESS TO THESE RECORDS
```

1    UNLESS -- WE DO -- WE DON'T DO IN EXTRADITIONS WHICH IS DELVE

2    INTO THE FACTS.  THIS IS A PRELIMINARY MATTER.

3        AND, AGAIN, I GO BACK TO WHAT WE GAVE THE COURT IN THE

4    VERY BEGINNING.  IS MR. KOLLMAR THE PERSON SOUGHT AND DOES THE

5    COURT HAVE JURISDICTION?  WE GO BACK TO THE VERY SIMPLE

6    PROBABLE CAUSE STANDARD SIMILAR TO WHEN A PROSECUTOR GOES

7    BEFORE A GRAND JURY.

8        IT'S REASON TO BELIEVE THIS IS THE INDIVIDUAL THAT DID THE

9    CRIMES THAT THE VICTIM SAYS OCCURRED AND THAT CANADA HAS

10   CHARGED.

11       AND IS THERE SUFFICIENT EVIDENCE, IS THERE A REASON TO

12   BELIEVE BEFORE THE COURT THAT THIS HAPPENED?  AND IT'S A

13   CONDUCT-BASED ANALYSIS.  IT'S A NATURE OF THE FACTS.

14       WHATEVER MR. BALOGH WANTS TO SAY, SOMEONE IN THE UNITED

15   STATES CANNOT PICK UP A 13-YEAR-OLD CHILD AND HAVE THAT PERSON

16   BE QUIET, AND LET THEM RAPE THE PERSON AND SEXUALLY MOLEST

17   THEM.  THAT'S A CRIME.

18       THE YOUNG CHILD DOESN'T HAVE TO SAY STOP.  NO.  IF THE

19   PERSON HAS REASON TO BELIEVE THEIR AGE, WHICH MR. KOLLMAR KNEW

20   THE VICTIM'S AGE HERE, IT'S A CRIME.

21       THERE CAN BE 13 YEAR OLDS WHO SAYS -- INSTEAD OF BEING

22   QUIET, INSTEAD OF BEING RIGID, INSTEAD OF MOVING HIS HANDS OFF

23   HER BODY, WHICH WE HAVE HERE TO SHOW HIM SHE DIDN'T WANT THIS.

24   WE COULD HAVE A 13-YEAR-OLD IN OUR COUNTRY WHERE THE PERSON

25   KNOWS SHE'S 13 AND TRIES TO DO THINGS TO HER AND SHE SAYS,

1    OKAY.  IT'S A CRIME.  YOU CANNOT MOLEST CHILDREN.  AND THERE'S

2    A REASON; BECAUSE THEY ARE YOUNG CHILDREN.  AND IT VARIES BY

3    AGE WHAT THE PENALTIES ARE.

4        STATUTORY RAPE, ALL THIS ANALYSIS OF SPECIFIC ELEMENTS,

5    THAT IS NOT WHAT WE DO IN DUAL CRIMINALITY.  WE TAKE A BIGGER

6    VIEW ALIGNED WITH PROBABLE CAUSE.  IS MOLESTING A 13- TO

7    16-YEAR-OLD-GIRL BY DOING ALL THE THINGS HE DID TO HER BODY TO

8    SEXUALLY GRATIFY HIMSELF AND TO TRY TO HAVE HER HAVE AN

9    ORGASM, IS THAT ILLEGAL IN THE UNITED STATES AND IN CANADA?

10   YES.

11       PENETRATING HER VAGINA WITH A PENIS, IS IT ILLEGAL IN BOTH

12   COUNTRIES?  YES.  SO WE HAVE RAPE AND WE HAVE INDECENT

13   ASSAULT.

14       WE CAN GO ON FOR HOURS ABOUT THESE STATUTES AND THE

15   FEDERAL STATUTES HAVE JURISDICTIONAL HOOKS.  WELL, THE TREATY

16   AND CASE LAW MAKE CLEAR, THAT'S NOT WHAT YOU ARE SUPPOSED TO

17   DO, JUDGE.  WE HAVE A COURT IN CANADA THAT JUST WANTS TO GET

18   HIM BACK TO BE HANDLED BY THE COURTS THERE.  AND THEY WILL

19   TAKE INTO ACCOUNT HIS DEFENSES; THE LAPSE OF TIME PROVISIONS

20   IN CANADA'S CHARTER, AND HE WILL HAVE A DEFENSE ATTORNEY

21   THERE.  AND THERE WILL BE A CANADIAN PROSECUTOR WHO KNOWS

22   THEIR LAWS AND A JUDGE WHO KNOWS THEIR LAWS, AND THEY WILL GET

23   INTO THE NITTY GRITTY IN HIS DEFENSES.

24       BUT WE ARE NOT HERE FOR THAT AS MUCH AS MR. BALOGH WOULD

25   LIKE US TO BE, THAT'S NOT OUR PURPOSE.

1          **MR. BALOGH:**  BRIEFLY.

2      ONE, THE POINT I MADE, WHAT THEY POSSESS, THEY POSSESS

3   TEXT.  THE LAST TIME I HAD A CAUSE WITH MAUREEN BESSETTE, I

4   SAID TO THE MAGISTRATE JUDGE, THEY SHOULD GO BACK OVER LUNCH

5   AND FIND OUT MY CLIENT'S ENTRY HISTORY INTO THE UNITED STATES.

6   THEY DID IT WITHIN THE HOUR.

7      SO I DON'T KNOW IN THE LAST COUPLE OF MONTHS WHETHER HER

8   COMPUTER SYSTEMS CHANGED, BUT I WILL REPRESENT IN THE CASE OF

9   *UNITED STATES OF AMERICA VERSUS BERNAL*, RULE FIVE OUT OF LOS

10  ANGELES, MS. BESSETTE DID THAT ON THE RECORD IN THIS

11  COURTHOUSE.  SO THAT'S WHAT THE ABILITY TO HAVE --

12          **THE COURT:**  WHAT DOES THAT HAVE TO DO WITH ANYTHING?

13          **MR. BALOGH:**  WELL, MY SUGGESTION IS, IF THEIR TEXT

14  RECORDS SHOW THAT MR. KOLLMAR AND/OR THE COMPLAINANT TRAVELED

15  TO BUFFALO WHEN SHE SAID SHE DID, THEY PRESENT THE EVIDENCE.

16  AND THE FACT THAT THEY HAVEN'T DRAWS THE NEGATIVE INFERENCE.

17      TWO, I APPRECIATE -- YOU NOTICE -- THE ABSENCE OF EVIDENCE

18  IS EVIDENCE.

19          **THE COURT:**  I UNDERSTAND, MR. BALOGH.

20          **MR. BALOGH:**  WHILE I APPRECIATE MS. BESSETTE'S

21  EMOTIONAL DRAW TO BE TALKING ABOUT A 13-YEAR-OLD GIRL, THE

22  ONLY ABUSE STATUTE THAT APPLIES TO THIS ANALOGOUSLY IS A

23  MISDEMEANOR IN CALIFORNIA.

24      THE CANADIANS HAVE EXPRESSLY SAID THE CASE IS NOT BASED ON

25  CONSENT BY AGE.  IT'S A FORCE CASE.  AND 243.4(E)(1) IS A

1    MISDEMEANOR.

2        THE LAST THING I WANT TO SAY IS, THIS IS THE CONFLATION

3    YOU HAVE TO GUARD AGAINST.  THIS IS HER WRITTEN ACCOUNT.

4    AGAIN, EC (SIC) 55, 146, WHICH IS THE ECF GENERATED PAGE

5    NUMBERS.

6        I FIRST MET DONALD KOLLMAR THE WINTER OF 1974 SHORTLY

7    AFTER MY 12TH BIRTHDAY.

8        IF WE TOGGLED DOWN TO THE NEXT PAGE, IN MARCH 1975, AT AGE

9    13, AND THEN SHE DESCRIBES THE BUFFALO TRIP.  SO THAT IS --

10   THAT'S THREE MONTHS LATER -- OR TWO MONTHS LATER.

11       JUST AS I SAID, IT'S NOT A YEAR LATER.

12       WHAT HAPPENS AND WHY MS. BESSETTE SAYS IT IS MARCH '76 IS

13   BECAUSE OF ALL THE ERRORS IN HER DIARY.  SHE WASN'T 13 IN

14   MARCH OF '75.  AND SO BECOMES MARCH OF '76.  AND THE NEXT TIME

15   SHE HAS A HEADING WITH A DATE IN IT, IT'S 1977 -- IT'S

16   APPROXIMATELY, WHAT'S HER DATE (SIC).  IT'S 14.

17       THIS IS PAGE --

18           **THE COURT:**  SHE SAYS HOW OLD SHE IS.

19           **MR. BALOGH:**  -- 152, SHE WAS 14 IN 1976, THE WEEKEND

20   OF MOTHER'S DAY.  SHE INTERLINEATES THAT TO BE 1977 BECAUSE,

21   AGAIN, HER SCRIPT IS WRONG.  SHE IS NOT 14 IN 1976 ON MOTHER'S

22   DAY WEEKEND.  SO SHE INTERLINEATES IT.  SO THESE ARE HER

23   ERRORS IN HER ALLEGED DIARY WHERE HER AGE IS WRONG.

24       SHE SAYS HER AGE AND THE TIME, AND SHE'S CONSISTENTLY

25   WRONG.  SO SHE DID HAVE A THREE-MONTH GAP BETWEEN MEETING HIM

```
 1    IN THE BUFFALO TRIP.  THAT'S IN WRITING.  I JUST GAVE YOU THE

 2    PAGE NUMBERS.  THAT IS HER WRITTEN ACCOUNT.

 3        SO IT IS NOT A YEAR.  BUT WHEN THE DETECTIVE SAYS, WHY

 4    DIDN'T YOU REPORT IT, SHE SAYS, OH -- SHE GIVES THE WHOLE

 5    LENGTH OF TIME.  THAT'S JUST NOT TRUE BY HER OWN ACCOUNT.

 6        THAT'S THE POINT.  AND WHEN SOMEONE HAS TO ANSWER A

 7    QUESTION, MAKES SOMETHING UP THAT'S WRONG, THAT'S A REASON TO

 8    DISCOUNT THEIR CREDIBILITY.  IT'S A REASON NOT TO ACCEPT HER

 9    ACCOUNT BECAUSE WHEN THEY GIVE THE EXPLANATION, IF IT IS

10    PROVABLY FALSE, WHAT'S THE CANON LATIN?  FALSUM IN UNO, FALSUM

11    IN OMNIBUS.  FALSE IN ONE, FALSE IN ALL.

12        WHEN A WITNESS LIES OR MAKES ERRORS OR IS INACCURATE, WE

13    HAVE REASON NOT TO BELIEVE THE WITNESS, ESPECIALLY ON

14    SOMETHING WHICH IS -- THIS IS SUPPOSEDLY FROM HER PERSONAL

15    DIARY.  SHE'S CRAFTED THIS OVER A YEAR BUT ULTIMATELY ADMITS

16    IT'S WRITTEN BY SOMEBODY ELSE.

17        HER VERBAL ACCOUNT TRACKS THAT ACCOUNT.  IT IS -- COMPARE

18    BOTH.  YOU'VE READ -- YOU'VE LISTENED TO THE TAPE OR YOU'VE

19    READ THE TRANSCRIPT.  JUST READ THOSE 12 PAGES AGAIN.  IT'S A

20    SCRIPT WRITTEN BY SOMEONE ELSE, REPLETE WITH ERRORS THAT

21    ANYONE WHO WAS THERE IN REAL TIME WHO WROTE IN THEIR DIARY

22    WOULD HAVE NOT MADE.  THAT ALONE SHOULD GIVE YOU GENUINE PAUSE

23    TO ACCEPT WHAT FOLLOWS.

24            MS. BESSETTE:  OR, YOUR HONOR, IT COULD BE THAT THE

25    VICTIM WENT BACK AND FOUND HER DIARY WHEN SHE WENT TO PUT THE
```

1    STATEMENT TOGETHER.

2        AND IN HER DIARY, MARCH 1976, IT STATES WHAT HAPPENED TO

3    HER.  BUT SHE DOESN'T WRITE IN THAT DIARY ENTRY, AGE 12 OR AGE

4    14, OR AGE 16, SHE JUST HAS THE FACTS.  SO WHEN SHE WRITES THE

5    STATEMENT, SHE TAKES 1976 AND HER BIRTHDATE, 1962, AND COMES

6    UP WITH THE DATES.  BUT SHE DOESN'T TAKE INTO ACCOUNT EACH

7    TIME THAT IT'S MARCH OF '76 AND SHE DOESN'T TURN, YOU KNOW, 13

8    UNTIL OCTOBER '76.

9        AND THAT MAKES A WHOLE LOT MORE SENSE THAN THIS GIRL

10   DIDN'T JUST MAKE UP THIS STORY THAT MR. KOLLMAR MOLESTED HER

11   OVER THIS TIME, BUT SHE FILLED IT WITH ALL OF THESE VERY

12   DETAILED MEMORIES OF THINGS HAPPENING, MANY OF WHICH SEEM TO

13   BE ADMITTED BY THE DEFENSE; THAT HE DID TRAVEL ALL THESE

14   PLACES, THAT HE DID KNOW HER, WHICH ALIGNS WITH THE STATEMENT

15   HE SAID TO THE MARSHALS.  WHEN HE WAS ARRESTED HE SAID, OH,

16   THIS IS --

17        **MR. BALOGH:**  I WILL OBJECT TO THAT.  THERE'S BEEN NO

18   REPORT PROVIDED.  IF WE ARE GOING TO HAVE ANONYMOUS HEARSAY

19   THROUGH SOME MARSHAL, THEY SHOULD ESTABLISH IT.  THAT'S NOT

20   FROM THE DIPLOMATIC CHANNEL.  IF WE WANT TO HAVE HIM ON THE

21   STAND, WE'LL DO IT.

22        WE HAVE A *BRADY -- MIRANDA* MOTION --

23        **MS. BESSETTE:**  THERE'S NO NEED --

24        **MR. BALOGH:**  OKAY.  SO WE CAN WITHDRAW IT OR STRIKE

25   IT, YOUR HONOR?

1          **THE COURT:**  I'M GOING TO ALLOW MS. BESSETTE TO

2     CONTINUE HER ARGUMENT.

3        GO AHEAD.

4          **MS. BESSETTE:**  SO, YOUR HONOR, THE COURT HAS TAKEN A

5     LOOK AT THE EVIDENCE, THE VERY DETAILED VIDEO, THE TRANSCRIPT,

6     AND THE VICTIM'S WRITING UP HER STATEMENTS, ALONG WITH WHAT

7     CANADA HAS PROVIDED.  AND THIS IS ALL ASSUMED TO BE TRUE.

8     THAT'S WHAT THE LAW IS.

9        IF SOME THINGS ARE REALLY OUT OF WHACK AND THE JUDGE MAKES

10    CREDIBILITY RULINGS LIKE THE VICTIM SAID SHE, YOU KNOW,

11    KOLLMAR WAS AN ALIEN WHO HAD COME DOWN FROM OUTER SPACE AND

12    DONE THESE THINGS, YOU KNOW, ON PLANET MARS, I MEAN, YES,

13    THERE ARE TIMES WHEN THINGS WOULD ALERT THE COURT THAT THIS

14    DOESN'T MAKE SENSE.

15       INSTEAD, WE HAVE, YOU KNOW, FROM THE VICTIM'S TESTIMONY IN

16    THE VIDEOTAPE, A CALM, CONSIDERED, ELOQUENT, DETAILED, FACTUAL

17    RENDITION.  WE HAVE CANADA LAYING OUT HOW THIS VIOLATES THE

18    LAW IN CANADA.

19       THE GOVERNMENT FROM THE UNITED STATES HAS PROVIDED THE

20    COURT WITH STATUTES.  THE APPROACH TO BE TAKEN IS A LOOK AT

21    THE NATURE OF THE FACTS AND THEN THE COURT HAS THE ANALYSIS.

22       WE HAVE JUST TWO ISSUES:  ARE THESE CRIMES FOR WHICH

23    EXTRADITION ARE -- EXTRADITION IS REQUESTED COVERED BY THE

24    TREATY AND IS THERE SUFFICIENT EVIDENCE TO SUPPORT A FINDING

25    OF PROBABLE CAUSE ON THE TWO CHARGES AGAINST MR. KOLLMAR.

1      THE GOVERNMENT BELIEVES THAT THERE'S SUFFICIENT EVIDENCE

2   OF THIS, YOUR HONOR, AND THAT WHAT THE DEFENSE HAS DONE HAS,

3   YOU KNOW, TRIED TO BLOW UP PROBABLE CAUSE BY FINDING MINOR

4   INCONSISTENCIES AND NOW USING WORDS LIKE IT'S SO OUTRAGEOUS

5   AND IT'S SO OUTLANDISH, AND THIS NEVER COULD HAVE HAPPENED.

6   BUT WE ARE AT A VERY DIFFERENT HEARING.  WE ARE NOT BEFORE THE

7   JURY.  WE ARE NOT FINDING BEYOND A REASONABLE DOUBT.

8      SO I DID BRING TO THE COURT, YOUR HONOR, THE ORIGINAL

9   DOCUMENTS IF THE COURT OR THE DEFENDANT WOULD LIKE TO LOOK AT

10  THEM.  EXCEPT FOR THE FIRST DOCUMENT WHICH WE LODGED WITH THE

11  COURT WHICH WAS THE FIRST AFFIDAVIT OF U.S. AMBASSADOR KELLY

12  CRAFT IN SUPPORT OF THE REQUEST FOR EXTRADITION, THAT WAS

13  ACTUALLY LODGED WITH, YOU KNOW, THE INTAKE.  THE OTHERS ARE

14  THE ORIGINAL.

15     AND WE BELIEVE THAT THE COURT SHOULD FIND CERTIFICATION

16  AND THAT WE SHOULD PROVIDE THIS THEN TO THE SECRETARY OF STATE

17  TO MAKE ITS DETERMINATION ON EXTRADITING MR. KOLLMAR AS

18  REQUESTED BY CANADA.

19          **THE COURT:**  OKAY.

20          **MR. BALOGH:**  SINCE WE'RE CLOSING, I'LL MAKE TWO MORE

21  POINTS --

22          **THE COURT:**  I ACTUALLY HAVE A COUPLE MORE QUESTIONS.

23          **MR. BALOGH:**  PLEASE LET ME ANSWER YOUR QUESTIONS

24  FIRST, YOUR HONOR.

25          **THE COURT:**  OKAY.

1      WITH RESPECT TO CANADA'S CHARTER OF RIGHTS AND FREEDOMS,

2   IS THERE ANY CASE THAT APPLIES THAT TO ARTICLE IV'S LAPSE OF

3   TIME PROVISION?

4           **MR. BALOGH:**  I HAVE NOT FOUND A CASE.

5           **THE COURT:**  OKAY.

6           **MR. BALOGH:**  I WOULD JUST RELY ON TREATY

7   INTERPRETATION AND THE PRESENTATIONS OF MR. GREENSPAN.

8           **THE COURT:**  OKAY.

9           **MR. BALOGH:**  I ASSUME THE COURT GOT THE SUPPLEMENTAL

10  DECLARATION THIS WEEK.  AND WE GAVE ALL THE CASES SO THE COURT

11  COULD READ THE CANADIAN CASES THEMSELVES.

12          **THE COURT:**  RIGHT.

13          **MR. BALOGH:**  OKAY.

14          **THE COURT:**  ALL RIGHT.

15     AND THEN LASTLY, WOULD ARTICLE 10(1) ENCOMPASS CALIFORNIA

16  STATUTE OF LIMITATIONS WHEN ARTICLE IV OF THE EXTRADITION

17  TREATY ALREADY INCLUDES A LAPSE OF TIME PROVISION?

18          **MR. BALOGH:**  RIGHT.  I THINK IT DOES.  AND I THINK

19  IT'S DIFFERENT.

20     I THINK THE REASON ARTICLE 10 APPLIES HERE IS, ARTICLE IV

21  CLEARLY DESCRIBES THE REQUESTING STATE FOR PURE STATUTE OF

22  LIMITATIONS QUESTIONS.  WE'VE IDENTIFIED THE CONSTITUTIONAL

23  ARGUMENT WHICH SHOWS IT'S LAPSE IN CANADA.

24     BUT ARTICLE 10, THE CALIFORNIA -- THAT'S A FUNCTION OF THE

25  LAW I CHALLENGED EARLIER BUT SUBMITTED TO.  WE LOOK TO THE

1    ANALOG OF THE STATE LAW WHERE YOU FOUND THE GUY.

2        I DISAGREE WITH THAT LAW.  THE NINTH CIRCUIT SAYS I'M

3    WRONG.  I'VE GOT TO LIVE WITH THAT.  IT'S NOT THE FIRST TIME

4    I'VE DISAGREED WITH THE CIRCUIT.

5            **THE COURT:**  YOU AGREE THAT I'M BOUND BY THE NINTH

6    CIRCUIT AUTHORITY?

7            **MR. BALOGH:**  EVERY DAY OF THE WEEK.  I PRESERVE

8    ISSUES.  BUT MAYBE I WILL GET ONE DAY SOMEBODY WHO CAN LISTEN

9    TO THAT OR DO SOMETHING.  YOU CAN LISTEN, BUT YOU CAN'T DO

10   ANYTHING ABOUT THAT.  YOU HAVE TO FOLLOW IT.  I'M OKAY WITH

11   THAT.

12       THEN THERE'S REPERCUSSIONS OF THAT WHEN THEY FIND A

13   PERSON.  WE HAVE THIS, YOU KNOW, STATE SYSTEM OF THEIRS, 51

14   DIFFERENT SYSTEMS OF STATE LAWS.  AND SOME OF THEM HAVE

15   DIFFERENT REQUIREMENTS.

16       AND THE TREATY SAYS, IT HAS TO BE SUFFICIENT IF HE DID IT

17   HERE, AND IT'S AN IMAGINING, IT'S LIKE A COUNTERFACTUAL; IF WE

18   PRESENTED THIS CASE IN CALIFORNIA COURTS, COULD YOU GET A HOLD

19   ORDER?  I THINK THE LANGUAGE OF THE TREATY IS COMMITTED FOR

20   TRIAL.

21       AND SO THAT'S THE ANALYSIS WE DO.  WE LOOK AT THE

22   ALLEGATIONS AND WE SAY, OKAY, DOES THIS SUSTAIN A 261.5?  DOES

23   IT -- WHAT STATE ANALOG IS THERE FOR INDECENT TOUCHING?  DOES

24   THIS PRESENTATION SUSTAIN IT?

25       IN CALIFORNIA, JUST LIKE PENNSYLVANIA, THE COURTS HAVE --

1    THE LEGISLATURE, THE COURTS IN CALIFORNIA, LEGISLATURE IN

2    PHILADELPHIA HAS CREATED -- IN PHILADELPHIA IT IS AN ELEMENT

3    OF EVERY CASE.  IN CALIFORNIA, IT IS JURISDICTION THAT MUST BE

4    PLEADED.  AND YOU CAN'T GET A COMMITMENT ORDER UNLESS YOU

5    PLEADED THE STATUTE.  SO IT'S A FUNCTION OF CALIFORNIA LAW.

6         SO THE TREATY DESCRIBES A PROVISION FOR THE REQUESTING

7    STATE IN ARTICLE IV, BUT ARTICLE 10 SAYS YOU STILL HAVE TO

8    MEET THIS HURDLE OF GETTING A HOLD ORDER ACCORDING TO WHERE

9    YOU FOUND HIM.  AND THEY FOUND HIM IN CALIFORNIA.  THEY CAN'T

10   GET A COURT ORDER HERE.  AND BECAUSE OF THAT, *SYLVESTER*

11   TEACHES, YOU HAVE TO APPLY EACH ASPECT OF THE TREATY UNDER --

12   IF THEY FOUND HIM IN NEVADA, THEY WOULDN'T HAVE HAD THAT

13   PROBLEM.

14        THEY FOUND HIM IN CALIFORNIA SO THEY DO HAVE THAT PROBLEM

15   AND THEY CANNOT EXTRADITE HIM BECAUSE ON THIS RECORD, THEY

16   COULD NEVER -- AS A MATTER OF LAW, THEY COULDN'T GET A HOLD

17   ORDER IN CALIFORNIA.  ONCE YOU MAKE THAT DETERMINATION, WHICH

18   IS LEGALLY TRUE, YOU CAN'T EXTRADITE HIM BASED ON THAT BECAUSE

19   YOU CAN'T SATISFY DUAL CRIMINALITY.

20             **THE COURT:**  ANY RESPONSE?

21        **MS. BESSETTE:**  YES, YOUR HONOR.

22        HE'S REFERRING TO AN OUT-OF-DISTRICT DISTRICT COURT CASE

23   THAT THE THIRD CIRCUIT, WHICH IS WHERE THE PENNSYLVANIA

24   DISTRICT COURT IS, HAS ALREADY INTIMATED THAT IT DOESN'T

25   BELIEVE THAT CASE IS ANY SUPPORT, THE *SYLVESTER* CASE.

1          WHEN WE STEP BACK FOR A MOMENT, WE HAVE CANADA AND THE

2     UNITED STATES.  TWO POWERFUL COUNTRIES NEGOTIATE A TREATY IN

3     WHICH ARTICLE IV SPECIFICALLY STATES AT THE PROVISION

4     REGARDING STATUTE OF LIMITATIONS, AND IT IS ONLY CANADA'S

5     STATUTE OF LIMITATION THAT APPLIES.

6          THE CANADIAN PROSECUTOR MAKES CLEAR, INDICTABLE OFFENSES,

7     SERIOUS OFFENSES LIKE THIS, RAPE, INDECENT ASSAULT, THERE'S NO

8     STATUTE OF LIMITATIONS IN CANADA.

9          THE NINTH CIRCUIT, IN INTERPRETING AN ARTICLE SIMILAR TO

10    ARTICLE 10 IN WHICH, YOU KNOW, THE DEFENDANT IS TRYING TO USE

11    IT TO BRING IN A CALIFORNIA STATUTE OF LIMITATIONS, DOES NOT

12    DO WHAT THEY ARE TRYING -- WHAT HE'S TRYING TO SAY IT DOES.

13         IN FACT, IN THE *QUINN* CASE WHEN THE NINTH CIRCUIT

14    ADDRESSED A SIMILAR PROVISION IN THE UNITED STATES UNITED

15    KINGDOM EXTRADITION TREATY, IT SAID U.S. COURTS HAVE

16    INTERPRETED THIS PROVISION IN THIS AND SIMILAR TREATIES AS

17    REQUIRING A SHOWING BY CANADA HERE, THE REQUESTING PARTY, THAT

18    THERE'S PROBABLE CAUSE TO BELIEVE THE ACCUSED HAS COMMITTED

19    THE CHARGED OFFENSE.

20         AND IT MAKES SENSE.  BECAUSE, YOU KNOW, COURTS ARE NOT

21    SUPPOSED TO DO SOMETHING TO FIND THAT ONE ARTICLE OF A TREATY

22    HAS NO PURPOSE.  IF ARTICLE 10 BROUGHT IN EVERY STATUTE OF

23    LIMITATIONS, WHY WOULD WE HAVE ARTICLE IV?

24              **THE COURT:**  ARTICLE 10 -- ARTICLE 10 JUST SEEMS TO

25    CONCERN THE PROBABLE CAUSE --

1          **MS. BESSETTE:**  THAT'S CORRECT, YOUR HONOR.

2          **THE COURT:**  -- REQUIREMENT.

3          **MS. BESSETTE:**  THAT'S RIGHT.  THAT'S A PLAIN READING

4   OF IT.  THAT'S THE NINTH CIRCUIT'S READING OF SIMILAR

5   PROVISIONS IN OTHER STATUTES.

6          AND IT MAKES SENSE IN THIS TREATY WHERE WE HAVE A SEPARATE

7   ARTICLE, IV, WHICH DEALS WITH STATUTE OF LIMITATIONS AND BOTH

8   NEGOTIATING PARTIES, THE U.S. AND CANADA, AGREEING.  IT'S ONLY

9   THE REQUESTING PARTIES' STATUTE OF LIMITATIONS THAT APPLIES.

10  CANADA HAS NO STATUTE OF LIMITATIONS FOR RAPE AND INDECENT

11  ASSAULT.

12         AND INTERESTINGLY, THE FEDERAL STATUTES THAT ARE ANALOGOUS

13  AND PROVIDE DUAL CRIMINALITY, THEY DO NOT HAVE A STATUTE OF

14  LIMITATIONS EITHER.  AND FOR STATUTE OF LIMITATIONS, THE

15  COURTS ONLY LOOK TO FEDERAL, NOT TO THE STATE, UNLIKE DUAL

16  CRIM -- DUAL CRIMINALITY.

17         SO THE COURTS HAVE MADE CLEAR, UNDER DUAL CRIMINALITY,

18  FIRST YOU LOOK AT FEDERAL LAW, THEN YOU LOOK AT THE STATE

19  WHERE THE HEARING IS, AND THEN YOU LOOK AT PREPONDERANCE OF

20  STATES.  STATUTE OF LIMITATIONS, YOU LOOK AT THE TREATY AND

21  THAT TELLS YOU WHAT TO DO.

22         SOME TREATIES TELL YOU BOTH COUNTRIES' STATUTE OF

23  LIMITATIONS APPLY.  HERE, IT'S JUST THE REQUESTING COUNTRY

24  STATUTE OF LIMITATIONS THAT APPLIES.  IF WE HAD A DIFFERENT

25  SCENARIO, YOUR HONOR, WHERE ARTICLE IV SAID BOTH U.S. AND

1    CANADA'S STATUTE OF LIMITATIONS APPLY, THE COURTS SAY YOU JUST

2    LOOK AT FEDERAL LAW, AND THAT'S NINTH CIRCUIT.

3              **THE COURT:**  OKAY.  ANYTHING FURTHER?

4              **MR. BALOGH:**  YOUR HONOR, ONE THING THAT'S BOTHERING

5    ME, WE DON'T HAVE AN ANSWER TO IT YET.  IT CONCERNS THE

6    GOVERNMENT'S CANDOR.  I AM GLAD WE HAVE MS. MONACO HERE.

7         IN MAY OF THIS YEAR, THEY QUOTED -- ESSENTIALLY QUOTED THE

8    COMPLAINANT'S STATEMENT.  IN JULY THEY TOLD US THEY DIDN'T

9    HAVE THE STATEMENT AND MIGHT NEVER GET IT.  THEY GOT IT IN

10   OCTOBER.

11        SO AT THE JULY HEARING, MS. BESSETTE SAID THEY DIDN'T HAVE

12   ANY OF HER STATEMENTS.  ALL THEY HAD WAS WHAT THEY GAVE US.

13   SO HOW COULD SHE QUOTE THE COMPLAINANT'S STATEMENT THAT THEY

14   SAID THEY DIDN'T HAVE SEVEN MONTHS BEFORE THEY GOT IT?  I

15   DON'T KNOW HOW THEY DID IT, BUT THE REPRESENTATION -- I DON'T

16   KNOW HOW THEY DID IT.  WHO HAD IT?  WHO SAW IT --

17                    (SIMULTANEOUS COLLOQUY)

18             **MS. BESSETTE:**  I AM HAPPY TO RESPOND, YOUR HONOR.  IT

19   BOTHERED ME THAT MR. BALOGH QUICKLY ASSUMED THAT THE FEDERAL

20   GOVERNMENT PROSECUTORS WOULD LIE.

21        WHAT HAPPENS IS, THAT CANADA SENDS A PACKAGE OF MATERIAL

22   TO OIA.  THE OIA ATTORNEY ON THE CASE INITIALLY SENT ME A COPY

23   OF THE COMPLAINT AND THOSE MATERIALS.  AND MY UNDERSTANDING

24   IS, THAT AT THE TIME, THEY HAD THE SPEAKMAN AFFIDAVIT, THAT

25   HAS TO GO THROUGH WHEN THERE'S AN EMERGENCY -- AND MY

1    COLLEAGUE CAN SPEAK TO THIS BETTER THAN ME.

2         **MS. MONACO:**  YES.  SO THIS CASE INITIATED AS A

3    PROVISIONAL ARREST REQUEST -- I FORGET EXACTLY WHAT ARTICLE

4    UNDER THE TREATY THAT IS -- BUT IT'S USED IN URGENT SITUATIONS

5    WHEN THERE ISN'T TIME TO NECESSARILY PUT A FULL EXTRADITION

6    PACKAGE TOGETHER UNDER ARTICLE IX.  IT'S AN ABBREVIATED

7    PROCESS THAT CANADA USED IN THIS CASE BECAUSE OF MR. KOLLMAR'S

8    TRAVEL SCHEDULES.

9         SO, CANADA, PURSUANT TO THE TREATY, SUBMITTED THE MINIMUM

10   LEVEL OF DOCUMENTS THAT ARE REQUIRED UNDER THE TREATY IN A

11   PROVISIONAL REQUEST -- PROVISIONAL ARREST REQUEST TO THE

12   OFFICE OF INTERNATIONAL AFFAIRS, WHICH WE THEN PROCESSED AND

13   SENT OVER TO THE -- MS. BESSETTE IN THE U.S. ATTORNEY'S OFFICE

14   TO MOVE FORWARD ON AN ARREST WARRANT AND A COMPLAINT BASED ON

15   THE ABBREVIATED INFORMATION PROVIDED IN THE PROVISIONAL ARREST

16   REQUEST.

17        THAT PROVISIONAL ARREST REQUEST IS MANDATED THAT IT SETS

18   FORTH THE FACTS UNDERLYING THE CRIMES THAT THEY ARE SEEKING

19   ARREST, WHICH INCLUDED STATEMENTS FROM THE INVESTIGATOR ABOUT

20   THE VICTIM'S TESTIMONY OF WHAT THE FACTS WERE THAT THEY WERE

21   BASING IT ON.

22        SO OUR STATEMENTS AND QUOTES ABOUT WHAT THE VICTIM SAID

23   CAME DIRECTLY FROM THE PROVISIONAL ARREST REQUEST.  WE DID NOT

24   RECEIVE A COPY OF THE VICTIM'S FULL STATEMENT UNTIL IT WAS

25   ORDERED BY THE COURT FOR US TO SECURE THAT FROM CANADA OVER

1    THE SUMMER, WHICH WE THEN SUBMITTED IMMEDIATELY UPON RECEIPT.

2         **THE COURT:**  OKAY.  DOES THAT ANSWER YOUR QUESTION,

3    MR. BALOGH?

4         **MR. BALOGH:**  THE PROBLEM I HAVE IS THE PROVISIONAL

5    ARREST REQUEST THAT WAS, I THINK, FILED WITH THE COMPLAINT

6    DOESN'T CONTAIN THE QUOTE.

7         **MS. MONACO:**  THE PROVISIONAL ARREST REQUEST IS NOT

8    FILED WITH THE COMPLAINT.  IT IS NOT REQUIRED TO BE.  WE FILED

9    THE COMPLAINT BASED ON THE INFORMATION PROVIDED FROM CANADA,

10   AND THEN THE FORMAL EXTRADITION REQUEST IS THE ACTUAL PACKAGE

11   OF INFORMATION AND THE CHARGES THAT CANADA IS SEEKING THAT'S

12   PURSUANT TO THE PROVISIONS OF THE TREATY THAT ALLOW THIS

13   ABBREVIATED PROCESS FOR ARREST, BUT THEN ALLOWS 60 DAYS FOR

14   CANADA TO PUT ITS FULL PACKAGE TOGETHER.

15        **THE COURT:**  RIGHT.  I DON'T SEE ANY ISSUE WITH CANDOR

16   ON BEHALF OF THE GOVERNMENT.

17        **MR. BALOGH:**  IF I HAVE ANOTHER ISSUE -- I WILL LISTEN

18   TO THE TAPE AGAIN AND SEE EXACTLY WHAT MS. BESSETTE SAID.  IF

19   I HAVE AN ISSUE, I WILL RAISE IT.

20        **THE COURT:**  ALL RIGHT.  THANK YOU.

21        **MS. MONACO:**  THANK YOU.

22        **THE COURT:**  ANYTHING FURTHER?

23        **MS. BESSETTE:**  NOTHING FROM THE GOVERNMENT.  THANK

24   YOU, YOUR HONOR.

25        **THE COURT:**  OKAY.  THEN I WILL TAKE THIS MATTER AS

1  SUBMITTED, AND I WILL TAKE ANOTHER LOOK AT THE VIDEO AND THE

2  STATEMENT AND THE TRANSCRIPT AGAIN, AND JUST TAKE INTO

3  CONSIDERATION THE ARGUMENTS MADE TODAY AND ISSUE AN ORDER

4  SHORTLY.

5        **MS. BESSETTE:**  THANK YOU, YOUR HONOR.

6    AND THE GOVERNMENT WOULD REQUEST THAT THE DOCUMENTS

7  PROVIDED FROM CANADA ARE ADMITTED INTO EVIDENCE.  THOSE ARE

8  DOCKET 39, 55, AND 79.

9        **THE COURT:**  39, 55, AND 79.

10        **MS. BESSETTE:**  IF THE COURT WOULD LIKE THE ORIGINALS

11  OF THE SECOND TWO OF THOSE, 55 AND 79, I HAVE THOSE HERE AND

12  I'M HAPPY TO PROFFER THEM TO THE COURT.  THE ORIGINAL WAS

13  LODGED WITH DOCKETING.

14        **THE COURT:**  SURE.  I WILL TAKE THOSE.

15        **MS. BESSETTE:**  THESE ALSO HAVE THE ORIGINAL DVD AND

16  THE VICTIM'S STATEMENT.

17        **THE COURT:**  NO OBJECTION?

18        **MR. BALOGH:**  NO OBJECTION, YOUR HONOR.

19        **THE COURT:**  ALL RIGHT.  SO THE DOCUMENTS AT DOCKET

20  NO. 39, 55, AND 79 ARE ADMITTED INTO EVIDENCE.

21    (DOCKET NOS. 39, 55, AND 79 RECEIVED IN EVIDENCE)

22        **MR. BALOGH:**  I WOULD MAKE THE SAME MOTION WITH

23  RESPECT TO DOCUMENT 64-1 TO 64-33.  THOSE ARE DECLARATIONS

24  SUBMITTED WITH OUR INITIAL OPPOSITION BRIEF, AS WELL AS THE

25  TWO FILINGS WE MADE IN THE LAST TWO DAYS, WHICH WOULD BE THE

1    SUPPLEMENTAL KLATT DECLARATION WHICH MAY BE FOUND AT ECF 81

2    AND THE SUPPLEMENTAL GREENSPAN DECLARATION WHICH MAY BE FOUND

3    AT ECF 80.

4              **THE COURT:**  64-1 TO 64-3 (SIC) ARE THE DECLARATIONS?

5              **MR. BALOGH:**  YES.  THE EVIDENCE WE SUBMITTED.

6        WHAT I THINK THE PROPER COURSE IS FOR YOU TO READ THEM ALL

7    WHEN YOU CONSIDER THE TOTALITY OF THE CIRCUMSTANCES AND YOU

8    MAY CONSIDER AND APPLY THEM AS YOU DEEM FIT WITHIN YOUR

9    DISCRETION.  WE FILE THEM PUBLICLY, WE ARGUED THEM, AND I

10   THINK THEY ARE PROPERLY CONSIDERED BY THIS COURT TO THE EXTENT

11   THEY EXPLAIN, NEGATE, OR OBLITERATE THE COMPLAINANT'S ACCOUNT.

12             **MS. BESSETTE:**  AND, YOUR HONOR, FROM THE GOVERNMENT,

13   I KNOW THE COURT HAS CONSIDERED THESE DOCUMENTS.  THE

14   GOVERNMENT'S READ THROUGH THEM.  I BELIEVE THEY SQUARELY FALL

15   WITHIN CONTRADICTORY EVIDENCE VERSUS EXPLANATORY ADMISSIBLE

16   EVIDENCE.  FOR EXAMPLE, LIKE I REFERENCED BEFORE IF THERE WAS

17   A MARRIAGE CERTIFICATE SHOWING THAT THEY WERE LAWFULLY

18   MARRIED.

19       BUT AS THE COURT HAS TAKEN EVERYTHING BEFORE IT, I DON'T

20   HAVE AN OBJECTION TO THE COURT TAKING THOSE INTO EVIDENCE AND

21   REVIEWING THEM.  I JUST DON'T BELIEVE THE EVIDENCE DOES WHAT

22   THE DEFENSE SAYS IT DOES AND REFUTES PROBABLE CAUSE.

23       BUT TO MAKE SURE WE DON'T HAVE AN ISSUE DOWN THE ROAD, I

24   AM ASSUMING THERE MAY BE APPEALS, THIS SHOULD ALL BE PACKAGED

25   UP TOGETHER AND IS SOMETHING THIS COURT HAS CONSIDERED AND CAN

```
1    MAKE ITS FINDINGS BASED ON.

2              MR. BALOGH:  I WILL MAKE THE RECORD -- THANK YOU FOR

3    THAT, MS. BESSETTE.

4       BY AGREEING TO ADMISSION, THE GOVERNMENT IS NO WAY WAIVING

5    THE SUBSTANTIVE ARGUMENTS THEY RAISE IN THEIR BRIEF ON WHY

6    THEY WIN AND I DON'T WIN.  THEY HAVE MADE THOSE ARGUMENTS

7    TODAY.  THEY'VE MADE THEM IN WRITING.  THAT'S NOT A WAIVER OF

8    THOSE ARGUMENTS, IT'S JUST THEY ARE IN EVIDENCE FOR THE

9    COURT'S CONSIDERATION.  THE ORDER WILL LET US KNOW YOUR

10   JUDGMENT --

11             THE COURT:  RIGHT.

12             MR. BALOGH:  -- ON WHAT YOU THOUGHT OF THEM, AND THEN

13   WE WILL LIVE WITH THAT.

14             THE COURT:  LET ME MAKE SURE I'VE GOT IT CLEAR NOW.

15      THE REQUEST IS THAT THE COURT ADMIT DOCKET NOS. 64-1

16   THROUGH 64-3?

17             MR. BALOGH:  33.

18             THE COURT:  OH, 33.  AND THEN --

19             MR. BALOGH:  80 AND 81.

20             THE COURT:  80 AND 81.

21             MR. BALOGH:  THOSE ARE SUPPLEMENTAL ONES WE GOT THIS

22   WEEK.  THAT'S THE COMPLETE RECORD AS PRESENTED BY THE DEFENSE.

23             THE COURT:  ALL RIGHT.  GIVEN NO OBJECTION, THEY ARE

24   ADMITTED.

25
```

```
 1        (DOCKET NOS. 64-1 - 64-33, 80, AND 81 RECEIVED IN

 2   EVIDENCE)

 3             MR. BALOGH:  THANK YOU, YOUR HONOR.

 4             THE COURT:  AND I DID RECEIVE THE ORIGINAL --

 5   ORIGINALS OF DOCKET NOS. 55 AND 79.

 6             MS. BESSETTE:  YOUR HONOR, I WOULD ALSO MOVE TO

 7   ADMIT, JUST SO IT'S PART OF THE RECORD BECAUSE WE HAVE BEEN

 8   REFERRING TO IT, WHAT I MARKED HERE AS EXHIBIT 1, WHICH IS THE

 9   GOVERNMENT'S EXPLANATION OF WHAT WE WERE REFERRING TO JUST IN

10   CASE A COURT DOWN THE ROAD HAS INTEREST IN REFERRING TO THIS.

11        I WILL PROVIDE TO THE COURT THE ONE WITH THE STICKER ON

12   IT.

13             MR. BALOGH:  IF I MAY MAKE A SUGGESTION.  I AM FINE

14   WITH THAT.  IT MIGHT BE EASIER FOR ASSEMBLAGE OF THE RECORD IF

15   THE GOVERNMENT JUST FILED AN ECF COPY OF THAT, AND THAT WOULD

16   BE PART OF THE RECORD.  BECAUSE IT THEN COMES ON PACER AND IS

17   EASILY ACCESSIBLE.

18        I DON'T KNOW HOW BIG THAT PAGE IS, BUT IT'S GOING TO BE

19   DIFFICULT TO TRANSMIT OR REFER TO IT IN ANY SUBSEQUENT

20   LITIGATION BASED ON ITS NATURE AND SIZE.

21             MS. BESSETTE:  YOUR HONOR, I HAVE GIVEN THE DEFENSE A

22   COPY SO THEY HAVE ONE.  I THINK WE CAN --

23             MR. BALOGH:  THAT'S FINE.

24             MS. BESSETTE:  I'M ADVOCATING FOR THE ADMISSION OF MY

25   OWN EXHIBIT.  WE ADMIT THINGS THAT ARE LARGE, OR GUNS, OR
```

1   THINGS LIKE THAT ALL THE TIME.  I APPRECIATE HIS POINTS, BUT

2   HE'S NOT OBJECTION -- HE'S NOT OBJECTING TO ITS ADMISSION,

3   HE'D JUST LIKE IT IN A DIFFERENT FORM.  I DON'T BELIEVE THAT

4   IS APPROPRIATE WITH HIM HAVING HIS OWN COPY.

5           **MR. BALOGH:**  I SPOKE MY PIECE, YOUR HONOR.  I'M NOT

6   GOING TO LOSE SLEEP ON IT.

7           **THE COURT:**  WE WILL ALLOW EVERYTHING.  I WILL GO

8   AHEAD AND ADMIT THIS, THE GOVERNMENT'S EXHIBIT 1.

9                   (EXHIBIT 1 RECEIVED IN EVIDENCE)

10          **THE COURT:**  IT'S ALREADY BEEN MARKED.

11          **MR. BALOGH:**  THANK YOU FOR YOUR PATIENCE AND YOUR

12  TIME, YOUR HONOR.

13          **THE COURT:**  THANK YOU.

14          **MR. BALOGH:**  GOOD TO SEE YOU.

15          **THE COURT:**  THANK YOU.

16          **MS. BESSETTE:**  THANK YOU, YOUR HONOR.

17          **THE COURT:**  THANK YOU.

18          **THE CLERK:**  THIS COURT IS ADJOURNED.

19

20              (PROCEEDINGS CONCLUDED AT 2:50 P.M.)

21

22

23

24

25

### **CERTIFICATE OF REPORTER**

I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

*Diane E. Skillman*

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

THURSDAY, MARCH 5, 2020