**Pages 1 - 37**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jon S. Tigar, Judge

```
DONALD KOLLMAR,                    )
                                   )
            Petitioner,            )
                                   )
  VS.                              )      NO. CV 20-01388-JST
                                   )
UNITED STATES PRETRIAL             )
SERVICES, NORTHERN DISTRICT OF     )
CALIFORNIA,                        )
                                   )
            Defendant.             )
_____    )
```

Oakland, California
Monday, April 11, 2022

**TRANSCRIPT OF ZOOM PROCEEDINGS**

**APPEARANCES**:

For Petitioner:

BOERSCH & ILLOVSKY LLP
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
BY:  **MARTHA A. BOERSCH, ESQUIRE**

For Defendant:

OFFICE OF THE UNITED STATES ATTORNEY
1301 Clay St., Room 340S
Oakland, CA 94708
BY:  **MAUREEN BESSETTE**
**ASSISTANT UNITED STATES ATTORNEY**

UNITED STATES DEPARTMENT OF JUSTICE
Office of International Affairs
1301 New York Ave NW
Washington, DC 20530
BY:  **KERRY ANN MONACO**
**ASSISTANT UNITED STATES ATTORNEY**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
Official Reporter

<u>**Monday - April 11, 2022**</u>                                    <u>**2:00 p.m.**</u>

**P R O C E E D I N G S**

**---oOo---**

**THE CLERK:**  Your Honor, now calling CV 20-1388, Donald
Kollmar vs. United States Pretrial Services.

If counsel could please state their appearances for the
record, starting with counsel for plaintiff.

**THE COURT:**  Ms. Bessette, your microphone is muted, I
think.

**MS. BESSETTE:**  Excuse me.  Good afternoon, Your Honor.
Maureen Bessette for the United States.

**MS. BOERSCH:**  Good afternoon, Martha Boersch.  I'm
sorry.  There is one more.

**MS. MONACO:**  Kerry Monaco, also representing the
United States.

**THE COURT:**  Ms. Boersch.

**MS. BOERSCH:**  Good afternoon, Your Honor.  Martha
Boersch appearing for Mr. Donald Kollmar, who as you can see is
present beside me.

**THE COURT:**  I'm afraid I don't know how much of a hot
bench I'm going to be today.  I am very well-prepared for the
hearing.  I just don't know that I have a great deal of
questions for anybody.

I do have one which I'll get to in a second.

I want to start by apologizing to the Petitioner and the

1   Government for the passage of time since this petition was

2   filed.  I think that needs to be said.  All I can say is that

3   once I got the case reassigned to me, I got it on calendar just

4   as soon as I reasonably could, and I would expect that I will

5   make a decision very shortly after this hearing, certainly not

6   more than a couple weeks from today.

7        So it's an important case.  It's a complicated case.  I am

8   going to set time limits, but you could each speak for up to 30

9   minutes.

10       Ms. Boersch, you will be going first.  If you want to save

11   some time for rebuttal, you can do that.

12            **MS. BOERSCH:**  Thank you, Your Honor.

13            **THE COURT:**  I would ask that the parties refer to the

14   Complainant today as "BB" as the magistrate judge did to

15   protect that person's confidentiality.

16       Now I will get to the one question that I sort of have.  I

17   say "sort of" because I do actually have a view as to how I

18   think it comes out.

19       One point of debate is whether the magistrate judge erred

20   in finding that the same set of facts, which is the Mother's

21   Day event in 1977, constituted sufficient support for both the

22   Canadian rape charge and the -- I don't have my notes in front

23   of me, but the Canadian sexual assault or indecent sexual

24   assault charge.  There is no question in her order that she

25   lumped the two things together, and the Government doesn't

1    appear to seriously contest that point.

2         The question is if I agree with the Petitioner that that

3    did not constitute an adequate finding of dual criminality as

4    to those facts which are facts that were not the Mother's Day

5    1977 event but which are actually described in many places,

6    including in the magistrate judge's order, what do I do about

7    it?

8         Now, there is a Ninth Circuit case called *Cucuzzella* which

9    is an old case, 1981, in which the Ninth Circuit essentially

10   just went ahead and made the finding themselves on review of

11   dual criminality.

12        Judge Bybee is fairly clear in *Santos* that that's not what

13   you're supposed to do.  And what happened in *Santos* and what

14   also happened in -- I'm not good with case names -- in another

15   Ninth Circuit case, the name of which I'll say in a second --

16   *Kaplan* -- is they remanded for further findings on that

17   question.

18        Now, in *Santos*, there was a discrete legal issue having to

19   do with torture that the district court got wrong.  In *Kaplan*,

20   there were 60 different charges, and there had not been any,

21   you know, culling out or separating on the part of the district

22   court with regard to any of them.  And I suppose an argument

23   could be made here that there's enough evidence in front of the

24   district court that if I wanted to, I could go ahead and make

25   that determination one way or the other myself.  That's not an

argument I expect Ms. Boersch to make, but I thought the
Government might make it, and if someone makes it, my question
will be why shouldn't I just do what Judge Bybee said in *Santos*
and remand.

So, anyway, that's the only question that came to my mind
as I was getting ready for the hearing, although certainly some
may arise during your arguments.

Ms. Boersch, whenever you're ready.

**MS. BOERSCH:**  Sure.  And I'm going to put that
question to the end because I had not focused on that until
now, but I want -- what I want to focus the Court on is
essentially two issues where we think the magistrate erred, and
the first is the finding of probable cause because I think --
in fact, I strongly believe -- that the magistrate's probable
cause analysis was erroneous, and that when you actually look
at the evidence submitted by the Government, which consists
solely of BB's statement, that that evidence does not support a
finding of probable cause on either of the alleged Canadian
charges.  And the second thing I wanted to focus on was the
dual criminality.

But I want to start with probable cause because, as the
Court knows, the magistrate court, the extradition court, has
to analyze and determine probable cause based on U.S. standards
of probable cause, not Canadian, and that's under Article VIII,
IX and X of the extradition treaty.  And the habeas court, this

1   Court, has a duty to consider the evidence that was before the

2   magistrate so that this Court can decide whether that

3   evidence -- whether based on that evidence, the magistrate

4   fairly concluded that probable cause existed to believe that

5   Mr. Kollmar was guilty of the offenses alleged.  And that --

6   that's -- that is from *Gill vs. Imundi*, which is a Southern

7   District of New York case.

8        That also includes the ability of this Court, the habeas

9   court, to examine the motives, the facts, and the circumstance

10  attendant to the hearsay statement that we have here of BB and

11  not to -- the Court is also charged with independently

12  determining the reliability of the affidavits presented and not

13  simply blindly accepting them without regard to the underlying

14  facts, which is what I believe the magistrate court did here,

15  ignoring the totality-of-circumstances test.

16       Probable cause under both California law, federal law,

17  and, of course, Fourth Amendment requires certain factors to be

18  shown which I want -- I want to -- I know the Court knows this

19  very well, both from being on the federal bench and on the

20  state court bench, but I want to focus on a couple aspects of

21  probable cause that I think are really here and that are often

22  ignored.

23       One is that the facts and circumstances have to be based

24  on reasonably trustworthy information.  The second is that

25  those facts have to lead a person of ordinary care and prudence

to believe and to conscientiously entertain an honest belief that the person is guilty of the crime.  And, again, it has to be based on the totality of circumstances.

What we have here are 40-year-old allegations of sexual assault that are vague and unspecific, and the Ninth Circuit has held that the statement of an alleged victim alone under these circumstances is not in and of itself sufficient to support a finding of probable cause, particularly when, in this case, you look at some of the other facts and circumstances that are present --

**THE COURT:**  Doesn't she make the allegations in 1997, though?

**MS. BOERSCH:**  She makes the -- yes, she does.  So she makes the allegations 20 years after the fact.  The Government does not act on them until another 10 years after that, in 2017.  So we're now today 40 years out.  But 20 years is also obviously a significant amount of time.

Furthermore, officers can't solely rely on a statement such as BB's that they were the victim of a crime but have to independently investigate the basis of the witness' knowledge and to try to corroborate it, and that was never done here.

The final thing is that given the -- the fact that we are now 40 years out, we are not in the situation where either the magistrate or this Court is trying to evaluate probable cause under some urgent or exigent circumstances but now 40 years

later, and under those circumstances, I think the Court has to

act with the deliberation, the calm deliberation, that's

associated with the judicial process.

So those key elements of the probable cause test I think

are incredibly important in this case.

The Government says that corroboration of BB's statement

is not required under Canadian law, but I contend that it is

under the probable cause standard that's applicable here in the

United States.  And when you look at BB's statement and when

you look at the totality of circumstances, there simply is not

probable cause to believe that Mr. Kollmar is guilty of the two

offenses that have been alleged.

I want to start with a couple of facts.  Number one, we

have BB's statement alone.  That is essentially the basis for

the Government's extradition request.  BB's statement alone,

without considering any other evidence, shows that the conduct

occurred and her statement was made shortly after she had spent

a significant amount of time in a cult environment where she

admitted she and others were subject to brainwashing.  The

statement itself, as Mr. Balogh pointed out quite well, I

thought, in the briefing -- the statement itself is internally

inconsistent and implausible on a number of details.

The other factor, the lapse of time, it may be a due

process issue, and I want to reserve that, but even apart from

a due process issue, the lapse of time I think is a key factor

1   under the totality of circumstances test, and BB did not come

2   forward, as the Court pointed out, until 1997, which is almost

3   20 years after the alleged events.  She came forward for

4   unknown reasons at this point, but the reasons she stated were

5   implausible and inconsistent when you look at them.

6        The other factor is that there has been absolutely no

7   corroboration of BB's statement, despite the passage of almost

8   40 years.  From 1997 to 2017, as far as we can tell from the

9   record, nothing was done to corroborate her statements.

10       Her parents, as far as we can tell, were never

11  interviewed, although allegedly there's a statement of her

12  father, even though BB herself in her statement invited the

13  Canadian law enforcement to do exactly that, to speak to her

14  parents.

15       As far as we can tell from the record, her sister was

16  never interviewed to corroborate her statement despite, again,

17  BB's explicit invitation that they do so.

18       They never interviewed John Hanas, who was the leader of

19  the cult, and who, if you read BB's statement, it seems clear

20  that BB is likely transferring onto Mr. Kollmar conduct that

21  was committed by Mr. Hanas who has now died and has been dead

22  since 2012.

23       They never made any effort to track down the other group

24  members, even though, based on BB's statement, she provided and

25  offered to provide the names and information so they could

contact those people, and even though, based on BB's statement, a number of those people were present in the house and present during the time that these alleged assaults took place.

They never also made any effort to corroborate BB's implausible allegation that she and Mr. Kollmar made more than 20 trips throughout the United States during the very brief period of time that she actually was involved with Mr. Kollmar, which was from approximately 1975 or '6 until 1979.

They never interviewed the lawyer who they allegedly consulted and who came back and said that the allegations, the case, was weak.

And more importantly, from my perspective, they never made any effort to track down Mr. Kollmar, who was a United States citizen. He is not a fugitive. He has been living openly and very publicly for his entire life and was not hard to find at all.

BB herself admits that she saw him on the Internet and saw him on social media and yet she never made any effort to go to law enforcement to make her allegations or to direct law enforcement to Mr. Kollmar.

If we go to the statement itself, it's very clear to me that the statement itself, if you read it and if you read that statement in the context in which it occurred and the context in which the acts occurred, it demonstrates fabrication. And that's given the inconsistencies and the lack of specificity on

1   a number of her allegations.

2        She herself admits that the allegations of sexual assault

3   are the product of coaching and suggestion by John Hanas, the

4   leader of the cult, who she admits was brainwashing her and her

5   family members.

6        She herself expressed the antipathy that Mr. Hanas had

7   towards Mr. Kollmar and his motivations to plant or to suggest

8   in BB's mind that Mr. Kollmar had committed some act of a

9   sexual assault.

10       She admits that her life was completely controlled and

11  manipulated not by Mr. Kollmar but by Mr. Hanas, and that's at

12  page 49 of the transcript of her testimony.  And when I refer

13  to page numbers, I'm referring to the original page numbers,

14  not the ECF page numbers.

15       Despite all that, again, she never made any allegation to

16  law enforcement for almost 20 years, and that was not until --

17  sometime until her mid 20s, almost 10 years after the alleged

18  abuse, and that was prompted again by -- suggested by John

19  Hanas who called her parents because he understood that

20  Mr. Kollmar, who had left the cult, was back in Toronto and

21  supposedly threatening Mr. Hanas and that they, the family, and

22  BB in particular, had to make these allegations of sexual

23  assault against Mr. Kollmar in order to protect Mr. Hanas.

24       Mr. Hanas told the parents that they needed to inquire

25  about the sexual abuse charges against Mr. Kollmar that he

1   suggested.  BB herself admits that she never told anyone,

2   including Hanas, about any alleged sexual abuse by Mr. Kollmar

3   until it was suggested to her by Mr. Hanas long after the fact.

4       And then Hanas told BB what to allege and what to say, and

5   she admits that people had to abide by what John Hanas was

6   saying.

7       And, again, if you look at the statement, on various pages

8   it's very indicative of transference by BB of conduct that may

9   have been committed by Mr. Hanas onto Mr. Kollmar.  If you look

10  at the transcript on page 52, she says that it was Mr. Hanas to

11  whom she was told she would have to marry and would have to

12  lose her virginity.  At pages 53 and 54, she claims that her

13  father called Hanas and not Kollmar about the threatened -- the

14  alleged abuse, and that she was again supposed to marry Hanas

15  and not Kollmar.

16      When she came forward and made these statements, she

17  claimed at the time in 1997 that she was making the statements

18  now because she was concerned that Mr. Kollmar was setting up

19  another group and doing this -- and would be doing this to

20  another young girl and yet she waited six years after she

21  learned of Mr. Kollmar supposedly setting up another group and

22  again had never come forward and made these allegations to

23  anyone prior to that time.

24      As far as we know, she never sought any psychological

25  help, and her descriptions of the sexual assault allegations

1   and the rape allegations are not specific as to time and place,

2   and they are, as Mr. Balogh points out repeatedly in the brief,

3   implausible, and in some cases, just impossible.  She gets her

4   dates wrong, she gets her ages wrong, and the locations, again,

5   are improbable.

6       All of this under the circumstances and when you really

7   apply a probable cause standard and act as something other than

8   a rubber stamp to the evidence that the Government has

9   submitted suggests that BB's statements alone cannot support a

10  finding of probable cause here.  It may be that the Canadians

11  could corroborate some of this.  It may be that at some point

12  they could present sufficient evidence.  But the Court has to

13  decide on the basis of the evidence that has been submitted so

14  far, and it alone does not support probable cause.

15      If these statements uncorroborated alone are sufficient to

16  support an allegation as serious as rape and sexual assault 40

17  years -- almost 40 years after the fact, if these are

18  sufficient to support Mr. Kollmar's arrest and now detention

19  under house arrest essentially for three years, then I fear

20  actually for all of us because the probable cause standard

21  becomes so weakened that it essentially means nothing other

22  than accepting what the Government says.

23      And I would direct the Court to a couple of cases on this

24  issue more specifically on whether or not the statement of a

25  sexual assault victim alone can constitute probable cause under

1    either California law or federal law, and one of them is a

2    state case, *Gillan vs. City of San Marino*, and that's at

3    147 Cal.App.4th at 1033, in which the court found that there

4    was no probable cause where the information provided by the

5    alleged sexual assault victim was not sufficiently consistent,

6    specific, or reliable.

7        And the other is a Sixth Circuit case making a similar

8    finding -- these are not extradition cases; these are regular

9    sexual assault cases -- where the Sixth Circuit made a similar

10   finding that the arrest was without probable cause because the

11   allegations were uncorroborated, not reasonably trustworthy,

12   and there was reason for the arresting officer to believe that

13   the statements were false and did not -- and/or did not

14   accurately describe an accurate event.

15       Based on all of that, I think if you just look at BB's --

16       **THE COURT:**  Could you give me the citation to the

17   Sixth Circuit case, please.

18       **MS. BOERSCH:**  The Sixth Circuit is -- sorry about

19   that -- 779 F.3d 421.

20       **THE COURT:**  What are the names of the parties in that

21   case?

22       **MS. BOERSCH:**  That's *Wesley vs. Campbell*, 2015 case.

23       **THE COURT:**  Thank you.

24       **MS. BOERSCH:**  So I think if you look at what we have

25   here, which is BB's statements alone, and if you look and apply

1    the probable cause standard as it should be applied, in my

2    view, her statement alone is not sufficient to establish

3    probable cause.

4         The Government -- Mr. Kollmar, as the Court knows, has

5    submitted a significant amount of evidence to explain BB's

6    statement.  The Government claims that the evidence that

7    Mr. Kollmar has submitted is contradictory rather than

8    explanatory, but it's not.  It was not submitted in order to

9    contradict what BB said but in order to show the unreliability

10   and implausibility of her statement, which is absolutely

11   something that this Court has to consider when determining

12   whether there is probable cause.

13        And that evidence is something that the Court can consider

14   under *Santos vs. Thomas*, which is a Ninth Circuit case, 830

15   F.3d 987, because the evidence goes to the reliability of BB's

16   statements and it's not contradictory.

17        Kollmar's evidence -- and I won't go through all of it;

18   there's a lot, and I don't want to repeat what's in the brief,

19   but, again, I think Mr. Balogh did a pretty good job of

20   pointing them out -- all of that evidence explains the context

21   in which these events allegedly occurred which are critically

22   important given the cult environment, and they explain the

23   implausibility and inconsistencies of what BB says and why they

24   should not be believed.

25        Even if her statements are accepted, we do not believe

that the Government has established forcible rape, the second

charge.  That charge under California law -- in order to find

dual criminality, the sexual assault has to be made under

duress, which has to be under threat of some form of violence,

and BB's statement, when she describes the alleged rape, does

not include any allegations of threat or violence at that time.

What she refers to are past allegations allegedly of verbal

abuse by Mr. Kollmar, which, again, if you read them, are

wholly implausible given that if you carefully read her

statement, she was only with Mr. Kollmar on very few occasions

during a very short period of time and yet she makes

allegations that he was constantly threatening her, constantly

abusing her, all of this occurring in a cult environment with

several hundred other people and no corroboration whatsoever of

that.

       The second issue I wanted to address was the dual

criminality issue on Count One which is the indecent assault

charge, and I think it's pretty clear that the Government can't

establish dual criminality on that charge because the statute

the magistrate relied on is a misdemeanor, it's not a felony,

and it can't support dual criminality under the treaty, and the

Ninth Circuit has in fact held that --

       **THE COURT:**  Well, I have in mind the sentence in an

order where -- I'm aware she referred to the statute you're

talking about, but the sentence in which she makes a finding of

1  dual criminality of -- no.  I take it back.  I'm not

2  actually -- I was about to quote from memory, which is usually

3  a mistake.  I'm going to pull up that sentence while you

4  continue.

5      **MS. BOERSCH:**  I probably couldn't remember it either.

6      I know the Government makes suggestions that there is some

7  other statutes that might apply and that could support the dual

8  criminality, but those were not the statutes that the

9  magistrate relied on, and this Court is reviewing the

10  magistrate's decision.

11      If she relied on a separate statute, yes, if the Court

12  finds that --

13      **THE COURT:**  Okay.  So this is actually what I thought

14  the order said, and now I have the language in front of me:

15      "There is probable cause to believe that defendant

16  committed rape and indecent assault against BB because his

17  penetration of her on Mother's Day 1977 was without genuine

18  consent.  Such circumstances would also establish duress under

19  California Penal Code Section 261."

20      That's it.

21      **MS. BOERSCH:**  Yeah.  That's it.  So that to me is a

22  finding of probable cause to believe that Mr. Kollmar committed

23  a rape, which, again, I don't think her statement establishes

24  that, and to the extent she's relying on 243.4, that's a

25  misdemeanor, so that won't support -- there is no dual

1    criminality for that particular offense.

2    The other statutes that the Government relies on, one of

3    them was a statutory rape charge which the Canadians have now

4    disavowed, even though they had Mr. Kollmar arrested on that

5    charge, but they've now disavowed it, and then the Government

6    relies on several federal statutes which cannot support dual

7    criminality.  They were not relied on, I don't believe, by the

8    magistrate, but, in any event --

9    **THE COURT:**  I think -- I've now taken the chance to

10   just search, using software, for the text string 243, and I've

11   picked up every reference in the magistrate judge's order.  I

12   do not believe that she based a finding of dual criminality on

13   that statute.

14   **MS. BOERSCH:**  That was the statute relied on by the

15   Government below.  I'm happy to go back and look at the

16   magistrate's order --

17   **THE COURT:**  No.  That's fine.  I think I'm very

18   unlikely to find that the magistrate judge adequately found --

19   I'm very unlikely to find that either Mother's Day 1977 is an

20   adequate basis to establish dual criminality as to the indecent

21   sexual assault charge or to find that she considered the other

22   conduct that is alleged as a basis of that charge and found

23   criminality because I don't believe that discussion appears

24   anywhere in her order.

25   **MS. BOERSCH:**  If I could reserve -- I don't know how

1  much time of I've consumed at this point, but I do want to save

2  some time for rebuttal, and I want to save some time to look at

3  the magistrate's order on this question.

4       **THE COURT:**  That's fine.

5       Ms. Lee, could you just send me a chat about how much time

6  Ms. Boersch has left?

7       **THE CLERK:**  Yes, sir.

8       **MS. BOERSCH:**  Just briefly on -- well, if you're not

9  going to consider the federal statutes.  The Government relies

10  on the federal statutes --

11       **THE COURT:**  Oh, no.  I might.  I think the problem is

12  they all have 2s and 4s and 3s.  I was referring to the

13  California Penal Code, which as you yourself said is a

14  misdemeanor.

15       **MS. BOERSCH:**  Right.

16       **THE COURT:**  And that -- I'm saying that was not --

17  that was not a basis for the magistrate's judge's order.

18       You have a little more than seven minutes left.

19       **MS. BOERSCH:**  I would like to reserve -- well, let me

20  make a couple more comments, and then I will reserve.

21       First of all, Mr. Balogh raised a couple of constitutional

22  issues that the Government objects to and says the Constitution

23  doesn't apply, and I would like to reserve those, you know, for

24  purposes of appeal, but also just to point out that

25  Mr. Kollmar's arrest here was made pursuant to a U.S. statute,

1    not just an extradition treaty, and that's obviously 18 U.S.C.

2    Section 3184, and clearly he's a U.S. citizen, and I think due

3    process has to apply if someone is arrested under a U.S.

4    statute, which is what happened here.

5         The last thing I think I want to say is -- and I think

6    this is important when the Court is considering the question of

7    probable cause and the totality of circumstances.  In addition

8    to a couple of factors that go into that analysis, such as the

9    lapse of time and such as the nature of the circumstances in

10   which these statements were made and the conduct occurred,

11   Mr. Kollmar has not been in hiding.  He is not a fugitive.  He

12   has now been held under house arrest for three years under very

13   restrictive conditions, for three years in the United States

14   leaving his wife behind in the Netherlands.  During that time,

15   his parents have died.  All of this has happened to him even

16   though there is no probable cause to believe he committed these

17   offenses, I don't believe.  I don't believe the record supports

18   it.  And he has absolutely no criminal history.  And there has

19   never been any other allegation that he has done anything of

20   this sort to anyone else.  And that, too, I think is a factor

21   that has to be considered by the Court.

22        And then I would like to reserve some time for rebuttal.

23             **THE COURT:**  Thank you, Ms. Boersch.

24        Ms. Bessette, will you or Ms. Monaco be arguing this

25   afternoon?

1          **MS. BESSETTE:**  Your Honor, I will be arguing.  If I

2     make a misstatement or I don't know the answer to something,

3     she's going to supply it, if that's okay with the Court.

4          **THE COURT:**  Very good.  Kind of a Christian and Cyrano

5     thing, if you know that play.

6          **MS. BESSETTE:**  I don't, but I think that's probably

7     right.

8          Your Honor, I wanted to start with what the Court had a

9     question about.  In deciding whether or not the Court can find

10    dual criminality here, it's completely appropriate for the

11    Court which is reviewing the issues of law *de novo* to find a

12    statute that's before the Court that -- because this is a

13    jurisdictional issue, is there dual criminality or not.  If the

14    magistrate made a mistake by not citing to a specific statute,

15    the Court here can and --

16         **THE COURT:**  Well, it's not just whether she cited to

17    the right statute.  The parties identified what I would call

18    two different buckets of conduct, and the magistrate judge also

19    identified two different buckets of conduct.  And she actually

20    goes through some of what I would call the believability

21    challenges that Mr. Kollmar makes to this bucket of conduct,

22    but then when it comes right to the end of the order when there

23    should have been a finding by the magistrate judge as to

24    whether that bucket would support a finding of dual criminality

25    as to the indecent sexual assault charge, she just doesn't say

1   anything.  And that's where we are.

2        MS. BESSETTE:  I was taking it in two pieces, and

3   first, which I think is the dual criminality issue, this Court

4   is reviewing it under a *de novo* review and this Court can

5   identify a statute that makes this a dual -- and I'm talking

6   now about indecent assault -- that makes this a --

7        THE COURT:  Yes.

8        MS. BESSETTE:  -- dual criminality and that suffices.

9        As far as the facts that the Court is discussing, whether

10  or not there was sufficient description by the magistrate of

11  the two different buckets of facts we have here under the rape

12  charge and under the indecent assault charge, the Court reviews

13  the magistrate's factual findings, and here, as the Court

14  knows, we have substantial findings, and contrary to what

15  Ms. Boersch is stating, I believe the victim has laid out very

16  detailed facts in both a written statement and an oral

17  statement.  And I'm not sure if this Court had an opportunity

18  to review the video, but the magistrate judge found that that

19  video showed the witness as being very credible based on

20  demeanor and based on facts.

21       And I agree with the Court, in those two separate buckets,

22  we have one with penetration that the magistrate pointed to.

23  Mr. Kollmar penetrated the victim with his penis, and that is

24  the rape charge.

25       The other conduct, which goes throughout the time period

1   when the victim is 12 through 16 and includes fondling her

2   breasts, digitally penetrating.  Those facts the Government has

3   detailed in its brief show probable cause or reason to believe

4   Mr. Kollmar did indecently assault the victim here.

5       And, again, contrary to what Ms. Boersch is stating, the

6   facts are very specific.  And while the years were blurry to

7   the victim, the victim stated again and again in her statement

8   that she was very clear on when things happened to her by age.

9   And by age, she recalls specifically when the sexual conduct

10  started at 13 and what happened over the course of five years

11  when she was alone with someone who was over 10 years older

12  than her and a minister and someone who was supposedly putting

13  her in contact with God.

14      Now, during those time periods, the specific conduct laid

15  out was preceded by two hours of behavior which was

16  humiliating, degrading, and threatening to the victim, and that

17  is what the Canadians rely on for duress.  And under our

18  statutes here in the United States, those behaviors by

19  Mr. Kollmar to put the victim in a state where she, in her own

20  words, would lie unbearably straight and just take what he was

21  doing to her show that this was not willing, consensual

22  conduct -- this was something that was forced upon her.

23      I also think it's important to correct what Ms. Boersch

24  stated and the judge partially corrected it when Ms. Boersch

25  said nothing happened for 40 years.  Well, the victim came

forward 20 years later, which the magistrate judge pointed out
is not unusual for victims of sexual abuse to not come forward
and -- particularly with the underlying facts here, when the
victim was in a cult scenario and threatened and afraid of her
abuser.

As soon as the victim came forward and made a statement to
the Canadian authorities, within nine months they acted upon
that and had an arrest warrant.  Unfortunately the name
"Kollmar" was misspelled, and they didn't find him, but as time
went on and the Internet became more sophisticated, a search
later found Mr. Kollmar, and the victim provided information to
the Canadians, and they found him and they corrected their
arrest warrants and proceeded by contacting the United States
once they found he was flying in here, and we acted to support
them immediately.

So under the Court's specific questions, can this Court
address the *de novo* review and correct the statute for dual
criminality, Your Honor, yes, the Government believes this
Court can do that.

And as far as the wealth of details by the victim here,
both orally and in writing, which provide years of abuse that
suffice under indecent assault, the Government believes the
Court can do one of two things here.  The Government believes
that this Court can correct the magistrate's lacking
identification of the specific indecent assault, and here the

Government has filled its brief with the specific indecent assault done by the defendant:  Coercing her for him to masturbate her, coercing her to masturbate him.  The Government goes on and on, Your Honor, over the indecent assaults that took place here.  And the Court can either correct it himself or could send it back to the magistrate to have the magistrate correct it.  I do not believe that this is in any way a scenario where there is a lack of PC.

The judge in the underlying court correctly stated that she was not going to accept evidence that contradicted the victim here.  That was something left to Canadian authorities at a trial.  And the Government has cited both the case of *Bruce* and *Young*, one, the *Bruce* case being a Ninth Circuit case where one witness suffices.  In beyond a reasonable doubt when there is a conviction in our courts, one witness suffices.  At times that's all there is.

And here the evidence shows that Mr. Kollmar did these crimes when he was alone with her.  And of course someone would do that, Your Honor, because they don't want to have other witnesses to what their behavior is.

So as far as Ms. Boersch stating that there may be some prejudice to his case here, the corroboration appears -- that there wouldn't be very much corroboration.  People did see the two individuals, the victim and Mr. Kollmar together, but he waited until he had her alone in his van or alone in the home

1   in Buffalo, New York, or, you know, away in the U.S. when it

2   was just the two of them traveling around to commit the abuse,

3   and that makes sense.  People generally don't abuse people in

4   front of other people because it's not acceptable behavior and

5   they don't want be prosecuted for what they're doing.

6        Now, as far as the lapse in time, the Government's briefed

7   that.  I'm not certain if the Court has any questions, but the

8   statute here between Canada and the United States is very clear

9   about what Article IV is referring to.  And as the

10  United States has stated cases, this is not for us to now add

11  in additional requirements in a statute that has been reached

12  between the United States and Canada.  That's been done, and

13  it's specific.  It's the Canadian statute of limitation that

14  applies, and there is no statute of limitation for these

15  indictable offenses, and that's something that Canadian

16  authorities have provided to us and we've provided to the

17  Court.

18       Your Honor, I'm just looking at my notes to see if there

19  is something that I've missed.

20       Just going back for a moment where Ms. Boersch stated that

21  the victim must be under a threat of violence and the victim

22  here did not say if she was, what -- what we have, as well as

23  what the Canadian prosecutors have identified, is a course of

24  conduct, a pattern of conduct, in which Mr. Kollmar, who was 10

25  years older than the victim, more than 10 years older,

1    beginning when she was 12 and 13 years old, created an

2    atmosphere where he controlled if she could go to the bathroom,

3    when she could eat, if she could sleep, how long she could

4    sleep, what she could wear, if she could brush her teeth or her

5    hair, what clothes she had to wear, and then he held his

6    position with God as a minister and as her leader, her

7    spiritual leader, over her and screamed and yelled at her and

8    also threatened to hit her with his hand and squeezed her wrist

9    to the point of pain.

10        These things add up, along with her behavior, when he was

11   molesting her, which was being rigid, not wanting to touch his

12   penis, trying not to touch it, all of those things that create

13   an atmosphere where anyone doing that to the victim would know

14   she did not want this to happen to her and she just laid there

15   and took it.  And I believe the fact that he screamed at her

16   for two hours before he did this behavior shows he knew she

17   didn't want this, and the only way he was going to get her to

18   allow him to do it was by screaming and yelling at her.

19        And similar to cases we have in the U.S. where someone

20   grooms someone to accept certain behaviors, he started out

21   slowly.  He took her out of her country, brought her to

22   Buffalo, New York, where he began his behaviors with her, and

23   then over time, they graduated.  And he used aggressive anger

24   to keep her under his control.  That suffices under both the

25   statutes in Canada for indecent assault and for rape, duress,

1    and for those that the Government has cited that are the

2    analogous situations -- statutes here in the United States.

3            **THE COURT:**  I assume you're meaning to refer to the

4    means of force, violence, duress, menace, etc., element of

5    California Penal Code Section 261.

6            **MS. BESSETTE:**  Yes, Your Honor.

7            **THE COURT:**  Yeah.

8            **MS. BESSETTE:**  I don't know if my colleague had

9    something to add to these facts.

10           **MS. MONACO:**  Just a couple of things that I'd like to

11   touch on quickly.

12       First with respect to Your Honor's question about remand,

13   one thing that I wanted to point out was that in the *Santos*

14   decision, the issue there was related to probable cause which

15   is an issue upon which the district court should provide some

16   level of deference to the magistrate judge's factual findings,

17   and so when the -- when the Court on habeas appeal determined

18   that there may have been some issues about the competency of

19   the evidence and the factual findings upon which the magistrate

20   judge's decision was based, the Court found that remand was

21   necessary.

22       Here, as my colleague pointed out, the missing information

23   in the magistrate judge's decision relates to the statute for

24   dual criminality which is an issue that this Court can review

25   *de novo*.  And because we have, as Your Honor noted, numerous

1  factual findings from the magistrate judge on the conduct that

2  underlied both the rape and sexual assault charges, it's the

3  Government's position that it's not necessary to remand here

4  when we have the factual findings --

5         THE COURT:  Well, I think there has been a little bit

6  of conflation.  So Ms. Bessette asked me to -- I think the

7  phrase was something like *correct the citation of the*

8  *magistrate judge*.  I don't think that's necessarily an accurate

9  characterization of what the challenge to me as a reviewing

10  court is.

11         So, for example, on the issue of probable cause, my

12  recollection of the magistrate judge's order is that there's a

13  lengthy recitation of the various challenges that Mr. Kollmar

14  has made to various aspects of BB's statement.  Mr. Kollmar

15  says, "The Buffalo incident can't be right for this reason."

16  I'm not persuaded by that.  He doesn't like the trip to South

17  Carolina because there were telephones -- there must have been

18  telephones.  I don't like that either.  But there's not a

19  place, to my recollection, that says *I find there is probable*

20  *cause to sustain a charge of indecent sexual assault*.  I keep

21  pausing because I'm not sure I'm using the right phrase, but

22  you all know what I mean.  *To sustain a charge of indecent*

23  *sexual assault*.  There may be, and I'll look again.  And if

24  there is, then perhaps I would have the latitude to do as

25  you're suggesting and that is myself then undertake to

1  determine whether as a matter of law the facts as to which

2  there has been a finding of probable cause satisfy the dual

3  criminality requirement.  Maybe I could do that.

4      But if there's any lack of clarity about that, why

5  wouldn't I remand it to the magistrate judge to make these

6  factual findings in the first instance?  And let me be very

7  clear, I don't normally start hearings with an apology.  I am

8  very, very mindful of how long this case has been pending.  I

9  know that Mr. Kollmar's wife has written a letter to the Court.

10 And nobody -- well, that would be an overstatement.  I join the

11 parties in wanting this to come to some kind of resolution.  So

12 I wouldn't -- remand is not my first choice, but if that's the

13 way I go -- but I would -- I also don't want to do something

14 that creates more potential for error or review in the name of

15 speed and then have the result of actually slowing things down.

16     **MS. BESSETTE:**  Well, Your Honor, if I may at this

17 point -- and then I'm sorry to cut into my colleague --

18     **THE COURT:**  I'll let you finish, but I think when

19 you're done, we're going to go back to Ms. Monaco, and then

20 we're going to be done.

21     **MS. BESSETTE:**  Okay, Your Honor.  I would just point

22 out to the Court --

23     **THE COURT:**  Ms. Boersch, I don't mean "done" done.  I

24 don't like the Mutt and Jeff thing the Government is doing.

25 That's all I mean.

1     Ms. Bessette, go ahead.

2          **MS. BESSETTE:**  Well, then, Your Honor, I apologize.  I

3     suppose my point is just that the magistrate judge laid out the

4     facts in a very detailed manner, and I think it's appropriate

5     for the Court to do either of the two things, either adopt the

6     facts as the magistrate laid out because her set of facts are

7     entitled to deference and to state that the facts -- for

8     example, on page 3 of her order, that the -- you know,

9     "Mr. Kollmar made BB practice each technique repeatedly, which

10    included massaging around his genitals.  After he lay on top of

11    BB, he fondled her breasts and genitals and put his fingers in

12    her vagina."  Those two sentences alone establish indecent

13    assault as charged by Canada and the statutes the United States

14    has charged as analogous for dual criminality purposes.

15        And I think it's entirely appropriate for this Court to

16    take those facts and to make that finding.  And that's my

17    point, Your Honor.

18        And back to my colleague, sorry.

19          **THE COURT:**  Okay.  That's very responsive because

20    that's exactly what I was talking about, is have those facts

21    been stated in a way that constitute the factual finding

22    necessary for the Court to make this determination.  It doesn't

23    mean I'll do what you're asking, but it means you've supported

24    your argument.

25        So, Ms. Monaco.

1    **MS. MONACO:**  And that was going to be what I was going

2    to say as well, that the magistrate judge's conclusion appears

3    to be that she found probable cause on both charges from Canada

4    and that she lays out the facts and doesn't find any questions

5    or credibility issues or incompetency issues with respect to

6    all of the conduct that the victim alleged.

7         And then I think -- I had just one more point I wanted to

8    make about dual criminality if the Court does decide to get to

9    the statutes upon which dual criminality could be found.

10        The Government cited both Section 289 of the California

11   Penal Code, which does rely on the same duress element that

12   is -- that the magistrate judge found with the rape charge on

13   California Penal Code 261.  We also cited to a number of other

14   statutes, both federal and state, where that duress element is

15   not required and is based purely on the victim's and

16   Mr. Kollmar's ages.  And under either theory, the Court could

17   find dual criminality.

18        **THE COURT:**  And I don't -- again, I should have put

19   all these statutes in front of me.  Is California Penal Code

20   Section 289 -- is the penetration element of 289 accomplished

21   if the penetration is digital?

22        **MS. MONACO:**  Yes.

23        **THE COURT:**  Okay.  All right.

24        Ms. Boersch, I think it's rebuttal.

25        **MS. BESSETTE:**  Your Honor, if I may give you the cite

1   if this would assist.  The 289(k)(1) one includes fingers, and

2   that's 289(k)(2).

3           **THE COURT:**  Thank you.

4       Ms. Boersch.

5           **MS. BOERSCH:**  Yeah.  So 289, as the Court pointed

6   out -- 289 like 261 relies on -- and says, you know, that "the

7   person commits an act of sexual penetration when the act is

8   accomplished against the victim's will by means of force,

9   violence, duress, menace, or fear of immediate and unlawful

10  bodily injury."  And "duress" is described in a way that

11  similarly requires some sort of threat of immediate bodily

12  injury, which simply does not exist here, even when -- even if

13  you accept what Ms. Bessette said.

14      And I do want to point out, Ms. Bessette is -- has

15  characterized the allegations as if they were facts, and I just

16  want to remind the Court and remind the Government these are

17  allegations.  They are allegations made by a woman 20 years

18  after the fact.  They are not facts in and of themself.

19      I think on the question the Court asked -- and I have not

20  read *Santos* carefully on that particular point, but it seems to

21  me -- and I think the Court is correct, that the magistrate's

22  order actually did not find any dual criminality on the

23  indecent assault charge one way or the other.  It didn't cite

24  to anything.

25          **THE COURT:**  I take that as a given.  You're going to

1    win that point.  So the only question is what to do -- what

2    findings did she make that might not need to be re-made or, you

3    know -- or -- and given that I'm about -- now I can say it

4    because we're almost done with the argument.  I'm going to find

5    what you just said.  What do I do about it?  So that's what I'm

6    trying to figure out.

7         As far as *Santos* goes, I have to say, I have so much

8    respect for Jay Bybee.  I have had the privilege of sitting

9    with him by designation on the Ninth Circuit.  I don't think

10   there is a better technician on the Ninth Circuit.  That's not

11   by any means his only talent, but he does have that talent, and

12   he says "We're not going to make -- "The panel is not going to

13   make this finding.  We're going to send it back to the district

14   court."  And so that's why I challenged the Government the way

15   I did.

16        Sorry.  I got a little off topic there.

17        **MS. BOERSCH:**  That's all right.  I think you're

18   entitled, given your position.

19        My view, I suppose, would be -- and, you know, I'm happy

20   to file something supplemental.  My view would be that the

21   magistrate had every opportunity to make a finding of dual

22   criminality on the indecent assault charge.  The Government

23   presented whatever evidence and legal argument they wanted to

24   make.  And she didn't do it.

25        And so I think the only thing the Court can do at this

1   point is if the Court were to certify extraditability or affirm

2   the certificate of extraditability on the rape charge, which,

3   again, I don't think the Court should, but that would be all

4   that could be done.  I don't think the Court should remand it

5   for the Government to have a second bite at the apple on that.

6   They've had that chance --

7       **THE COURT:**  I've been waiting for you to make that

8   argument.  You're one of our best advocates, and you would have

9   disappointed me if you hadn't made that argument.

10      I think it's foreclosed by *Santos*.  Right at the end of

11  the opinion, Judge Bybee says basically, "We're called to do a

12  yea or nay on extraditability.  I'm not going to make that

13  finding yet," and he explains why he is remanding, you know,

14  etc.  So --

15      **MS. BOERSCH:**  Yeah.  And I'm looking at the language.

16  I have to say, I'm not sure -- I'm not sure I agree that that's

17  exactly what he said, but I'm happy to supplement that with a

18  brief.

19      **THE COURT:**  Ms. Boersch, you have about two minutes

20  left.

21      **MS. BOERSCH:**  Okay.  A couple other things.

22      The Government on the lapse of time thing -- and the

23  magistrate relied on this *People vs. McAlpin* case to say that,

24  you know, lapse of time doesn't matter.  You know, in these

25  sexual assault cases, that happens.

1     *McAlpin* was a one-year delay by the mother of the assault

2 victim.  We have here a 20-year -- almost 20-year delay by the

3 actual victim of the supposed assault.  So it's just not

4 applicable, and, again, the lapse of time goes to the probable

5 cause analysis as much as anything else.

6     And I guess the other -- oh, the other thing I wanted to

7 address was, again, Ms. Bessette's -- the -- their attempt to

8 find dual criminality for these charges based on this pattern

9 of alleged conduct, which is wholly uncorroborated and

10 implausible on its face but which consists primarily, if not

11 entirely, of alleged verbal abuse or claiming to be God or

12 whatever.  That is not sufficient under any of the California

13 statutes that the Government relies on to show a threat of

14 immediate physical harm or anything else.

15     So I think, again, just to sum up the allegations made by

16 BB are not sufficient in and of themselves to establish

17 probable cause.  There has been no corroboration.  They are

18 implausible and inconsistent internally, and the Court should

19 find that the certificate of extraditability should be vacated

20 and one should be entered that says he is not extraditable

21 because of the lack of probable cause.

22     **THE COURT:**  Thank you, Ms. Boersch.

23     Very well presented on both sides.  The Court will now

24 take this under submission.  As I told you, I will get an order

25 out shortly, and by "shortly," I mean not more than within the

1   next couple of weeks.  Thank you.

2               (Proceedings adjourned at 2:56 p.m.)

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4          I certify that the foregoing is a correct transcript

5   from the record of proceedings in the above-entitled matter.

6

7   DATE:    Monday, April 18, 2022

8

9   *Pamela Batalo Hebel*

10  _____
    Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11  U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25