STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

KERRY A. MONACO (NYBN 4712360)
Trial Attorney, U.S. Department of Justice

MAUREEN C. BESSETTE (CABN 165775)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    Fax: (510) 637-3724
    Maureen.Bessette@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD KOLLMAR,<br>    Petitioner,<br><br>v.<br><br>UNITED STATES PRETRIAL SERVICES,<br>NORTHERN DISTRICT OF CALIFORNIA,<br>    Respondent. | CASE NO. 4:20-CV-01388-JST<br><br>UNITED STATES'S OPPOSITION TO KOLLMAR'S EMERGENCY MOTION FOR STAY PENDING APPEAL AND VACATUR OF BRIEFING SCHEDULE AND FOR ORDER ALLOWING DONALD KOLLMAR TO TRAVEL DIRECTLY TO CANADA IMMEDIATELY TO APPEAR BEFORE CANADIAN AUTHORITIES |

UNITED STATES OPPOSITION TO MOTION FOR STAY AND MODIFICATION OF BAIL CONDITIONS

Petitioner Donald Kollmar ("Kollmar") has moved this Court for two opposing forms of relief: (1) a stay of proceedings in this Court so that he may pursue an appeal in the U.S. Court of Appeals for the Ninth Circuit; and (2) an order permitting him to "immediately" and "directly" return to Canada under terms he proposes. Dkt. 35. The Court should deny Kollmar's first request as unfounded because his appeal does not challenge a final order under 28 U.S.C. §§ 1291, 2253 and therefore has not divested this Court of jurisdiction. The Court should also deny Kollmar's second request because both legal and practical impediments prevent the Court from granting it. Accordingly, for the reasons set forth herein, the United States respectfully requests that the Court deny Kollmar's motion for a stay of proceedings and change of bail conditions.

## PROCEDURAL BACKGROUND

On April 27, 2022, this Court issued an order denying in part and remanding in part Kollmar's petition for a writ of habeas corpus, which challenged U.S. Magistrate Judge Kandis A. Westmore's (the "extradition court") decision that Kollmar was extraditable to Canada on two charges—rape and indecent assault—and certifying the same to the Secretary of State. Dkt. 32. The Court upheld the extradition court's probable-cause finding on the rape charge and accordingly denied habeas relief on that charge.[1] *Id.* at 10-17, 21. However, the Court remanded the matter to the extradition court for further findings regarding dual criminality on the indecent assault charge. Specifically, the Court determined that remand was necessary because the extradition court's certification decision did not demonstrate that the extradition court "properly 'culled' the rape and indecent assault charges before finding dual criminality satisfied," and the extradition court "appear[ed] to conflate the two charges" by failing to identify the separate conduct underlying each charge. *Id.* at 20. This Court therefore "remand[ed] th[e] case to the magistrate court to determine whether the conduct underlying the indecent assault charge would be criminal in the United States." *Id*. at 20-21 (relying on *Santos v. Thomas*, 830 F.3d 987, 1008-09 (9th Cir. 2016) and *Caplan v. Vokes*, 649 F.2d 1336, 1345 n.18 (9th Cir. 1981)). The

---

[1] The Court declined to address dual criminality with respect to the rape charge or probable cause with respect to the indecent assault charge because Kollmar did not raise those issues in his habeas petition. *Id.* at 18 n.12.

1

Court concluded by stating, "If no such finding is made within 90 days of the date of this order, Kollmar may be extradited to Canada on the rape charge alone."[2] *Id*. at 21.

After this Court's remand order, the extradition court issued an order on May 6, 2022, requiring the parties to file supplemental briefing on the issue of dual criminality for Canada's indecent assault charge. EX DE 91.[3] Both parties have filed their briefs, and a hearing is scheduled for June 28, 2022. EX DE 91, 92, 94.

Notwithstanding the Court's remand order and the resulting ongoing extradition proceedings before the extradition court, Kollmar filed a notice of appeal of the district court's habeas decision on May 26, 2022. Dkt. 33. On June 7, 2022, Kollmar filed the instant motion to stay proceedings before this Court based, in part, on the filing of his notice of appeal.[4] Dkt. 35. He simultaneously filed a motion with the extradition court to suspend the briefing and hearing schedule pending before that court. EX DE 93. That motion has not yet been adjudicated.

On June 14, 2022, the United States moved to dismiss for lack of jurisdiction Kollmar's appeal to the U.S. Court of Appeals for the Ninth Circuit on the ground that this Court's April 27, 2022, decision is not a final order subject to appeal under 28 U.S.C. §§ 1291, 2253. *See Kollmar v. United States Pretrial Services*, No. 22-15807, Dkt. 4 (June 14, 2022).[5] That motion remains pending before the Court of Appeals.

---

[2] While not explicitly stated in the Court's decision, the United States presumes that the Court intends to review any finding by the extradition court that dual criminality has been established for Canada's indecent assault charge. The United States further presumes that, pursuant to Federal Rule of Civil Procedure 58(a), the Court intends to issue a final decision and/or judgment when all issues related to Kollmar's extradition have been resolved by the extradition court and this Court.

[3] Record citations to the events in Kollmar's extradition proceedings before the magistrate judge are denoted as "EX DE #" and reference the docket in Northern District of California Case Number 4:19-mj-70677-MAG.

[4] In a footnote in his motion, Kollmar appears to argue that this Court erred in remanding the case to the extradition court pursuant to *Santos*, 830 F.3d at 987, and should have granted his habeas petition with respect to the indecent assault charge instead. Dkt. 35 at 3 n.2. Kollmar admits that this Court already rejected that argument, but to the extent he is seeking reconsideration on that issue, that request should be denied. While the United States maintains its position that remand was unnecessary given the *de novo* review standard applicable to a magistrate judge's determination of dual criminality, the United States does not dispute that *Santos* provided the Court with the legal authority to do so. *See Santos*, 830 F.3d at 1001 (remanding case to district court "with instructions to return this case to the extradition court for further proceedings"); *see also id*. at 1008-09 (explaining reasoning for "returning this case to the extradition court").

[5] For the Court's convenience, a copy of the government's motion is attached to this pleading.

2

# ARGUMENT

## I. A Stay of These Proceedings is Unwarranted Because Kollmar Has Not Appealed a Final Order, and the Court of Appeals Therefore Lacks Jurisdiction

In support of his request for a stay of proceedings, Kollmar relies on the general rule that the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997). However, this rule is not absolute and is subject to numerous exceptions. *E.g.*, *Stein*, 127 F.3d at 1189 (providing examples of exceptions).

One such exception is when a notice of appeal is taken from a non-appealable order. *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc). "Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, *or reference to a non-appealable order*, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Id*. (emphasis added); *see also*, *e.g.*, *Nascimento v. Dummer*, 508 F.3d 905, 908 (9th Cir. 2007) (finding that a district court properly began exercising its jurisdiction over the case because a party's attempt to appeal a non-appealable order never conferred jurisdiction on the court of appeals); *United States v. Garner*, 663 F.2d 834, 838 (9th Cir. 1981) (holding that a trial court properly continued its proceedings after petitioner filed a notice of appeal of a non-appealable order denying motion to dismiss); *Hoffman v. Beer Drivers & Salesmens' Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976) ("The simplest of several answers to this challenge is that an appeal from a non-appealable order does not deprive a district court of jurisdiction.").

As relevant here and noted above, the United States has moved to dismiss for lack of jurisdiction Kollmar's appeal to the Ninth Circuit because it does not seek review of a final order. *Kollmar*, No. 22-15807, Dkt. 4 (June 14, 2022). For the reasons set forth therein, Kollmar's appeal did not divest this Court of jurisdiction, and a stay of proceedings is therefore unwarranted.

## II. An Order Permitting Kollmar to Return Directly to Canada Would Conflict with the Extradition Statute and the United States's Treaty Obligations

Kollmar, who is an international fugitive already certified for extradition to Canada, should not be permitted to dictate the terms of his surrender to foreign authorities. There are both legal and practical reasons for this. Indeed, the government is not aware of any prior case in which a U.S. court has permitted a subject of international extradition proceedings in the United States to return on his own accord, unaccompanied by law enforcement personnel, to the country seeking his or her extradition. For the reasons set forth below, the Court should deny Kollmar's request to do so here.

As a preliminary matter, Kollmar's request to "immediately" return to Canada conflicts with his simultaneous request to stay proceedings in the district court so that he may pursue his appeal. While Kollmar certainly has a right to challenge the certification of extradition through the available legal process, he cannot complain about a delay in surrender that results directly from his use of that legal process. If Kollmar wishes to waive or consent to extradition in an effort to expedite his return to Canada, those options are available to him.[6] Such processes are available to expedite a fugitive's return to resolve the pending criminal charges in the requesting country without increasing his risk of flight. As such, as explained further below, both processes would still require Kollmar to be transported from the United States to Canada while in custody.

In any event, whether extradition is ultimately authorized by waiver, consent, or certification followed by a surrender warrant, the U.S.-Canada Extradition Treaty (the "Treaty") and the extradition statute require Kollmar to go into the custody of the U.S. Marshals Service prior to surrender to Canadian authorities.

*First*, Kollmar's request is contrary to the surrender process provided for in the Treaty. Article 1 of the Treaty provides that "[e]ach Contracting Party agrees *to extradite to the other*, in the

---

[6] If Kollmar were to waive extradition, he would execute an affidavit of waiver, and the extradition court would decide whether to issue an order accepting the waiver. A surrender warrant from the Secretary of State typically is unnecessary in the context of a waiver of extradition. Alternatively, Kollmar could sign an affidavit consenting to a certification of extradition on the criminal charges sought by Canada, and if accepted by the extradition court, the Secretary of State would consider whether to issue a surrender warrant. Following the issuance of the waiver order or surrender warrant, Kollmar would be returned forthwith to Canada.

4

circumstances and subject to the conditions described in this Treaty, persons found in its territory who have been charged with, or convicted of," an extraditable offense as defined by the Treaty. (Emphasis added.) The Supreme Court long ago defined "extradition" as the "surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within territorial jurisdiction of another, which, being competent to try and punish him, demands his surrender." *Terlinden v. Ames*, 184 U.S. 270, 289 (1902). Thus, "[n]either deportation nor surrender other than in response to a demand pursuant to Treaty constitutes extradition." *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404 (9th Cir. 1989). In other words, once a country invokes an extradition treaty to obtain a fugitive's return, if the treaty's requirements are satisfied and the Secretary agrees to the surrender, the Treaty imposes on the United States an obligation to surrender the fugitive to *the foreign authority*. The Treaty does not envision allowing a fugitive to essentially self-surrender to the foreign authority how and when he chooses, as Kollmar proposes.

Moreover, allowing Kollmar to fly without being under the supervision of law enforcement personnel might give the unintended appearance that the United States has no obligation to comply with the requirements of the Treaty. The United States, as a country that makes widespread use of the extradition process in other countries to enforce its own criminal laws, reciprocally must honor its own treaty obligations to ensure continued compliance with its own requests. *See United States v. Leitner*, 784 F.2d 159, 160-61 (2d Cir. 1986) (stating that the government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons); *see also Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) ("[P]roper compliance [with an extradition request pursuant to a treaty] promotes relations between the two countries, and enhances efforts to establish an international rule of law and order.").

The Treaty also contemplates that Kollmar's transportation to Canada will generally be Canada's responsibility, with the details and precautions subject to Canada's discretion.[7] *See* Article 17 of the

---

[7] For example, the Government of Canada should have the opportunity to arrange transport with whatever carrier the Canadian government vets. This allows Canada to ensure that the carrier is prepared to perform this particular type of sensitive government business. Moreover, a commercial airline should have an opportunity to decide whether it is prepared to undertake the risk and responsibility of transporting an international fugitive who knows that he is *en route* to face criminal charges. This is so even when law

Treaty (providing that "[e]xpenses related to the transportation of the person sought to the requesting State shall be paid by the requesting State"). Allowing Kollmar to arrange his own travel plans would thus be contrary to process provided under the Treaty.

*Second*, Kollmar's request conflicts with the federal extradition statutes, which expressly provide for direct surrender of the fugitive to the foreign government. *See* 18 U.S.C. § 3186 ("The Secretary of State may order the person committed under section[] 3184 . . . of this title to be *delivered to any authorized agent of such foreign government*, to be tried for the offense of which charged . . . .") (emphasis added); 18 U.S.C. § 3188 (referring to committal "for rendition *to a foreign government*") (emphasis added). Moreover, the language of 18 U.S.C. § 3184 compels a court to commit a fugitive, to "the proper jail," "there to remain" for the duration of the time following certification "until . . . surrender shall be made" to the requesting country. 18 U.S.C. § 3184. Accordingly, Kollmar's request for a bail order allowing him to avoid detention and leave the United States unaccompanied should be denied because it is contrary to the statute.

In addition to those reasons mentioned above, there are practical reasons why the Court should deny Kollmar's request. There are numerous security considerations U.S. and foreign law enforcement agencies must make when transporting an international fugitive, particularly on a commercial airline where the general public will be present.[8] Transporting a fugitive in custody reduces such security risks. Moreover, there is no guarantee that a scheduled flight will land at its intended destination; mechanical or weather issues could force a plane to make an unscheduled stop in an unexpected location for an indeterminate amount of time. In such a circumstance, there would be no mechanism by which U.S. or foreign law enforcement authorities could prevent an unaccompanied fugitive's flight or otherwise guarantee his return to the intended destination in fulfilment of the agreed upon treaty obligations.

---

enforcement agents are escorting the fugitive in their custody, *a fortiori* in the extraordinary event that a fugitive were to travel unescorted.

[8] For example, for legal and security reasons, U.S. Marshals usually surrender fugitives to foreign law enforcement agents at a place in the United States from which the foreign agents can remove the fugitive directly to the requesting country. If a fugitive is not at a location where direct transportation to the requesting country is possible, then the Marshals may transport the fugitive within the United States to such a location. For security reasons, such domestic transportation requires that the fugitive be in U.S. custody. Alternatively, if the foreign agents transport the fugitive back through a third country, typically they must obtain advance permission for the transit from the third country.

Accordingly, the Court should deny Kollmar's motion for a change of bail conditions to allow his "immediate, direct travel to Canada." If Kollmar wishes to return to Canada as quickly as possible, waiving extradition is the proper and most expeditious way to do so.

## CONCLUSION

For these reasons, the government respectfully requests that the Court deny Kollmar's motion to stay this Court's ongoing proceedings, vacate the briefing and hearing schedule already in place, and modify bail conditions to permit his noncustodial transport to Canada.

Dated: June 14, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

 /s/ Kerry A. Monaco
KERRY A. MONACO
Trial Attorney, U.S. Department of Justice

MAUREEN C. BESSETTE
Assistant United States Attorney
Northern District of California