No. 22-15807

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DONALD KOLLMAR,
     Petitioner-Appellant,

       v.

UNITED STATES PRETRIAL SERVICES,
     Respondent-Appellee.

_____

**UNITED STATES'S MOTION TO DISMISS APPEAL**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 4:20-CV-01388-JST
_____

**STEPHANIE M. HINDS**
  United States Attorney
  Northern District of California

**MATTHEW M. YELOVICH**
  Chief, Appellate Section
  Northern District of California

**MAUREEN C. BESSETTE**
  Assistant United States Attorney
  U.S. Attorney's Office
  1301 Clay Street, Ste. 340S
  Oakland, CA 94612
  (510) 637-3680

**KENNETH A. POLITE, Jr.**
  Assistant Attorney General
  Criminal Division

**BRUCE C. SWARTZ**
  Deputy Assistant Attorney General
  Criminal Division

**REBECCA A. HACISKI**
  Acting Associate Director
**KERRY A. MONACO**
  Trial Attorney
  Office of International Affairs
  1301 New York Avenue NW
  Washington, DC 20530
  (202) 616-4798

**Attorneys for Respondent-Appellee**
**June 14, 2022**

# TABLE OF CONTENTS

**I.** BACKGROUND ............................................................................................................ 2

    A. Legal Background ........................................................................................ 3

    B. Summary of Kollmar's Alleged Criminal Conduct .................................... 4

    C. Procedural History ...................................................................................... 8

**II.** ARGUMENT ............................................................................................................ 12

This Court Lacks Jurisdiction Because The District Court's Order Remanding The Case For Further Proceedings Is Not A Final Order Subject To Appeal ........................ 12

**III.** CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Alsea Valley Alliance v. Dep't of Commerce*, 358 F.3d 1181 (9th Cir. 2004) . 16, 17

*Caplan v. Vokes*, 649 F.2d 1336 (9th Cir. 1981) ............................................... 12, 14

*Chugach Alaska Corp. v. Lujan*, 915 F.2d 454 (9th Cir. 1990) ...................... 13, 16

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) .......................... 12, 13

*Collard v. U.S. Dep't of the Interior*, 154 F.3d 933 (9th Cir. 1998) ....................... 16

*Collins v. Loisel*, 259 U.S. 309 (1922) ........................................................................ 3

*Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) ................ 13

*Fernandez v. Phillips*, 268 U.S. 311 (1925) .................................................... passim

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981) .............................. 13

*In re Extradition of Manrique*, 442 F. Supp. 3d 1172 (N.D. Cal. 2020) .................. 3

*In re Requested Extradition of Kirby*, 106 F.3d 855 (9th Cir. 1996) ....................... 3

*Manta v. Chertoff*, 518 F.3d 1134 (9th Cir. 2008) ............................................ 4, 14

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ................................ 12, 13

*Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143 (9th Cir. 2003) ................................ 14

*Prasoprat v. Benov*, 421 F.3d 1009 (9th Cir. 2005) ............................................... 4

*Santos v. Thomas*, 830 F.3d 987 (9th Cir. 2016) ................................... 4, 12, 14, 17

*SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720 (9th Cir. 2017) ................................................................................ 12

*Swing v. Chambers County Comm'n*, 514 U.S. 35 (1995) ..................................... 12

*United States v. Knotek*, 925 F.3d 1118 (9th Cir. 2019) .................................... 3, 10

*Vo v. Benov*, 447 F.3d 1235 (9th Cir. 2006) .......................................................... 17

## Statutes

18 U.S.C. § 3184 ...................................................................................3, 9

18 U.S.C. § 3186 ......................................................................................4

28 U.S.C. §§ 1291 ............................................................... 1, 12, 15, 18

California Penal Code § 261 ..................................................................10

## Rules

Federal Rule of Appellate Procedure 27 ..................................................1

Federal Rule of Appellate Procedure 27(d)(2) .......................................1

Federal Rule of Civil Procedure 58(a) ..................................................17

Ninth Circuit Rule 27-1 ...........................................................................1

## Other Authorities

*Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988*, S. TREATY DOC. NO.
   101-17 (1990) ......................................................................................2

*Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan.
   12, 2001,* S. TREATY DOC. NO. 107-11 (2002)..................................2

No. 22-15807

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DONALD KOLLMAR,
      Petitioner-Appellant,

      v.

UNITED STATES PRETRIAL SERVICES,
      Respondent-Appellee.

_____

**UNITED STATES'S MOTION TO DISMISS APPEAL**

Pursuant to Federal Rule of Appellate Procedure 27 and Ninth Circuit Rule

27-1, Respondent-Appellee United States Pretrial Services moves this Court to

dismiss the appeal filed by Petitioner-Appellant Donald Kollmar ("Kollmar")

seeking to challenge his extradition to Canada because there is no final order from

which Kollmar may appeal. Extradition and habeas corpus proceedings are

ongoing before the magistrate judge and the district court judge, respectively.

Pursuant to its own terms, the district court order that Kollmar seeks to appeal is

not final under 28 U.S.C. §§ 1291, 2253. Accordingly, this Court should dismiss

the appeal for lack of jurisdiction.

On June 14, 2022, the government notified Kollmar's counsel that it

intended to file this motion to dismiss. Kollmar's counsel stated that she opposes

this motion. Kollmar is not currently in custody.

## BACKGROUND

As detailed below, pursuant to the Extradition Treaty between the United States and Canada (the "Treaty"),[1] Canada has sought the extradition of Kollmar so that he may stand trial on one count of rape and one count of indecent assault.  EX DE 39-1.[2]  After holding an extradition hearing, a magistrate judge for the Northern District of California found Kollmar extraditable on both charges and certified the same to the Secretary of State.  GA at 31-48; *see also* EX DE 86.  Kollmar filed a petition for a writ of habeas corpus challenging the certification of his extradition, GA at 23-30, which the district court denied in part and "remanded" in part to the magistrate judge on April 27, 2022, GA at 2-22.[3]

---

[1] Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), *and* Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002).

[2] Record citations to the events in Kollmar's extradition proceedings before the magistrate judge are denoted as "EX DE #" and reference the docket in Northern District of California Case Number 4:19-mj-70677-MAG.  Record citations to the events concerning Kollmar's habeas proceedings before the district court are denoted as "HC DE #" and reference the docket in Northern District of California Case Number 4:20-cv-01388-JST.  References to the government's appendix attached to this motion are denoted as "GA."

[3] On May 6, 2022, the extradition court issued an order requiring the parties to file supplemental briefing in response to the district court's remand.  EX DE 91.  Both parties have filed their briefs and a hearing is set for June 28, 2022.  EX DE 91, 92, 94.

Notwithstanding the district court's remand order and the resulting ongoing extradition proceedings before the magistrate judge, on May 26, 2022, Kollmar filed a notice of appeal of the district court's habeas decision.  GA at 1.

## A.    Legal Background

In the United States, extradition is primarily an executive function, with a "limited" role carved out for a judge pursuant to the federal extradition statute. *United States v. Knotek*, 925 F.3d 1118, 1124 (9th Cir. 2019) (citation omitted); *see* 18 U.S.C. § 3184.  That statute requires a judge to hold a hearing to consider the evidence of criminality presented by the foreign country and to determine whether that evidence is "sufficient to sustain the charge under the provisions of the proper treaty or convention."  18 U.S.C. § 3184.  If the judge finds the evidence sufficient under Section 3184, he or she "shall certify [his or her findings] . . . to the Secretary of State."  *Id*.

An extradition hearing is neither a criminal nor a civil proceeding, but rather entails "only a preliminary assessment of the merits of the foreign prosecution."  *In re Extradition of Manrique*, 442 F. Supp. 3d 1172, 1174 (N.D. Cal. 2020); *see In re Requested Extradition of Kirby*, 106 F.3d 855, 857 n.1 (9th Cir. 1996).  The extradition judge is neither required nor authorized to determine whether the evidence is sufficient to justify conviction, as that determination will be made by the foreign court that handles the case.  *See Collins v. Loisel*, 259 U.S. 309, 316

3

(1922); *Santos v. Thomas*, 830 F.3d 987, 991-92 (9th Cir. 2016). Rather, an

extradition judge must certify an extradition when the following five requirements

are met: (1) the judicial officer is authorized to conduct the extradition proceeding;

(2) the court has jurisdiction over the fugitive; (3) there is an applicable extradition

treaty in full force and effect; (4) the crimes for which extradition is requested are

covered by that treaty; and (5) there is sufficient evidence to support a finding of

probable cause as to each charge. *See Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th

Cir. 2008). If the judge certifies an extradition, the Secretary of State ultimately

will decide whether to surrender the fugitive to the foreign country or not. 18

U.S.C. § 3186; *see also Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005).

An extradition judge's certification order is not subject to direct appeal. *See*

*Santos*, 830 F.3d at 1001. However, limited collateral review is available by way

of a petition for a writ of habeas corpus. *See id.*; *see also Fernandez v. Phillips*,

268 U.S. 311, 312 (1925).

### B. Summary of Kollmar's Alleged Criminal Conduct

According to the government of Canada, on February 25, 1997, the victim

provided written and oral statements to Canadian police alleging that Kollmar had

sexually assaulted her from 1974 to 1979. EX DE 39-1, 55. In 1974, the then-12-

year-old victim and her family became involved with a group called "Students of

Light." EX DE 39-1 at 24. The victim met Kollmar through her involvement with

4

that group.  *Id*.  Kollmar was a then-23-year-old spiritual advisor and minister to the Students of Light, as well as chief assistant to the group's leader.  *Id*. at 24, 32. Kollmar expressed an interest in the victim, informing her and her parents that she was an extremely special and sensitive child.  *Id*. at 24.

During the relevant time period, the victim lived in Sudbury, Ontario; Kollmar was originally from the Buffalo, New York area, and spent time in Toronto, making monthly trips to Sudbury.  *Id*.  During those trips to Sudbury, Kollmar visited the victim and initiated having time alone with her.  *Id*.  While he and the victim were alone, Kollmar would tell her how he was unique, significant, and chosen to do special work.  *Id*. at 25.  He also told her about his spiritual and psychic powers, and his direct relationship with God.  *Id*.  Kollmar emphasized the victim's specialness and stated that she could only realize her spiritual potential through his teachings.  *Id*.

Kollmar further told the victim about what he described as his pure and unique love for her.  *Id*.  Kollmar stated that he had intended to wait to approach her physically until she turned 16 years old, but that he could not wait any longer. *Id*.  Instead, he began touching her in a sexual manner when she was 13 years old and continued to do so until she was 16 years old.  *Id*. at 27.  The victim specifically told Canadian authorities that Kollmar sexually abused her in the following ways:

5

- When she was 13 years old, she attended a weekend retreat with Kollmar in Buffalo, New York. On the trip, Kollmar told the victim to remove her clothes and then gave her a "therapeutic massage," during which he massaged her breasts. In response, the victim felt "sickened inside" and "unbearably uncomfortable, embarrassed, and confused." *Id.*

- While in Sudbury, Kollmar arranged to spend time alone with the victim, including in his van that he had converted into a "mini home." Kollmar told her to lie down in the van. He then placed his arm around her and fondled her breasts over her clothes. *Id.* at 28.

- When meeting Kollmar in Toronto, on numerous occasions, the victim would stay in a room maintained by the Students of Light. Kollmar would come to her room and bring her to his van, where he would have the victim lie beside him. He would then put his hand under her clothes and fondle her breasts. Eventually, he took off her clothes and lay on top of her while kissing her, fondling her breasts and genitals, and rubbing his groin against her. He also forced the victim to massage him while they were both naked, including in the area around his genitals. When she tried to avoid touching his penis, he demanded that she do so using oil to massage his genitalia. He then got on top of her while fully nude, fondled her breasts, and put his fingers inside her vagina. *Id.* at 28-29.

- On Mother's Day weekend in 1977, when the victim was 14 years old, Kollmar penetrated her vagina with his penis. He only "partially" penetrated her and did not do so more deeply purportedly because he wanted her to remain a virgin until he married her. He did this on four or five occasions. After the 1977 Mother's Day incident, Kollmar began masturbating the victim and became very angry when she was unable to reach orgasm, which he saw as willfully punishing and denying him pleasure.

6

Kollmar also had her masturbate him and ejaculated on several occasions when she did so. *Id*. at 29.

According to the victim, "99% of the time" these incidents were preluded by Kollmar "verbally humiliating and demoralizing" her. *Id*. at 30. The verbal assaults took a ritualistic tone, with Kollmar spending up to two hours yelling and criticizing her before the sexual abuse. *Id*. This included Kollmar telling her that she was "stupid," "a piece of shit," "worthless," "fat and ugly," and other similar words and phrases. *Id*. He also told her that she "must submit [her] will to him." *Id*. The victim told Canadian authorities that, in hindsight, she interprets Kollmar's behavior as a form of "brain washing." EX DE 55 at 131.

Kollmar told the victim that she should not tell anyone about their physical relationship because others would be jealous and unable to understand the special, spiritual nature of their connection. EX DE 39-1 at 25. Kollmar said that the victim had been chosen for him by God and that it was her responsibility to live with him as his wife. *Id*. Similarly, he told the victim that her own will and desires were not valid and instructed her that if she did not love or want to marry Kollmar, then those feelings would be contrary to God's plan. *Id*. at 26.

The victim told authorities that Kollmar also was controlling and abusive in other ways. *Id*. at 25. Often, Kollmar allowed the victim only three hours or less of sleep per night. *Id*. On several occasions, when the victim started to fall asleep, Kollmar slapped her face and told her not to be lazy. *Id*. at 26. Kollmar controlled

7

when she used the bathroom, showered or bathed, brushed her teeth and hair, and how she wore her hair. *Id*. He also repeatedly verbally assailed her and then held up his hand in a motion threatening to strike her, telling her that she angered him so much that he could barely restrain himself from hitting her. *Id*. Several times, Kollmar grabbed and twisted the victim's wrist, causing her pain. *Id*.

As of June 1979, Kollmar and the victim were expected to marry. *Id*. The victim's parents were unaware of the abuse, and the victim believed she was still following God's plan. *Id*. However, after the victim was hospitalized with stomach pains, her mother realized the "oppression" from which the victim was suffering. *Id*. The victim had not previously told her parents about Kollmar's behavior because he had insisted that no one would believe her if she did. *Id*. Upon her hospitalization, the victim told her parents that she did not want to be with Kollmar anymore. *Id*. Thereafter, she ended the relationship and ceased contact with Kollmar. *Id*. at 30-31.

## C.    Procedural History

Canadian authorities secured their first warrant for Kollmar's arrest on November 17, 1997, approximately nine months after the victim provided her statements to them. *Id.* at 31, 35-37. Canadian authorities secured subsequent warrants on November 28, 2018, December 24, 2018, and June 7, 2019. *Id.* at 32, 39-61. The most recent warrant, which "is in full force and effect in Ontario[,

8

Canada]," *id.* at 7," seeks Kollmar's arrest on one count of rape and one count of

indecent assault, in violation of Sections 143, 144, and 149 of the Criminal Code of

Canada, *id.* at 59-61.

On April 29, 2019, the government of Canada submitted to the United States

a request for Kollmar's provisional arrest with a view toward his extradition. In

response thereto, and in accordance with the U.S.-Canada Extradition Treaty and

18 U.S.C. § 3184, the United States filed a complaint in the U.S. District Court for

the Northern District of California on May 1, 2019, seeking a warrant for

Kollmar's arrest. GA at 50-54. The warrant was issued, and Kollmar was arrested

in that district on May 3, 2019. EX DE 6. In compliance with the terms of the

Treaty, Canada submitted its formal request for Kollmar's extradition to the United

States Department of State by diplomatic note dated June 24, 2019. EX DE 39-1.

After holding an extradition hearing pursuant to 18 U.S.C. § 3184, a

magistrate judge (the "extradition court") issued an order on February 10, 2020,

finding Kollmar extraditable on both the rape and indecent assault charges and

certifying his extradition on both charges to the Secretary of State.[4] EX DE 86.

*First*, the extradition court found that it had jurisdiction to conduct the extradition

proceeding, that it had jurisdiction over Kollmar, and that the Treaty was in full

---

[4] The extradition court reissued its decision on January 19, 2021, with a corrected
date but no other changes. GA at 50-68.

force and effect.  *Id.* at 36.  *Second*, citing to California's rape statute, California Penal Code § 261, the extradition court concluded that Canada's charges of rape and indecent assault satisfied the Treaty's dual criminality requirement because the underlying conduct could have been punished under U.S. law had it been committed in the United States.[5]  *Id.* at 36-39; *see also id.* at 48 ¶ 6.  *Third*, the extradition court found that Canada's extradition request contained evidence establishing probable cause that Kollmar committed both offenses.  *Id.* at 39-45. *Fourth*, the extradition court rejected Kollmar's argument that his extradition is barred due to lapse of time, concluding that neither the Canadian Charter of Rights and Freedoms nor California statutes of limitation apply under the terms of the Treaty.  *Id.* at 45-47.

Kollmar challenged the extradition court's certification order by filing a petition for a writ of habeas corpus on February 24, 2020.  GA at 1.  In his habeas briefing, he asserted that the extradition court erred by: (1) rejecting his lapse-of-time argument, (2) finding probable cause for the rape charge, and (3) finding dual criminality for the indecent assault charge.  HC DE 1-1 at 33-50.

---

[5] Article 2(1) of the Treaty states, "Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment."  EX DE 39-1 at 86.  This is referred to as the dual criminality requirement.  *See*, *e.g.*, *Knotek*, 925 F.3d at 1128-29 & n.10.

10

Following briefing and a hearing, the district court issued a decision on April 27, 2022, denying the habeas petition in part and remanding it in part for further findings by the extradition court.  GA at 2-22.  Like the extradition court, the district court rejected Kollmar's argument that extradition was barred due to lapse of time.  *Id.* at 7-11.  With respect to the rape charge, the district court upheld the extradition court's probable-cause finding and, therefore, denied habeas relief on that charge.[6]  *Id.* at 11-18.

With respect to the indecent assault charge, however, the district court determined that further findings by the extradition court were warranted.  *Id.* at 21-22.  Specifically, the district court found that the extradition court's certification decision did not demonstrate that the extradition court "properly 'culled' the rape and indecent assault charges before finding dual criminality satisfied," and that the extradition court "appear[ed] to conflate the two charges" by failing to identify the separate conduct underlying each charge.  *Id.* at 21.  The district court concluded that the extradition court's order "does not answer the question of whether the conduct [underlying the indecent assault charge] would be considered criminal in the United States."  *Id.*  It therefore "remand[ed] th[e] case to the magistrate court

---

[6] The habeas court declined to address dual criminality with respect to the rape charge, or probable cause with respect to the indecent assault charge, because Kollmar did not challenge those issues.  GA at 12 n.9, 19 n.12; *see* HC DE 1-1 at 33-50.

11

to determine whether the conduct underlying the indecent assault charge would be criminal in the United States." *Id.* at 21-22 (relying on *Santos*, 830 F.3d at 1008-09, and *Caplan v. Vokes*, 649 F.2d 1336, 1345 n.18 (9th Cir. 1981)). The district court further stated, "If no such finding is made within 90 days of the date of this order, Kollmar may be extradited to Canada on the rape charge alone." *Id.* at 22.

The district court has not issued a notice of final judgment or otherwise closed the case pending before it.

## ARGUMENT

## THIS COURT LACKS JURISDICTION BECAUSE THE DISTRICT COURT'S ORDER REMANDING THE CASE FOR FURTHER PROCEEDINGS IS NOT A FINAL ORDER SUBJECT TO APPEAL

This Court's jurisdiction is generally limited to final decisions of a district court. 28 U.S.C. §§ 1291, 2253; *see, e.g., SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 723 (9th Cir. 2017) (citations omitted). "So long as [a] matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (citing 28 U.S.C. §§ 1291, 1292); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) ("A 'final decision' is typically one 'by which a district court disassociates itself from a case.'") (quoting *Swing v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995)). Accordingly, this Court lacks jurisdiction over district court orders that are but a "step toward final

12

disposition of the merits of the case" and that will "be merged in final judgment." *Cohen*, 337 U.S. at 546. The Court has jurisdiction only over final judgments and "that small class" of orders "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id*.

The Supreme Court has stressed that such exceptions must "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (citation omitted). "Permitting piecemeal, prejudgment appeals . . . undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Mohawk Indus.*, 558 U.S. at 106 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)).

To this end, "remand orders," which by their very nature require further proceedings before a lower court, generally are "not considered final" for purposes of appeal. *E.g.*, *Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 (9th Cir. 1990) (citations omitted). Here, the district court's order that Kollmar seeks to appeal is

a remand order, because it returned the case to the extradition court for further proceedings.[7]  GA at 22.

While this Court has recognized that a district court's remand order may constitute an appealable final judgment if the remand requires the undertaking of only "ministerial" actions, the nature of the remand here is not "ministerial."  *See Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1148 (9th Cir. 2003) (determining that a "mechanical recalculation" of financial damages is "ministerial").  In this case, the district court returned the case to the extradition court for further findings on a legal issue that is critical to determining the charges on which Kollmar may be extradited—the ultimate question in the case.  *See*, *e.g.*, *Manta*, 518 F.3d at 1140 (listing as one of the extradition court's functions determining whether the crimes sought for extradition are covered by the relevant treaty); *Caplan*, 649 F.2d at 1343 (instructing extradition courts to carefully cull extraditable offenses from non-extraditable offenses).  Indeed, the extradition court did not treat the district court's

---

[7] The United States maintains that, given the district court's *de novo* review of a magistrate judge's determination that an offense is extraditable, the district court had authority to determine whether the indecent assault offense is extraditable and remand to the district court was therefore unnecessary in this case.  Nevertheless, to the extent the district court believed a remand would assist the court's ultimate review of the question, the district court had the legal authority to remand under this Court's decision in *Santos*, 830 F.3d at 1001 (remanding case to district court "with instructions to return this case to the extradition court for further proceedings"); *see also id.* at 1008-09 (explaining reasoning for "returning this case to the extradition court").

14

order as "ministerial" because, in response, it issued a briefing schedule and a set a hearing date to address the question the district court identified. *See* EX DE 92.[8] Accordingly, the nature of the district court's order renders it non-final for purposes of appealability.

The fact that the district court made definitive findings on one of the two charges for which Kollmar's extradition is sought does not make the decision final and subject to appeal. By its own terms, the district court's order that Kollmar is extraditable on the rape charge is not effective until at least ninety days have passed.[9] GA at 22 (permitting extradition on the rape charge "[i]f no . . . finding [on dual criminality for indecent assault] is made within 90 days of the date of this order"). Given that express contingency, the decision is not final.

Moreover, even if the district court intended its finding on the rape charge to be effective immediately, that finding would not render the decision final for purposes of 28 U.S.C. §§ 1291, 2253. A remand order, such as this one, is considered final only if the following three criteria are met: "(1) the district court

---

[8] On June 7, 2022, after the United States complied with its filing deadline but before Kollmar filed his brief in the extradition court, Kollmar filed with the district court a motion to stay its April 27, 2022, decision on the theory that the district court was divested of jurisdiction by virtue of his filing this appeal. HC DE 33. He also filed a motion to stay the briefing and hearing schedule set by the magistrate judge. EX DE 93. Both motions remain pending.

[9] The district court's decision was issued on April 27, 2022, and the ninety-day deadline expires on July 26, 2022.

15

conclusively resolves a separable legal issue; (2) the remand order forces the [subject of the order] to apply a potentially erroneous rule which may result in a wasted proceeding; and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable." *E.g.*, *Alsea Valley Alliance v. Dep't of Commerce*, 358 F.3d 1181, 1184 (9th Cir. 2004) (quoting *Collard v. U.S. Dep't of the Interior*, 154 F.3d 933, 935 (9th Cir. 1998)); *Chugach Alaska Corp.*, 915 F.2d at 457.

Even if the district court conclusively resolved the extraditability of Canada's rape charge, its order otherwise fails both the second and third prongs of the Court's test. The second prong—that the remand order forces the application of a potentially erroneous legal standard—is not satisfied here, where the district court simply returned the case to the extradition court to make a legal finding that it did not make in the first instance. GA at 21-22. While the district court determined that the extradition court failed properly to conduct a separate dual criminality analysis for each of Canada's charges, it did not establish any new legal standard or otherwise direct how the extradition court should rule. *See* GA at 19-22. Thus, the district court's remand does not require the application of an erroneous legal standard.

Additionally, the third prong of the test—that review would be practically foreclosed—is not satisfied because Kollmar will have the opportunity to appeal all

16

adverse issues related to his extraditability once the extradition and habeas proceedings are completed, as he would in the normal course.[10]  *See Santos*, 830 F.3d at 1001 (quoting *Vo v. Benov*, 447 F.3d 1235, 1240 (9th Cir. 2006)).  Indeed, as this Court has noted, remand orders that meet the third prong of the test are generally challenges brought by an administrative agency because "only *agencies* compelled to refashion their own rules face the unique prospect of being deprived of review altogether," given that agencies cannot appeal the result of their own decisions.  *Alsea Valley Alliance*, 358 F.3d at 1184 (emphasis in original).  That is not the case here.

Finally, prudential reasons counsel in favor of dismissing Kollmar's appeal. The proceedings to determine whether Kollmar may be extradited on one of the two charges for which his extradition is sought remain open and unfinished. Allowing those proceedings to conclude before this Court considers Kollmar's challenges to his extradition would better serve the interests of judicial economy.

The district court's remand was not ministerial in nature, nor does it foreclose Kollmar's opportunity to file an appeal at the conclusion of proceedings.

---

[10] The United States anticipates that, after the expiration of the ninety-day period, the district court will issue a further order and/or judgment pursuant to Federal Rule of Civil Procedure 58(a).  If it does not, one of the parties could move for entry of judgment under Rule 58(d).

17

Accordingly, the Court should find that the order from which Kollmar seeks to appeal is not a final order as required by 28 U.S.C. §§ 1291, 2253.

## CONCLUSION

For the reasons set forth above, this Court should dismiss this appeal for lack of jurisdiction.

Dated: June 14, 2022

Respectfully submitted,

STEPHANIE M. HINDS
   United States Attorney
   Northern District of California

KENNETH A. POLITE, Jr.
   Assistant Attorney General
   Criminal Division

MATTHEW M. YELOVICH
   Chief, Appellate Section
   Northern District of California

BRUCE C. SWARTZ
   Deputy Assistant Attorney General
   Criminal Division

MAUREEN C. BESSETTE
   Assistant United States Attorney
   U.S. Attorney's Office
   1301 Clay Street, Ste. 340S
   Oakland, CA 94612
   (510) 637-3680

REBECCA A. HACISKI
   Acting Associate Director
   Office of International Affairs

*/s/ Kerry A. Monaco*
KERRY A. MONACO
   Trial Attorney
   Office of International Affairs
   U.S. Dep't of Justice, Criminal Div.
   1301 New York Avenue NW
   Washington, DC 20530
   (202) 616-4798

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing motion complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2) and 32(g) because it was produced using a computer and contains 4,402 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

Dated: June 14, 2022                    */s/ Kerry A. Monaco*
                                        KERRY A. MONACO
                                        Trial Attorney
                                        Office of International Affairs
                                        U.S. Dep't of Justice, Criminal Division
                                        1301 New York Avenue NW
                                        Washington, DC 20530
                                        (202) 616-4798

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users, including Petitioner's counsel, will be served by the appellate CM/ECF system.

*/s/ Kerry A. Monaco*
KERRY A. MONACO
Trial Attorney
Office of International Affairs
U.S. Dep't of Justice, Criminal Division
1301 New York Avenue NW
Washington, DC 20530
(202) 616-4798